**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| EVER BEDOYA, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 2:14-cv-02811-ES-JAD |
| | ) | |
| AMERICAN EAGLE EXPRESS, INC., | ) | Motion Day: July 6, 2015 |
| d/b/a AEXGROUP, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| AMERICAN EAGLE EXPRESS, INC., | ) | |
| | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KV SERVICE LLC, | ) | |
| A&D DELIVERY EXPRESS LLC, and | ) | |
| M&J EXPRESS LLC, | ) | |
| | ) | |
| Third-Party Defendants. | ) | |

**RESPONSE IN OPPOSITION TO PLAINTIFFS' RENEWED
MOTION TO DISMISS COUNTERCLAIM AND THIRD-PARTY COMPLAINT**

Defendant, American Eagle Express, Inc., d/b/a AEX GROUP ("AEX"), hereby opposes

Plaintiffs' Renewed Motion to Dismiss Counterclaim and Third-Party Complaint (Doc. 54) as

follows:

## TABLE OF CONTENTS

INTRODUCTION..................................................................................................................1

FACTUAL BACKGROUND................................................................................................1

ARGUMENT AND AUTHORITIES.................................................................................3

I.      Pennsylvania Law Recognizes Claims for First-Party Indemnity .................................7

II.     The Indemnity Provision of the TBA Comprises This Lawsuit ...................................9

III.    Plaintiffs Are Not Employees.  Their Public Policy Arguments Are Irrelevant ........13

IV.     AEX's Third-Party Claims Against Plaintiffs' LLCs Survive ....................................16

CONCLUSION ..................................................................................................................17

CERTIFICATE OF SERVICE .........................................................................................18

# TABLE OF AUTHORITIES

## Cases

*Al Good v. Nippon Yusen Kaisha, 2013* U.S. Dist. LEXIS 82839 (E.D. Cal. 2013) ......................5

*Atari v. Ernst & Whinney,* 981 F.2d 1025 (9th Cir. 1992)............................................................8

*Battelle Memorial Inst. v. Nowsco Pipeline Services,* 56 F. Supp.2d 944 (S.D. Ohio 1999)..........8

*Bill Johnson's Restaurants, Inc. v. NLRB,* 461 U.S. 731 (1983) ..................................................13

*Cardwell v. Haley & Ward,* 471 F.3d 210 (1st Cir. 2006)............................................................8

*Casias v. Distribution Mgmt. Corp., Inc.,* 2012 WL 4511376 (D.N.M., Sept. 28, 2012) .............11

*Clark Distrib. Sys. v. ALG Direct, Inc.,*
2014 U.S. Dist. LEXIS 73834 (M.D. Pa. Apr. 28, 2014) ...............................................................7

*Coady v. Strategic Res., Inc.,* 258 Va. 12 (1999).........................................................................9

*Control Screening LLC v. Tech. Application & Prod. Co.,* 687 F.3d 163 (3d Cir. 2012)........... 5-6

*Costello v. BeavEx, Inc.,* 2013 WL 2156052 (N.D. Ill., May 17, 2013)..................................10, 14

*Desert Autosports LLC v. Auto. Fin. Corp.,*
2013 U.S. Dist. LEXIS 114873 (D. Ariz. Aug. 13, 2013) ...............................................................5

*Dobbins v. Scriptfleet, Inc.*, 2012 WL 2282560 (M.D. Fla., June 18, 2012)..........................10, 14

*E.E.O.C. v. Peoplemark, Inc.,* 732 F.3d 584 (6th Cir. 2013).........................................................12

*Emanuel v. Rolling in the Dough, Inc.,* 2010 WL 4627661 (N.D. Ill., Nov. 2, 2010)..................15

*Exelon Generation Co., LLC v. Tugboat Doris Hamlin,*
2008 U.S. Dist. LEXIS 41340 (E.D. Pa. May 27, 2008) ................................................................7

*Fagan Holdings, Inc. v. Thinkware, Inc.,* 750 F. Supp.2d 820 (S.D. Tex., Nov. 2, 2010).............8

*Fernandez v. Kinray, Inc.,* No. 13-CV-4938, unreported (E.D.N.Y., Feb. 5, 2014) ....................11

*Formigili Corp. v. William Fox*, 348 F. Supp. 629 (E.D. Pa. 1972).................................................5

*Gustafson v. Bell Atl. Corp.,* 171 F. Supp.2d 311 (S.D.N.Y. 2001) ..............................................15

*Herman v. RSR Sec. Services,* 172 F.3d 132 (2d Cir. 1999).........................................................15

*In re Bank of New York Mellon Corp. Forex Transactions Litigation,*
2014 WL 3360718 (S.D.N.Y., July 9, 2014) ...................................................................7

*In re Perry,* 48 Misc. 285 (N.Y. Sur. Ct. 1905) ..............................................................6

*Kraft Foods N. Am., Inc. v. Banner Eng'g & Sales, Inc.,* 446 F.Supp.2d 551 (E.D.Va. 2006).......9

*Local 1035, Int'l Bhd. Of Teamsters v. Pepsi Allied Bottlers, Inc.,*
99 F. Supp.2d 219 (D. Conn. 2000)..............................................................................15

*Longport Ocean Plaza Condominium, Inc. v. Robert Cato & Associated, Inc.,*
137 Fed. App. 464 (3d Cir. 2005).................................................................................8

*Lyle v. Food Lion, Inc.,* 954 F.2d 984 (4th Cir. 1992)...................................................15

*Metex Mfg. Corp. v. Manson,* 2008 U.S. Dist. LEXIS 25107 (D.N.J. 2008) .................7

*Monsanto Co. v. Alden Leeds, Inc.,* 130 N.J. Super. 245 (Law Div. 1974)................. 4-5

*Montoya v. 3PD, Inc.,* 2014 WL 2569451 (D. Ariz., June 9, 2014).......................10, 14

*Moser v. Milner Hotels, Inc.,* 6 N.J. 278 (1951) ...........................................................4

*Nova Research, Inc. v. Penske Truck Leasing Co.,* 405 Md. 435 (2008) .......................9

*People v. Burks,* 108 Ill. App. 3d 433 (Ill. App. Ct. 4th Dist. 1982) ..............................6

*Quintana v. Explorer Enterprises, Inc.,* 2010 WL 2220310 (S.D. Fla., June 3, 2010) .......... 14-15

*Rabe v. United Air Lines, Inc.,* 636 F.3d 866 (7th Cir. 2011)........................................12

*Richard A. Pulaski Constr. Co. v. Air Frame Hangars, Inc.,* 195 N.J. 457 (2008).......................17

*SBA Network Services, Inc. v. Telecom Procurement Services, Inc.,*
250 Fed. Appx. 487 (3d Cir. 2007)...............................................................................8

*Shutte v. Thompson,* 82 U.S. (15 Wall.) 151 (1873).......................................................5

*Skinner v. Switzer,* 131 S.Ct. 1289 (2011) ...................................................................12

*Spellman v. American Eagle Express, Inc.,* 680 F. Supp. 2d 188 (D.D.C. 2010)...........9-11, 13-14

*State Dept. of Envtl. Prot. v. Ventron Corp.,* 94 N.J. 473 (1983) .................................16

*STS Holdings, Inc. v. CDI Corp.,* 2004 WL 739869 (E.D. Pa., Mar. 19, 2004)...........7

*Trs. of the Nat'l Elevator Indus. Pension, Health Benefit & Educ. Funds v. Lutyk,*
332 F.3d 188 (3d Cir. 2003) ................................................................................................16

*Varnell, Struck & Associates, Inc. v. Lowe's Companies, Inc.,*
2008 WL 1820830 (W.D.N.C., Apr. 21, 2008) .....................................................................15

*Verni ex rel. Burstein v. Harry M. Stevens, Inc.,* 387 N.J. Super. 160 (App. Div. 2006)........ 16-17

*Villareal v. El Chile, Inc.,* 601 F. Supp.2d 1011 (N.D. Ill. 2009) ..................................................15

*Vivid Entm't, LLC v. Fielding,* 774 F.3d 566 (9th Cir. 2014) .........................................................6

*Water Tower Realty Co. v. Fordham 25,* 404 Ill. App.3d 658 (2010) ........................................ 8-9

*Waynesborough Country Club of Chester Cty. v. Diedrich Niles Bolton Architects, Inc.,*
2008 U.S. Dist. LEXIS 93395 (E.D. Pa. Nov. 12, 2008) ................................................................7

*Yaw Adu Poku v. BeavEx, Inc.,* 2013 WL 5937414 (D.N.J., Nov. 1, 2013) ...................................11

## Statutes

N.J. Stat. § 5:10-1 et seq. ...............................................................................................  6

N.J. Stat. § 34:11-4.1 ......................................................................................................13

## Court Rules

Fed. R. Civ. P. 8 ........................................................................................................ 12-13

## Other Sources

Wright et al., 5 Fed. Prac. & Proc. Civ., (3d ed. 2012) .................................................12

**INTRODUCTION**

Plaintiffs are independent contractors and not employees.  They signed contracts expressly stating as much; for years provided services free of any control by AEX; formed registered business entities; and made as much or as little money as they wanted depending upon their efforts, ability, and exercise of entrepreneurial opportunity.  In this lawsuit, Plaintiffs seek overtime and reimbursement for fee deductions under statutes that afford independent contractors no protections.  Plaintiffs' motion to dismiss AEX's indemnity claims is therefore surprising.  Plaintiffs contend that unless they are protected against an indemnity provision common in commercial contracts, it would "frustrate the entire purpose of" a set of statutes that the legislature expressly specified should not apply to them.  Because a statute's purpose is furthered – not frustrated – when it is interpreted to provide no protection to those it specifically excludes, AEX respectfully requests the Court deny Plaintiffs' motion to dismiss.

**FACTUAL BACKGROUND**

AEX is a non-asset based enterprise that arranges transportation services to meet shippers' demands for specialized distribution and fulfillment services.  Plaintiffs and the limited liability companies they operate are independent contractors that have provided transportation services to the parties' mutual customers.  Prior to March 2010, Plaintiffs contracted with AEX as sole proprietors.  Beginning in March 2010 and thereafter, Plaintiffs contracted with AEX through the limited liability companies formed by Plaintiffs.  Those companies are now named as Third Party Defendants ("the LLCs").

AEX's relationships with Plaintiffs and the LLCs are governed by written contracts entitled "Transportation Brokerage Agreements" ("TBAs").  *See* Doc. 8-1.  The TBAs govern every aspect of the relationship between the parties.  *Id.*  The TBAs make clear that Plaintiffs and

the LLCs are independent contractors and not employees.  *Id.* at p. 7, ¶ 14.  ("It is expressly understood and agreed that CONTRACTOR is an independent contractor for the Equipment and driver services provided pursuant to this Agreement.").  In fact, Plaintiffs and the LLCs agreed they "shall not be considered . . . as having the status of an employee of [AEX] for any purpose whatsoever." *Id.* at p. 8, ¶ 14.  Under the TBAs, Plaintiffs and the LLCs have a duty to provide all equipment necessary to perform services as independent contractors and are responsible for maintaining such equipment.  *Id.* at p. 4, ¶¶ 5(a), 5(b).  The TBAs provides Plaintiffs and the LLCs with "the exclusive right to direct and control the financial aspects of CONTRACTOR's business operations, including the ability to earn a profit or suffer a financial loss[.]" *Id.* at p. 7, ¶ 14.  Consistent with their status as independent contractors, Plaintiffs and the LLCs can decline any work they do not wish to do.  *Id.* at p. 6, ¶ 13.  In sum, the TBAs allow Plaintiffs and the LLCs to operate their independent businesses in whatever manner they wish, so long as they provide "pick-up and delivery services at such times and to such destinations as may from time to time be designated by the Customer," subject only to particular customer-mandated "service standards." *Id.* at p. 2, ¶ 1.  Under the TBAs, Plaintiffs and the LLCs agreed and were obligated to accept a liquidated fee amount for the services they provided.  *Id.* at p. 3, ¶ 3.  ("It is expressly understood and agreed that CONTRACTOR'S fees for transportation services rendered shall be as set forth in Appendix B and such fees shall constitute the total fees for everything furnished, provided, or done by CONTRACTOR in connection with this Agreement, including drivers' services.").  Furthermore, Plaintiffs and the LLCs agreed and were obligated to reimburse AEX for certain personal business expenses through charge-backs against their fees for services rendered. *Id.* at p. 8, ¶ 17.

AEX's claim for indemnity is based upon Section 10 of the TBA, which provides, in relevant part that Plaintiffs and the LLCs agree to:

> defend, indemnify, and hold harmless BROKER from any direct, indirect and consequential loss, damage, fine, expense, including reasonable attorneys' fees, action, claim for injury to persons, including death, and damage to property which BROKER may incur arising out of or in connection with the operation of the Equipment, CONTRACTOR's obligations under this Agreement, or any breach by CONTRACTOR or its drivers or workers of the terms of this Agreement.  This provision shall remain in full force and effect both during and after the termination of this Agreement.

*Id.* at p. 5.

In this lawsuit, Plaintiffs contend that – despite the TBA's provisions to the contrary – they are employees.  The seek overtime pursuant to the New Jersey Wage and Hour Law ("WHL") and reimbursement of deductions from their fees pursuant to the New Jersey Wage Payment Law ("WPL").

## ARGUMENT AND AUTHORITIES

During the May 6, 2015 hearing on Plaintiffs' initial Motion to Dismiss, the Court asked a number of questions that were not addressed by the parties' briefing.  The Court encouraged the parties to answer those questions in their briefing on Plaintiffs' refiled motion to dismiss. That motion is now pending.

First, indicating that Pennsylvania law and New Jersey law treat first-party indemnification claims differently, the Court asked a number of questions focused upon what state's law should apply when interpreting the Transportation Brokerage Agreement.  The Court questioned AEX's contention that a Pennsylvania choice-of-law contract provision governed because: (1) AEX applied New Jersey law to Plaintiffs' unjust enrichment claim in other briefing, and (2) AEX waived a contractual forum-selection clause located in the same sentence as the choice-of-law provision.  Plaintiffs' Memorandum concedes that Pennsylvania law applies

to AEX's indemnification claims.   Doc. 55, pp. 11-12 (under heading, "Pennsylvania Law Should Govern the Interpretation of the TBA.").   AEX appreciates the opportunity, nevertheless, to answer the Court's questions.

The sentence in the parties' contract containing the Pennsylvania choice of law provision provides as follows:

> This Agreement shall be deemed to have been drawn in accordance with the statutes and laws of the State of Pennsylvania and in the event of disagreement or litigation, the laws of this state shall apply and suit must be brought in or near Chester Township, Pennsylvania.

Doc. 8-3, p. 10.

First, AEX did rely upon New Jersey law in its Motion to Dismiss briefing regarding Plaintiffs' unjust enrichment claim.   However, this does not suggest that Pennsylvania law should not apply to the contractual claims.   The nature of unjust enrichment claims justified AEX's reliance upon New Jersey law.   Unjust enrichment claims are only valid in the absence of a contract governing the same subject matter.   *Moser v. Milner Hotels, Inc.,* 6 N.J. 278, 280 (1951).   In other words, Plaintiffs can only prevail on their unjust enrichment claim in the event the Transportation Brokerage Agreement is found unconscionable.   Indeed, this possibility of a finding of unconscionability was the very reason the Court did *not* dismiss Plaintiffs' unjust enrichment claim during the May 6th hearing.   If the Agreement is found to be unconscionable, it – along with the choice of law provision at issue – will cease to exist.   A Pennsylvania choice of law provision cannot govern a claim that can only exist in the event that such Pennsylvania choice of law provision is found invalid.   Courts often apply contractual choice of law provisions to contractual claims while applying a different state's law to tort claims in the same case.   *See, e.g., Monsanto Co. v. Alden Leeds, Inc.,* 130 N.J. Super. 245, 256, 326 A.2d 90, 96 (Law Div.

1974) (applying Missouri law to contractual claims based upon choice of law provision, but New Jersey law to tort claims that did not fall within contract).

Second, AEX indeed did not challenge Plaintiffs' selection of this venue despite the TBA's forum-selection clause.  During the May 6th hearing, the Court questioned whether waiving the Transportation Brokerage Agreement's forum-selection provision amounted to also waiving the Agreement's choice-of-law provision, located in the same sentence.  **Parties to contracts may waive any provision therein without waiving other provisions.**  *Shutte v. Thompson,* 82 U.S. (15 Wall.) 151, 21 L. Ed. 123 (1873) ("A party may waive any provision, either of a contract or of a statute, intended for his benefit."); *Formigili Corp. v. William Fox*, 348 F. Supp. 629 (E.D. Pa. 1972) ("it is an established principal of contract law that one may waive any provision in the contract which has been established for his benefit").[1]  **Contractual forum-selection provisions are distinct from choice-of-law provisions.**  *Al Good v. Nippon Yusen Kaisha, 2013* U.S. Dist. LEXIS 82839, *11-12, 2013 WL 2664193 (E.D. Cal. 2013) ("while parties' conduct can waive choice of law provisions in an agreement, this waiver of choice of law does not in turn waive forum selection clauses in the same agreement"); *Desert Autosports LLC v. Auto. Fin. Corp.,* 2013 U.S. Dist. LEXIS 114873, *5, 2013 WL 4231151 (D. Ariz. Aug. 13, 2013) (calling "flawed" a plaintiff's argument that an Indiana forum selection provision necessarily meant that Indiana law would apply, and explaining "[t]he fact that this case is litigated in Indiana does not necessarily mean the Indiana law will apply").  **The mere fact that the forum-selection provision and choice-of-law provision are contained within the same sentence does not mean they are so intertwined that waiver of one equates to waiver of both.**  *See, e.g., Control Screening LLC v. Tech. Application & Prod. Co.,* 687 F.3d 163, 166,

---

[1]  In the present case, *both* parties waived the forum selection clause.

170 (3d Cir. 2012) (enforcing a contractual arbitration provision despite the fact that an invalid forum-selection provision (designating a non-existent forum) was contained in the same sentence of the contract); *People v. Burks,* 108 Ill. App. 3d 433, 438, 438 N.E.2d 1376, 1380, 1982 Ill. App. LEXIS 2161, *11, 64 Ill. Dec. 57, 61 (Ill. App. Ct. 4th Dist. 1982) ("The court has also acknowledged that a valid and invalid provision may even be contained in the same sentence."); *In re Perry,* 48 Misc. 285, 311, 96 N.Y.S. 879 (N.Y. Sur. Ct. 1905) (in applying the doctrine of "elimination" to a will, "it matters not whether [invalid] provisions involve a whole paragraph, a whole sentence, or a part of a sentence," so long as they "can be separated therefrom without doing violence to other portions of the will"); *Vivid Entm't, LLC v. Fielding,* 774 F.3d 566, 574-575 (9th Cir. 2014) ("To be grammatically separable, the valid and invalid parts of the [writing] can be separated by paragraph, sentence, clause, phrase, or even single words.").[2]

Both parties agree that their mutual choice to litigate this case in the District of New Jersey does not invalidate the Transportation Brokerage Agreement's Pennsylvania choice-of-law provision.  This conclusion is bolstered by the presence of a severability provision within the Transportation Brokerage Agreement.  *See* Doc. 8-3, p. 10, ¶ 24 ("If any Agreement or its appendices is deemed invalid for any reason whatsoever, the Agreement shall be void only as to such provision, and this Agreement shall remain otherwise binding between the parties.  Any provision voided by operation of the foregoing shall be replaced by provisions which shall be as close as the parties' original intent as permitted under applicable law.").

---

[2]   Related to this topic, many statutes contain severability provisions, which inevitably contain language along the lines of, "the invalidity of any clause, sentence, paragraph, section or part of the act shall not affect the remainder thereof."   *See, e.g.,* Section 25, New Jersey Sports and Exposition Authority Law, N.J. Stat. Ann. § 5:10-1 et seq.   In drafting such severability provisions, legislatures assume that a "clause" can be a subset of a "sentence," which if found invalid would not affect the remainder of the sentence.

## I.   Pennsylvania Law Recognizes Claims for First-Party Indemnity.

Under Pennsylvania contract law, "If plaintiffs wanted to limit indemnification to third party claims only, it was incumbent upon them to include such a provision in [the indemnification clause]."  *STS Holdings, Inc. v. CDI Corp.,* No. 99-3480, 2004 WL 739869, at *3 (E.D. Pa., Mar. 19, 2004); *see also Clark Distrib. Sys. v. ALG Direct, Inc.,* 2014 U.S. Dist. LEXIS 73834, *23 (M.D. Pa. Apr. 28, 2014) ("Had the parties intended the limitation of damages provision to apply solely to the indemnification of third-party claims, they should have expressly included such a provision in [a contractual indemnification provision]."); *In re Bank of New York Mellon Corp. Forex Transactions Litigation,* 2014 WL 3360718, at *3 (S.D.N.Y., July 9, 2014) (describing *STS Holdings* as follows: "the Eastern District of Pennsylvania, apparently applying Pennsylvania law, held that a broadly worded clause providing for indemnification applied to a suit between the parties to the contract").  The TBAs' indemnity provision contains no such limitation.  Doc. 8-1, p. 5, ¶ 10.  In the event the Court believes New Jersey should apply, it likewise holds that indemnification provisions in contracts encompass first-party claims, unless expressly excluded.  *See Metex Mfg. Corp. v. Manson,* 2008 U.S. Dist. LEXIS 25107, *29-32 (D.N.J. 2008).

Plaintiffs cite *Exelon Generation Co., LLC v. Tugboat Doris Hamlin,* 2008 U.S. Dist. LEXIS 41340 (E.D. Pa. May 27, 2008), in support of their contention that indemnity clauses can only encompass reimbursement for costs associated with third-party claims.  A subsequent Eastern District of Pennsylvania opinion explained why *Exelon* is no longer good law.  *See Waynesborough Country Club of Chester Cty. v. Diedrich Niles Bolton Architects, Inc.,* 2008 U.S. Dist. LEXIS 93395, 2008 WL 4916029 (E.D. Pa. Nov. 12, 2008).  In *Waynesborough,* the court noted that *Exelon* relied almost exclusively upon the unpublished, non-precedential Third

Circuit case of *Longport Ocean Plaza Condominium, Inc. v. Robert Cato & Associated, Inc.,* 137 Fed. App. 464 (3d Cir. 2005). *Id.,* 2008 U.S. Dist. LEXIS 93395, *9. *Waynesborough* then explained that *Longport* was potentially overturned by a subsequent Third Circuit opinion in *SBA Network Services, Inc. v. Telecom Procurement Services, Inc.,* 250 Fed. Appx. 487, 492 (3d Cir. 2007), which held that indemnity provisions are assumed to encompass first-party claims unless such provisions state otherwise. *Waynesborough* held the Third Circuit's "more recent pronouncement" controlled, adopted it, and held that indemnity provisions are assumed to encompass first-party claims unless expressly excluded. *Waynesborough,* 2008 U.S. Dist. LEXIS 93395, *14.

Other jurisdictions likewise do not define "indemnification" so narrowly as to exclude first-party indemnity claims. *See e.g., Cardwell v. Haley & Ward,* 471 F.3d 210, 217 (1st Cir. 2006) (acknowledging validity of first-party indemnity claims so long as a party does not seek indemnity against its own negligence); *Atari v. Ernst & Whinney,* 981 F.2d 1025, 1031-32 (9th Cir. 1992) (prevailing party received fees pursuant to indemnification agreement because, "Atari could have limited [the scope of the indemnity provision] to actions brought by third parties, but it did not."); *Battelle Memorial Inst. v. Nowsco Pipeline Services,* 56 F. Supp.2d 944, 951 (S.D. Ohio 1999) ("a party wishing to narrow an indemnification clause to third-party damage is obligated to limit the scope of the clause expressly; and absent such express limitation, indemnification clauses may apply to damage suffered by the contracting parties themselves"); *Fagan Holdings, Inc. v. Thinkware, Inc.,* 750 F. Supp.2d 820, 832 (S.D. Tex., Nov. 2, 2010) ("Absent an express limitation on the indemnification clause to third-party damage, the clause may apply to damages suffered by Fagan and Thinkware themselves."); *Water Tower Realty Co. v. Fordham 25,* 404 Ill. App.3d 658, 666 (2010) ("Because Fordham agreed to indemnify Water

Tower for all losses arising out of the construction work, the absence of third-party claims provides no grounds for dismissing the lawsuit."); *Kraft Foods N. Am., Inc. v. Banner Eng'g & Sales, Inc.,* 446 F.Supp.2d 551, 577 (E.D.Va. 2006) (stating, "the plain meaning definition of indemnification does not limit reimbursement to losses suffered as a result of third party claims"); *Nova Research, Inc. v. Penske Truck Leasing Co.,* 405 Md. 435, 952 A.2d 275, 288-S9 (2008) (citing jurisdictions that have interpreted indemnity provisions to include first-party attorney fees); *Coady v. Strategic Res., Inc.,* 258 Va. 12, 515 S.E.2d 273, 275-76 (1999) (finding the terms of the indemnification provision were broad and all-encompassing and allowed for the payment of attorney fees between the parties).

Because the indemnification provision in the Transportation Brokerage Agreement does not expressly exclude first-party claims, AEX's claims for indemnity are valid under either Pennsylvania or New Jersey law.

## II.     The Indemnity Provision of the TBA Comprises This Lawsuit.

This is the fourth known lawsuit in which the same attorneys have prosecuted a misclassification claim against AEX on behalf of a class of independent contractors.  In one of those prior lawsuits, *Spellman v. American Eagle Express, Inc.,* the plaintiffs filed the very same motion to dismiss now before the Court.  The motion was denied then, and it should be denied now.  *See Spellman v. American Eagle Express, Inc.,* 680 F. Supp. 2d 188 (D.D.C. 2010).

There are no differences between this lawsuit and *Spellman* that would dictate a different result.  The TBAs at issue are, in all relevant respects, identical.  The indemnification provision within those TBAs is identical.  The plaintiffs performed the same types of services for the same types of customers.  The plaintiffs sought then, and this case seeks now, payment of overtime for

weekly hours worked in excess of forty.[3]  *Spellman* ultimately denied a motion to dismiss that raised identical arguments aimed at dismissal of an identical counterclaim that sought indemnity against claims seeking identical relief pursuant to an identical contractual indemnification provision.  The similarities between this case and *Spellman* are the natural consequence of the fact that all three Plaintiffs herein were putative class members in *Spellman*.

*Spellman* found the plaintiffs had a duty to indemnify AEX because, by seeking overtime, plaintiffs challenged their contractual obligation to work for a liquidated fee amount. The "action" against AEX, therefore, was one "arising out of or in connection with" Plaintiffs' "obligations under" the TBA, therefore bringing it within the scope of the indemnity provision. *Spellman* further explained:

> Those Plaintiffs that executed Transportation Brokerage Agreements agreed to indemnify Defendant for any 'action' against Defendant 'arising out of or in connection with' Plaintiffs' 'obligations under this Agreement.'  One such 'obligation' was the agreement to work for a liquidated fee amount.  The crux of this lawsuit is Plaintiffs' allegation that 'Defendant failed to pay' Plaintiffs 'for all hours worked and failed to pay these employees at the overtime rate for any hours worked in excess of forty hours per week.'  In other words, Plaintiffs allege that they are owed more than the liquidated fee amount in the Transportation Brokerage Agreement. Therefore, Defendant has a reasonable basis for alleging that this lawsuit is an 'action' against it 'arising out of or in connection with' Plaintiffs' 'obligations under this Agreement.'

680 F. Supp.2d at 191.  At least three federal courts have relied upon *Spellman* in denying motions to dismiss indemnification claims against contractors bringing wage and hour claims. *Costello v. BeavEx, Inc.,* No. 12 C 7843, 2013 WL 2156052 (N.D. Ill., May 17, 2013) (citing *Spellman* and denying motion to dismiss counterclaim for indemnity); *Montoya v. 3PD, Inc.,* No. CV–13–8068, 2014 WL 2569451 (D. Ariz., June 9, 2014) (same); *Dobbins v. Scriptfleet, Inc.*, No. 8:11–cv–1923, 2012 WL 2282560 (M.D. Fla., June 18, 2012) (denying motion to dismiss

---

[3]  Although the *Spellman* plaintiffs also alleged wrongful deductions pursuant to certain state laws, their claims for wrongful deductions were not referenced in the Court's opinion.

counterclaim and citing *Spellman* for the proposition that fees arising from wage and hour claim fell within the scope of an indemnity provision).

Plaintiffs contend "that at least three federal courts (including one from this District) have declined to follow *Spellman.*"  Doc. 14-1, pp. 13-14 (*citing Casias v. Distribution Mgmt. Corp., Inc.,* No. 1:11-CV-00874, 2012 WL 4511376, at *7 (D.N.M., Sept. 28, 2012); *Yaw Adu Poku v. BeavEx, Inc.,* No. 13-3327-SRC, 2013 WL 5937414 (D.N.J., Nov. 1, 2013); *Fernandez v. Kinray, Inc.,* No. 13-CV-4938, unreported (E.D.N.Y., Feb. 5, 2014) (Slip op. attached to Plaintiffs' Motion as Doc. 14-2).  In reality, only *Casias,* a New Mexico opinion, disagreed with *Spellman*'s reasoning.  *Yaw Adu Poku* did not argue with the reasoning of *Spellman* but found that the contract at issue in that case, unlike in *Spellman,* did not contain a broad enough indemnity provision to encompass the plaintiff's wage and hour claim.  2013 WL 5937414, at *3.  *Fernandez* likewise applied the reasoning of *Spellman* but distinguished it based upon the language of the contract at issue.  *Fernandez* found that, unlike in *Spellman,* the relevant contract did not provide "that plaintiffs had any obligation to work for a set fee amount."  Slip op., Doc. 14-2, p. 11.

There is one relevant difference between this case and *Spellman,* although it does not assist Plaintiffs.  In this case, Plaintiffs seek to recover deductions from their compensation for personal business expenses that Plaintiffs elected and agreed could be deducted.  This category of damages was not analyzed in *Spellman,* likely because *Spellman* predominantly sought relief under the Fair Labor Standards Act (which is not concerned with wage deductions).  Plaintiffs' claim for reimbursement of deductions implicates Plaintiffs' duty under the Transportation Brokerage Agreement to reimburse certain personal business expenses that AEX initially paid and clearly involves an "obligation under" the Agreement.  Otherwise, both cases involve the

11

same contract, same indemnity provision, and same requested damages.  *Spellman* correctly analyzed the interplay between wage and hour claims and the TBA's indemnification provision. In this lawsuit, Plaintiffs challenge their contractual obligations to perform services as independent contractors, to accept as "total fees" the liquidated fee amounts to which they agreed, and to reimburse business expenses through charge-backs against their fees.  Plaintiffs contend that, contrary to their contractual agreements and obligations, they are employees, are entitled to overtime compensation for weekly hours worked in excess of forty, and should be compensated for the business expenses that were deducted from their fees.  As a consequence of this lawsuit and Plaintiffs' quarrel with their contractual obligations, AEX obviously has incurred and will continue incurring expenses in the form of litigation costs and expenses.

Finally, Plaintiffs contend that AEX's pleadings should have included the type of legal analysis found within this brief.  For instance, Plaintiffs contend AEX has not pled that Plaintiffs' lawsuit arose out of their obligations under the TBA.  Doc. 55, p. 18.  But AEX was not required to plead its legal arguments or to include a complete contractual analysis within its counterclaim or third-party complaint.  *See, e.g., Rabe v. United Air Lines, Inc.,* 636 F.3d 866, 872 (7th Cir. 2011) ("A complaint need not identify legal theories, and specifying an incorrect theory is not a fatal error."); *E.E.O.C. v. Peoplemark, Inc.,* 732 F.3d 584, 620 (6th Cir. 2013) (Carr, D.J., dissenting) (*citing* Wright et al., 5 Fed. Prac. & Proc. Civ., § 1219 (3d ed. 2012) ("[T]he Federal Rules of Civil Procedure do not require a plaintiff to plead legal theories[.]"). "[A] complaint need not pin plaintiff's claim for relief to a precise legal theory."  *Skinner v. Switzer,* 131 S.Ct. 1289, 1296 (2011).  "Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an

exposition of his legal argument." *Id.* AEX was not required, within its pleadings, to explain the import of particular words within the contractual language it block-quoted therein.

Plaintiffs' claims fall within the scope of that indemnification provision. One court evaluating the same provision has already rejected all of the precise arguments Plaintiffs make. Plaintiffs' motion to dismiss should be denied.

## III.   Plaintiffs Are Not Employees.  Their Public Policy Arguments Are Irrelevant.

A well-founded lawsuit implicates "the right of access to the courts [which] is an aspect of the First Amendment right to petition the Government for redress of grievances." *Bill Johnson's Restaurants, Inc. v. NLRB,* 461 U.S. 731, 741, 103 S.Ct. 2161, 76 L. Ed. 2d 277 (1983). A well-founded lawsuit is protected by the First Amendment, even assuming the unfounded retaliatory motive that Plaintiffs attribute to AEX. *Id.* at 743.

Regardless, the WHL and WPL do not prohibit this lawsuit. Plaintiffs forget that they are independent contractors. The WHL and WPL do not apply to independent contractors. *See, e.g.,* N.J. Stat. § 34:11-4.1(b) (expressly excluding "independent contractors and subcontractors" from definition of "employee"). It is impossible to retaliate against an independent contractor in violation of the WHL and WPL. No public policy stemming from the WHL or WPL protects Plaintiffs, who are independent contractors.

Plaintiffs do not and cannot explain how the public policies underlying the WHL or WPL are furthered by perfunctorily dismissing valid indemnity claims asserted against independent contractors who such laws do not even protect. Consequently, when the very applicability of a wage and hour law hinges upon resolving a question of employee misclassification, courts routinely find it is premature to dismiss a counterclaim for indemnity. *Spellman,* 680 F. Supp.2d at 192 ("But, whereas here, Defendant asserts that the FLSA is wholly inapplicable because Plaintiffs are 'independent contractors' exempt from the statute's scope, and resolution of that

issue will turn on the Court's application of a fact-intensive 'economic reality' test after discovery has been completed, the Court cannot say at this juncture that the counterclaim is preempted by, or contrary to the policy of, the FLSA."); *Costello,* 2013 WL 2156052, at *3 ("Defendant's counterclaim alleges that Plaintiffs were independent contractors, not Defendant's employees.  Since this allegation must be taken as true, the Court cannot find that an indemnity claim is barred by the case law described above because 'independent contractors' are exempt from the scope of the [wage and hour laws]."); *Montoya,* 2014 WL 2569451, at *2 ("Big Dog's status as an independent contractor or employee must first be decided prior to a determination as to the enforceability of the indemnification provision."); *Dobbins,* 2012 WL 2282560, at *2 ("the case law barring indemnification claims relating to FLSA liability will not apply to Defendant's counterclaim if Plaintiff is unsuccessful in proving that she was Defendant's employee").

And, to be certain, AEX concedes that its indemnification claims will fail if Plaintiffs prove an employment relationship.  In fact, AEX's pleadings make clear that AEX does not seek indemnification for any damages that Plaintiffs could recover in this action, but rather only for its fees and expenses incurred in defending against Plaintiffs' claims.  Doc. 8, p. 10, ¶ 13 ("AEX is entitled to enforce the terms of the Brokerage Agreement and recover from Plaintiffs its costs and expenses, including reasonable attorneys' fees, incurred by AEX in defending against the Class Action Complaint.").

Plaintiffs cite a number of cases that hold an employer cannot seek indemnity from an employee for the employer's wage and hour violations.  The cases cited by Plaintiffs are distinguishable because, in each, there was no question that the plaintiff was an "employee" and/or the defendant's liability was already established.  *See Quintana v. Explorer Enterprises, Inc.,* No. 09-22420-CIV, 2010 WL 2220310, at *2 (S.D. Fla., June 3, 2010) ("indemnification

claims *against employees or owners* are contrary to public policy and the legislative intent of the FLSA"); *Herman v. RSR Sec. Services,* 172 F.3d 132, 144 (2d Cir. 1999) ("[T]here is no right to contribution or indemnification for employers *held liable* under the FLSA."); *Lyle v. Food Lion, Inc.,* 954 F.2d 984, 987 (4th Cir. N.C. 1992) ("Food Lion sought to indemnify itself against Tew *for its own violation of the FLSA*, which the district court found, and we agree, is something the FLSA simply will not allow."); *Local 1035, Int'l Bhd. Of Teamsters v. Pepsi Allied Bottlers, Inc.,* 99 F. Supp.2d 219, 221 (D. Conn. 2000) (invalidating an indemnification clause found *in a labor agreement*); *Varnell, Struck & Associates, Inc. v. Lowe's Companies, Inc.,* No. 5:06-cv-068, 2008 WL 1820830, at *10 (W.D.N.C., Apr. 21, 2008) ("It would indeed be unconscionable for *an employer* to escape liability for unlawful labor practices by having *the employee agree to indemnify the employer* for FLSA violations."); *Emanuel v. Rolling in the Dough, Inc.,* No. 10 C 2270, 2010 WL 4627661, at *4 (N.D. Ill., Nov. 2, 2010) ("Every case to consider the issue of indemnification in the FLSA context has reinforced that to allow *employers* to seek indemnification from their employees *for FLSA violations* would frustrate the very purpose of the statute."); *Gustafson v. Bell Atl. Corp.,* 171 F. Supp.2d 311, 328 (S.D.N.Y. 2001) (after holding that the defendant was liable for violating the FLSA, the court observes, "there is no right to contribution or indemnification *for employers held liable* under the FLSA…"); *Villareal v. El Chile, Inc.,* 601 F. Supp.2d 1011, 1017 (N.D. Ill. 2009) ("[T]he IMWL's statutory goals would be undermined by diminishing *the employer's* compliance incentives if an employer were permitted to seek indemnity or contribution *from its employees for statutory violations*.") (emphasis added to all quotations).  Plaintiffs have not established, and cannot establish, that they are "employees" or that AEX has violated wage and hour laws.  The cases they cite are therefore inapposite.

IV.    **AEX's Third-Party Claims Against Plaintiffs' LLCs Survive.**

Plaintiffs contend that if the Court grants their motion to dismiss in relation to AEX's counterclaims against them, the Court should also consider AEX's third-party claims against Plaintiffs' LLCs to be "first party" claims (which Plaintiffs argue cannot be within the scope of an indemnity provision, *see* Section I, *supra.*).   In support, Plaintiffs contend that they are personally "inseparable" from their LLCs, and they liken their LLCs to partnerships.  Plaintiffs' contention is flawed.  A limited liability company is a separate entity from its members. *State Dept. of Envtl. Prot. v. Ventron Corp.,* 94 N.J. 473, 500, 468 A.2d 150 (1983).   In fact, by forming their LLCs, Plaintiffs received the benefit of insulating themselves from the liabilities of their companies.  *Id.*  If Plaintiffs wanted to form partnerships – which would have allowed them to be personally liable for the obligations of their independent businesses – they certainly could have done so.  Plaintiffs, who have for years personally received the protections of the law that flow from a presumption of corporate separateness, cannot now claim inseparability simply because their motion depends upon it.

Although the law presumes that Plaintiffs are distinct from their LLCs, Courts recognize that corporate veils can be pierced under certain circumstances.  These circumstances arise when a member is found to be the *alter ego* of his LLC.  *Alter ego* liability is determined based upon a multi-factor, fact-intensive inquiry which cannot be resolved on a motion to dismiss.  *Verni ex rel. Burstein v. Harry M. Stevens, Inc.,* 387 N.J. Super. 160, 199, 903 A.2d 475 (App. Div. 2006) (*quoting Trs. of the Nat'l Elevator Indus. Pension, Health Benefit & Educ. Funds v. Lutyk,* 332 F.3d 188, 193 (3d Cir. 2003)).   The factors courts consider in piercing the corporate veil under the *alter ego* theory include: failure to observe corporate formalities; gross undercapitalization; non-payment of dividends; day-to-day involvement of the directors, officers and personnel;

insolvency; siphoning of corporate funds by the dominant shareholder; non-functioning of other officers or directors; and absence of corporate records. *Id.,* 387 N.J. Super. at 200.  The burden is on the party seeking to pierce the veil to show it is appropriate. *Richard A. Pulaski Constr. Co. v. Air Frame Hangars, Inc*., 195 N.J. 457, 472, 950 A.2d 868 (2008).  In this case, the burden would be upon Plaintiffs, yet they make no effort whatsoever to establish any of the relevant factors.  Even if they did, it would not be appropriate to resolve such a fact intensive inquiry, pre-discovery, on a motion to dismiss.  The Court should disregard Plaintiff's claim that they are the "inseparable" from their LLCs.

## **CONCLUSION**

WHEREFORE, AEX respectfully requests the Court deny Plaintiffs' motion to dismiss AEX's Counterclaims and Third-Party Complaint.

Dated this 12th day of June, 2015.

Respectfully submitted,

**/s/ Peter T. Shapiro**
Peter T. Shapiro
LEWIS BRISBOIS BISGAARD & SMITH LLP
One Riverfront Plaza
Suite 1530
Newark, NJ 07102
Phone: (973) 577-6260
Fax: (973) 577-6261
peter.shapiro@lewisbrisbois.com

and

Alan L. Rupe, *pro hac vice*
Jason D. Stitt, *pro hac vice*
LEWIS BRISBOIS BISGAARD & SMITH LLP
1605 N. Waterfront Parkway, Suite 150
Wichita, KS 67206
Telephone: (316) 609-7900
Facsimile: (316) 462-5746
alan.rupe@lewisbrisbois.com
jason.stitt@lewisbrisbois.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 12th day of June, 2015, I filed the above and foregoing utilizing the Court's ECF system, which will automatically send an electronic notification to the following attorneys:

Peter Winebrake
R. Andrew Santillo
Mark J. Gottesfeld
WINEBRAKE & SANTILLO, LLC
715 Twining Road, Suite 211
Dresher, PA 19025

Harold L. Lichten
Matthew W. Thomson
Lichten & Liss-Riordan, P.C.
100 Cambridge Street, 20th Floor
Boston, MA 02114

/s Peter Shapiro
Peter Shapiro