**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

EVER BEDOYA, DIEGO GONZALES,
and MANUEL DeCASTRO, on behalf
of themselves and all others
similarly situated,

               Plaintiffs,

         v.

AMERICAN EAGLE EXPRESS, INC.,
d/b/a AEX GROUP,

              Defendant.

Civil Action No: 2:14-cv-02811 (ES)(JAD)

<u>Civil Action</u>

---

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION
FOR JUDGEMT ON THE PLEADINGS**

---

**JACKSON LEWIS P.C.
766 Shrewsbury Avenue
Tinton Falls, NJ 07960
(732) 532-6148
Attorneys for Defendant**

**Of Counsel and On the Brief:**
    Joseph C. DeBlasio, Esq.
    Gregory T. Alvarez, Esq.

**On the Brief:**
    Saranne E. Weimer, Esq.

## TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ....................................... iii

INTRODUCTION .................................................. 1

SUMMARY OF FACTS IN THE PLEADINGS ............................ 2

ARGUMENT ..................................................... 3

I. ........................................................... 3

    STANDARD FOR JUDGMENT ON THE PLEADINGS ............... 3

II. .......................................................... 5

    FAAAA PREEMPTION MUST BE BROADLY
    INTERPRETED AND CAN BE DECIDED WITHOUT
    EMPIRICAL EVIDENCE ................................... 5

III. ......................................................... 14

    THE LOGICAL, POTENTIAL IMPACT OF
    ADOPTING THE ABC TEST WILL NO DOUBT BE
    MORE THAN REMOTE, TENUOUS AND
    PERIPHERAL .......................................... 14

    A.  The ABC Test Is The Most Employer-
        Restrictive Test, Encompassing
        Individuals Properly Classified As
        Independent Contractors Under
        Federal Law .................................. 14

    B.  Count I And Count II Of
        Plaintiff's Complaint Are
        Preempted By FAAAA Because The
        Potential Impact On Prices,
        Routes, And Services Is
        Significant .................................. 22

    C.  Count III Of Plaintiffs' Complaint
        Is Also Preempted By FAAAA .................... 32

IV. .......................................................... 34

    CONCLUSION .......................................... 24

i

## TABLE OF AUTHORITIES

**Page(s)**

CASES

Bower v. Egyptair Airlines Co.,
  731 F. 3d 85 (1st Cir. 2013) ............................ 25, 34

Brown v. United Air Lines, Inc.,
  656 F. Supp. 2d 244 (D. Mass. 2009)........................ 10

Brown v. United Airlines, Inc.,
  720 F. 3d 60 (1st Cir 2013), cert. denied, 134 S. Ct.
  1787 (2014)......................................... 25, 27, 33

Carpet Remnant Warehouse, Inc. v. N.J. Dep't of Labor,
  125 N.J. 567 (1991)....................................... 17

Dan's City Used Cars v. Pelkey,
  133 S. Ct. 1769 (2013)..................................... 7

DiFiore v. American Airlines,
  646 F.3d 81 (1st Cir. 2011), cert. denied, 132 S.
  Ct. 761 (2011)..................................... 6, 25, 27

Dilts v. Penske Logistics,
  769 F.3d 637 (9th Cir. 2014) ............................. 13

Hargrove v. Sleepy's, L.L.C.,
  220 N.J. 289 (N.J. 2015)............................... passim

Huntington Operating Corp v. Sybonney Express, Inc.,
  No. H-08-781, 2010 U.S. Dist. LEXIS 55591 (S.D.
  Tex., May 11, 2010)....................................... 25

Marx Companies LLC v. Western Trans Logistics,
  2015 U.S. Dist. LEXIS 6432 (D.N.J. January 21, 2015)..........
  .................................................. 9, 27, 34

Massachusetts Delivery Association ("MDA") v. Coakley,
  769 F.3d 11 (1st Cir. 2014) ........................... passim

Massachusetts Delivery Association v. Coakley,
  No. 10-cv-11521, 2015 U.S. Dist. LEXIS 88537 (July
  8, 2015)........................................... 24, 27, 30

Morales v. Trans World Airlines,
  504 U.S. 374 (1992).................................... passim

ii

Morse v. Lower Merion Sch. Dist.,
    132 F.3d 902 (3d Cir. 1997)................................. 4

N.J. Carpenters & The Trustees Thereof v. Tishman
    Constr. Corp. of N.J.,
    760 F.3d 297 (3d Cir. 2014)................................. 4

Nationwide Freight Sys., Inc. v. Ill. Commerce Comm'n,
    784 F.3d 367 (7th Cir. 2015) ...........................11, 12

Non Typical, Inc. v. Transglobal Logistics Group Inc.,
    No. 10-C-1058, 2012 U.S. Dist. LEXIS 73452 (E.D.
    Wis. May 24, 2012)........................................ 25

Northwest v. Ginsberg,
    134 S. Ct. 1422 (2014)......................... 8, 10, 24, 33

Overka v. American Airlines, Inc.,
    790 F.3d 36 (1st Cir. 2015) ............................ 9, 27

Remington v. J.B. Hunt,
    No. 15-100100RGS, 2015 U.S. Dist. LEXIS 13825 (D.
    Mass. February 5, 2015)................................ 9, 26

Rowe v. New Hampshire Motor Transport Ass'n,
    552 U.S. 364 (2008)................................... passim

Sanchez v. Lasership,
    937 F. Supp. 2d 730 (E.D. Va. 2013).................... 14, 26

Schwann v. FedEx Ground Package System, Inc.,
    No. 11-11094-RGS, 2015 U.S. Dist. LEXIS 13826.............. 26

Thompson v. Real Estate Mortgage Network, Inc.,No.
    2:11-1494, 2015 U.S. Dist. LEXIS 67186, (D.N.J. May
    22, 2015)................................................. 3

Tobin v. Federal Express,
    775 F.3d 448 (1st Cir. 2014) ................... 27, 30, 32, 33

Travel All Over the World, Inc. v. Kingdom of Saudi
    Arabia,
    73 F.3d 1423 (7th Cir. 1996) ............................. 25

Travers v. JetBlue Airways Corp.,
    No. 08-10730, 2009 U.S. Dist. LEXIS 63699 (D. Mass.
    July 23, 2009)........................................... 10

Turbe v. Gov't of Virgin Islands,
    938 F.2d 427 (3d Cir. 1991) .................................. 4

Vlandis v. Kline,
    412 U.S. 441 (1973) ........................................ 31

Williams v. Midwest Airlines, Inc.,
    321 F. Supp. 2d 993 (E.D. Wis. 2004) ....................... 26

Witty v. Delta Air Lines, Inc.,
    366 F.3d 380 (5th Cir. 2004) ............................... 10

Yellow Transportation, Inc. v. DM Transportation
    Management Services,
    No. Civ. A. 2:06-c-1517, 2006 US Dist. LEXIS 51231
    (E.D. Pa, July 14, 2006) ................................... 26

**STATUTES**

Federal Aviation Administration Authorization Act of
    1994 ("FAAAA"), 49 U.S.C. § 14501 ..................... passim

N.J.S.A. § 34:11-4.2 ......................................... 23

N.J.S.A. § 34:11-4.4 ......................................... 23

N.J.S.A. § 34:11-56(a)(4) .................................... 23

N.J.S.A. § 43:21-19(i)(6) .................................... 17

**OTHER AUTHORITIES**

49 C.F.R. § 376.12 ........................................... 31

Charles Toutant, *NJ's Definition of 'Employee' Revives
    Sleepy's Class Suit*, NEW JERSEY LAW JOURNAL, May 13,
    2015 ..................................................... 21, 22

Department of Labor Administrator's Interpretation No.
    2015-1 (July 15, 2015) ................................... 19, 20

Fed. R. Civ. P. 12(c) ........................................ 3

H.R. Conf. Rep. No. 103-677 (1994), reprinted in 1994
    U.S.C.C.A.N. 1715 .......................................... 6

Rule 12(b)(6) ................................................ 4

Defendant American Eagle Express, Inc. ("AEX") files this Memorandum of Law in Support of its Motion for Judgment on the Pleadings, and in support thereof states as follows.

## **<u>INTRODUCTION</u>**

Defendant AEX is an entity covered by the Federal Aviation Administration Authorization Act of 1994 ("FAAAA"). Plaintiffs' lawsuit is the fourth lawsuit against Defendant AEX alleging misclassification of independent contractors. The plaintiffs in previous actions were represented by the same counsel as in the current Action. In all these lawsuits, Plaintiffs' counsel sought to represent a class of individuals claiming to be misclassified Independent Contractors ("ICs") utilized by AEX and its shipper-customers to provide courier delivery services. Plaintiffs here contend they are employees under the New Jersey Wage and Hour Law ("WHL") and the New Jersey Wage Payment Law ("WPL"). Plaintiffs do not assert any federal wage and hour claims in this Action.

On January 14, 2015 in <u>Hargrove v. Sleepy's, L.L.C.</u>, 220 N.J. 289 (N.J. 2015), the New Jersey Supreme Court adopted the ABC test – the most pro-employee, employer-restrictive test possible – as the standard for determining

1

employee status under New Jersey's WHL and WPL. It is axiomatic that the logical and potential impact of the restrictive ABC test on the rates, routes, and services of AEX, its shippers, and the ICs, is significant. This fact was made clear by the New Jersey Supreme Court, the plaintiffs' arguments urging adoption of the ABC test, and even public statements by Plaintiffs' counsel made after the <u>Sleepy's</u> decision was issued. Under these circumstances, Plaintiffs' Complaint is preempted by the FAAAA.

## SUMMARY OF FACTS IN THE PLEADINGS[1]

AEX is a logistics company referred to by Plaintiffs as a "regional package delivery company" that arranges for courier delivery services to a variety of customers such as hospitals, pharmaceutical companies, and pharmacies. <u>See</u> Plaintiffs' Complaint ("Compl."), ¶ 7.[2] AEX is headquartered in Aston, Pennsylvania and coordinates delivery services throughout several Mid-Atlantic States, including New Jersey. Compl. ¶¶ 7, 9, 10. Plaintiffs are owners and operators of independent third-party companies that

---

[1] AEX accepts Plaintiffs' allegations as true solely for purposes of this motion in accordance with the standard for a Motion for Judgment on the Pleadings. AEX reserves all arguments with regard to the merits of the factual allegations.

[2] Plaintiffs' Complaint is attached as Exhibit 1 to the Certification of Saranne E. Weimer, Esq. ("Weimer Cert.")

contract with AEX as independent contractors to provide delivery services for AEX's customer-shippers in and outside of New Jersey. Compl. ¶¶ 3-5, 16, 17; Third Party Complaint ("3P Compl.") ¶¶ 5-9; Exs. A-C. [3]   These independent business entities each entered a Transportation Broker Agreement ("TBA") that acknowledges the independent contractor status of the contracting entity and governs the entity's relationship with AEX. Compl. ¶ 16; Exs. A-C. Each of the named Plaintiffs executed a TBA on behalf of his respective entity. 3P Compl. ¶¶ 5-9; Exs. A-C. Plaintiffs claim that "although they are characterized as independent contractors, Plaintiffs and the class they seek to represent are employees under New Jersey law." Compl. ¶ 21.

## ARGUMENT

### I.    Standard for Judgment on the Pleadings

Courts review a Fed. R. Civ. P. 12(c) Motion for Judgment on the Pleadings under the same standard as a 12(b)(6) Motion to Dismiss. Thompson v. Real Estate Mortgage Network, Inc., No. 2:11-1494, 2015 U.S. Dist. LEXIS 67186, at 4-5 (D.N.J. May 22, 2015) ("A 12(b)(6) and 12(c) motion are almost identical, except that a 12(c) motion is made

---

[3] Defendant's Third Party Complaint is attached as Exhibit 2 to the Weimer Cert.

after filing of a responsive pleading."). Therefore, the familiar Rule 12(b)(6) standard applies on a 12(c) motion to dismiss. Turbe v. Gov't of Virgin Islands, 938 F.2d 427, 428 (3d Cir. 1991). Under this standard, the defendant, as the moving party, bears the burden of showing that no claim has been stated. Animal Science Products, Inc. v. China Minmetals Corp., 654 F.3d 462, 469 n.9 (3d Cir. 2011). For the purposes of a motion for judgment on the pleadings, the defendant must accept all factual allegations in the complaint as true and all reasonable inferences are drawn in favor of the plaintiffs. N.J. Carpenters & The Trustees Thereof v. Tishman Constr. Corp. of N.J., 760 F.3d 297, 302 (3d Cir. 2014). However, "the court is not bound to accept as true a legal conclusion couched as a factual allegation." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).

Here, Plaintiffs set forth disputed factual allegations which must be analyzed under the standard set forth in the newly adopted ABC test. Logic dictates that the adoption of the stricter ABC test has a potential impact on rates, routes or services that is more than simply "remote, tenuous or peripheral." Thus, Plaintiffs' claims are preempted by the Federal Aviation Administration Authorization Act of 1994, ("FAAAA"), 49 U.S.C. § 14501.

As explained below, this determination can be made now, as a threshold matter of law, without the need for discovery or empirical evidence.

### II. **FAAAA Preemption Must Be Broadly Interpreted And Can Be Decided Without Empirical Evidence.**

The FAAAA provides:

> General rule — Except as provided in paragraphs (2) and (3),[4] a State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law ***related to a price, route, or service*** of any motor carrier… or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.

49 U.S.C., 14501(c)(1) (emphasis added).

Congress' overarching goal in enacting the FAAAA was to ensure that transportation rates, routes, and services reflect "maximum reliance on competitive market forces" thereby stimulating "efficiency, innovation and low prices," as well as "variety" and "quality." Rowe v. New Hampshire Motor Transport Ass'n, 552 U.S. 364, 370 (2008) (citing Morales v. Trans World Airlines, 504 U.S. 374, 378 (1992)). Prior to the FAAAA, non-uniform state regulation of motor carriers caused "significant inefficiencies, increased costs, reduction of competition, inhibition of innovation and technology, and had curtail[ed] the

---

[4] Paragraphs 2 and 3 are inapplicable here.

expansion of markets." H.R. Conf. Rep. No. 103-677, at 86-88 (1994), reprinted in 1994 U.S.C.C.A.N. 1715, 1758-60. Significantly, the preemption provision of the FAAAA mirrors the preemption provision deregulating air carriers under the Airline Deregulation Act ("ADA"). This is a clear manifestation of Congress' intent to incorporate into the FAAAA the "broad preemption interpretation" of the ADA as announced by the United States Supreme Court in Morales, 504 U.S. at 383, and to "even the playing field" between air carriers and motor carriers. Id. at 85, 1994 U.S.C.C.A.N. at 1757, 1759; see also Massachusetts Delivery Association ("MDA") v. Coakley, 769 F.3d 11 (1st Cir. 2014). For this reason, cases addressing preemption under the ADA and FAAAA are often cited interchangeably. See e.g. DiFiore v. American Airlines, 646 F.3d 81, 86 n.4 (1st Cir. 2011), cert. denied, 132 S. Ct. 761 (2011).

To trigger preemption under the FAAAA, a state law must "relate to" a price, route or service of a motor carrier or broker "with respect to the transportation of property." 49 U.S.C. 14501(c)(1). As discussed above, this "related to" language was taken expressly from the ADA to

incorporate the broad interpretation standard already established by the Supreme Court in Morales.[5]

In Rowe, the Supreme Court analyzed the scope of claims implicating FAAAA preemption. The Court observed the wide range of possible claims to fall within the scope of FAAAA preemption:

> (1) that "[s]tate enforcement actions **having a connection with, or reference to"** carrier "rates, routes, or services' are pre-empted…"; (2) that preemption may occur even if a state law's effect on rates, routes or services "is only indirect…"; (3) that in respect to pre-emption, it makes no difference whether a state law is "consistent" or "inconsistent" with federal regulation …; and (4) that preemption occurs at least where state laws have a "significant impact" related to Congress' deregulatory and pre-emption related objectives…

Rowe, 552 U.S. at 370 (emphasis in original), quoting Morales, 504 U.S. at 384.

Rowe instructs that, **any** state law having a connection with, or reference to, the carrier's rates, routes, or services – even if the connection or reference is **indirect** is preempted. This is true even if the state law is **consistent** with federal regulation. Rowe, 552 U.S. at 370.

---

[5] The "with respect to the transportation of property" language is unique to the FAAAA. As the First Circuit explained in its discussion of Dan's City Used Cars v. Pelkey, 133 S. Ct. 1769 (2013), this "transportation of property" requirement does not mean that the law must "regulate" transportation of property – only that it must "concern" the transportation of property. MDA, 769 F.3d at 22.

The Supreme Court opined that allowing state regulation of motor carriers "could easily lead to a patchwork" or state laws, which "is inconsistent with Congress' major legislative effort to leave such decisions . . . to the competitive marketplace." Id. at 373.  The impact on rates, routes, or services is sufficiently significant *as long as it is more than "tenuous, remote or peripheral."* Morales, 504 U.S. at 386, 390 (emphasis added).  That is, if a law has a "'significant' and adverse 'impact' in respect to the federal Act's ability to achieve its pre-emption-related objectives" then the law is preempted. MDA, 769 F.3d at 18, citing Rowe, 552 U.S. at 371-72.  Preemption is triggered even if the significant impact is only *potential*, as long as the *potential* impact is more than "tenuous, remote, or peripheral." MDA, 769 F.3d at 21, citing Rowe, 448 F.3d at 82 n.14.

To determine whether a significant potential impact exists, courts need only to look to the *logical* effects of the state law. MDA, 769 F.3d at 21-22.  This is true for laws that are industry-specific as well as for laws of general application. Id.; see also, Northwest v. Ginsberg, 134 S. Ct. 1422 (2014) (common law claims against airline preempted by ADA); Rowe, 552 U.S. 364 (state law regarding tobacco transportation preempted by FAAAA); Morales, 504

U.S. 374 (consumer fraud laws against deceptive airline-fare advertisements preempted by ADA); <u>Overka v. American Airlines, Inc.</u>, 790 F.3d 36 (1st Cir. 2015) (ADA preempted airline curb-side baggage carriers statutory and common law wage claims); <u>Marx Companies LLC v. Western Trans Logistics</u>, 2015 U.S. Dist. LEXIS 6432 (D.N.J. January 21, 2015) (plaintiff's common law negligence claims against freight broker preempted by FAAAA).

Indeed, the majority of Courts to consider this preemption issue have found that ***no empirical evidence concerning the impact on prices, routes or services, is necessary*** to analyze the potential "logical effects" of the state law for the purpose of FAAAA preemption. See <u>MDA</u>, 769 F.3d at 20, 21. For this reason, the preemption issue is appropriate for adjudication at the pleadings stage and no discovery is necessary for the Court to rule on preemption. <u>Id</u>. at 21 ("We have previously rejected the contention that empirical evidence is necessary to warrant FAAAA preemption."); <u>Remington v. J.B. Hunt</u>, No. 15-100100RGS, 2015 U.S. Dist. LEXIS 13825 (D. Mass. February 5, 2015) (deciding FAAAA preemption on motion to dismiss stating "Empirical evidence in this regard is not necessary and courts may look to the logical effect that a particular scheme has on the delivery of services or the setting of

rates" (internal quotes omitted)); <u>see also</u> <u>Northwest</u>, 134
S. Ct. at 1425 (using logic to connect frequent flyer
program to airline rates without mention of empirical
data); <u>Morales v. Trans World Airlines</u>, 504 U.S. 374, 388
(1992)(finding preemption under the ADA by determining, "as
an economic matter," that the state regulation of false
advertising will have a significant forbidden effect on
fares, without mention of empirical data); <u>Witty v. Delta
Air Lines, Inc</u>., 366 F.3d 380, 383 (5th Cir. 2004) (using
logic rather than data to find significant effects); <u>Brown
v. United Air Lines, Inc.</u>, 656 F. Supp. 2d 244, 248 (D.
Mass. 2009)(finding ADA preemption on Motion to Dismiss);
<u>Travers v. JetBlue Airways Corp.</u>, No. 08-10730, 2009 U.S.
Dist. LEXIS 63699, at *9 (D. Mass. July 23, 2009) (granting
Motion to Dismiss based on ADA preemption).

In a case strikingly similar to this one, the First
Circuit recently found a basis for FAAAA preemption of the
"B" prong of the Massachusetts ABC test. <u>MDA</u>, 769 F.3d 11.
The <u>MDA</u> decision is discussed in more detail below.
However, the First Circuit emphasized the breadth of the
"related to" language, refusing to accept the Attorney
General's position that "background laws" are not subject
to FAAAA preemption., Additionally, the First Circuit
found that the ABC test "clearly concerns a motor carrier's

'transportation of property"' because the ABC test directly related to the classification of the couriers providing the delivery services. Id. at 23.  The Circuit Court further concluded the ABC test potentially has a significant impact on the prices, routes, or services provided by the company and the contractors.  Id.  The same is true in this case. On remand, the District Court in MDA found that "B" prong was in fact preempted under the analytical framework articulated by the First Circuit.

Although the scope of FAAAA preemption is extremely broad, not every state law touching upon carriers or freight brokers is preempted.  State laws with effects on rates, routes, or services that are only "tenuous, remote, or peripheral" are not preempted. Rowe, 552 U.S. at 371 (quoting Morales, 504 U.S. at 390).  For example, in Nationwide Freight Sys., Inc. v. Ill. Commerce Comm'n, 784 F.3d 367 (7th Cir. 2015), three motor carriers were cited for operating without a license in the state of Illinois. The Illinois Commerce Commission (ICC), in the course of the subsequent investigations, requested documents from the carriers that showed the dates of transport, cargo carried, origin and destination of the cargo, and revenues generated.  The request was made for the purpose of determining the length of time the carrier had operated in

the state without a license and whether the carrier operated with the appropriate amount of insurance. The ICC was authorized by the Illinois Commercial Transportation Law to make this request for information. The carriers refused to comply with the request, and were cited for their noncompliance with the investigation. The carriers each filed a motion to dismiss the citation, claiming the information request was preempted by the FAAAA because it was "related to" their prices, routes, or services. The Seventh Circuit acknowledged that responding to the information request would have disclosed the carriers' rates, routes, and services. However, the Circuit Court found that complying with the request for information would have had no significant *impact* on the carriers' rates, routes, or services. Therefore, the connection was too tenuous, remote, or peripheral. Id. at 374-75. This is obviously a different situation from the claims in this action, where the potential impact on the rates, routes, or services of AEX, its shipper-customers, and the ICs is substantial, as demonstrated in more detail below.

By way of another example, in a pre-MDA decision, the Ninth Circuit found that the application of a state law requiring meal and rest breaks for employee-drivers was too "tenuous, remote, or peripheral" for FAAAA preemption. See

Dilts v. Penske Logistics, 769 F.3d 637 (9th Cir. 2014).
Among other distinctions, Dilts involved a motor carrier
using **employees** to make short-haul **intrastate** deliveries.
The Ninth Circuit found no preemption because the impact on
the employer's rates, routes, or services as a result of
compliance with the state's meal and rest break
requirements for drivers already classified as employees
was too "tenuous, remote, or peripheral." Notably, the
concurring opinion made clear that the decision was "[o]n
this record, and in the intrastate context." Id. at 651
(Zouhary, concurring). The situation presented by this
lawsuit is far different from the one in Dilts. Here,
Plaintiffs admit that the services they provide are not
limited to intrastate deliveries. Furthermore, even Dilts
recognized that generally applicable statutes are preempted
if they have a "forbidden connection with prices, routes,
and services." Specifically, as observed in the MDA
decision, the Dilts Court noted that "laws mandating motor
carriers use (**or non-use**) of particular prices, routes, or
services in order to comply with the law are preempted."
Dilts, 769 F.3d at 646 (emphasis added). In other words,
when a state law regarding classification of independent
contractors may require a company to abandon the use of Its
preferred business model, a significant potential impact on

prices, routes, or services is obvious. Tellingly, *every case to address state laws governing the classification of workers in the regional courier service industry has found that the state laws are preempted by FAAAA* due to the state law's significant potential impact on rates, routes or services.  See MDA, 769 F.3d 11; Sanchez v. Lasership, 937 F. Supp. 2d 730 (E.D. Va. 2013).

### III. The Logical, Potential Impact Of Adopting The ABC Test Will No Doubt Be More Than Remote, Tenuous and Peripheral.

As explained further below, there can be no denying that the ABC test will potentially have a significant impact on the rates, routes or services of motor carriers and other employers covered by FAAAA doing business in New Jersey.  These entities could be using bona fide independent contractors under federal law.  But because of the ABC test, the most restrictive test for determining contractor status, the entities are likely to restructure their business models, adjust prices, change routes, or limit services.

### A. The ABC test is the most employer-restrictive test, encompassing individuals properly classified as Independent Contractors under Federal Law.

In the form of a certified question, the Third Circuit Court of Appeals asked the Supreme Court of New Jersey to decide the correct legal standard for determining whether an

individual is an employee or an independent contractor under the New Jersey Wage and Hour Law (WHL) and Wage Payment Law (WPL).   In Hargrove v. Sleepy's, L.L.C., 220 N.J. 289 (2015), the Court gave its answer, settling on the ABC test — the most employer-restrictive of all proposed tests.

The ABC test is different from the tests used under federal law to determine whether an individual is an employee or an independent contractor.  Under the Fair Labor Standards Act (FLSA), the federal parallel to the New Jersey wage laws at issue here – courts use the "economic realities" test, a fact intensive totality of the circumstances analysis.  Sleepy's, 220 N.J. at 311 (citing Donovan v. DialAmerica, 757 F. 2d 1376, 1382 (3d Cir. 1985)); see also U.S. Department of Labor, Wage and Hour Division, Administrator's Interpretation ("DOL AI") No. 2015-1 (July 15, 2015).[6]  Where legislation does not provide a method of defining the employment relationship, federal courts use the common law right to control test.[7] Sleepy's,

_____

[6] Attached as Exhibit 4 to the Weimer Cert.

[7] The common law "right to control" test is the narrowest of all of the tests.  Sleepy's, 220 N.J. at 307-08.   This test focuses on the degree of control and the means of control to determine whether an individual's actions were so controlled as to render the person an employee.  See Id. citing Cmty. for Creative Non-Violence v. Reid, 490 U.S. 730, 751 (1989).  The test is ultimately a totality-of-the-circumstances evaluation focusing on a number of factors relating to control over the individual.  Id.

220 N.J. at 308, citing Nationwide Mutual v. Darden, 503 U.S. 318, 322-23 (1992). In fact, the District Court in Sleepy's originally applied the common law test to New Jersey law.[8] The New Jersey Supreme Court considered – and rejected – both of these tests in Sleepy's, opting for a test that casts the widest possible net, resulting in the most individuals being classified as "employees."

As a result of New Jersey's adoption of the ABC test, logically, it can be expected that some individuals, classified as bona fide independent contractors under federal law, will potentially be classified as employees. Moreover, as discussed in more detail below, the logical, potential impact on carriers' prices, routes and services as a result of the reclassification of these individuals will be more than remote, tenuous and peripheral.

Two critical aspects of the ABC test distinguish it from any of the other tests which the New Jersey Supreme Court could have chosen. First, the hallmark of New Jersey's ABC test is that it begins with a **_presumption_** that every worker classified as an independent contractor is really an employee. Second, the employer caries the burden

---

[8]   The District Court's application of this test resulted in **_summary judgment in favor of Sleepy's finding the independent contractors were properly classified and were not employees under the New Jersey WPL and WHL_**.

to prove it can meet each prong of the ABC test or the individual at issue will be an employee as a matter of New Jersey state law.  None of the other tests available to the New Jersey Supreme Court at the time of the Sleepy's decision impose the same presumption of employee status, and place such an affirmative burden on the presumed employer.

In particular, to meet the ABC test, the employer must prove that **each** of the factors comprising the ABC test are in fact met.[9]  "[T]he failure to satisfy any one of the three criteria results in an 'employment' classification." Carpet Remnant Warehouse, Inc. v. N.J. Dep't of Labor, 125 N.J. 567, 581 (1991).  This conjunctive dimension to the ABC test is vastly different than all of the other tests available to the New Jersey Supreme Court.  Specifically, under the other tests, no one factor is determinative.

---

[9] Under New Jersey's ABC test, the presumed employer must prove each of the following factors to establish independent contractor status:
  A. Such individual has been and will continue to be free from control or direction over the performance of such service, both under his contract of service and in fact; **and**
  B. Such service is either outside the usual course of business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed; **and**
  C. Such individual is customarily engaged in an independently established trade, occupation, profession, or business.
See N.J.S.A. § 43:21-19(i)(6) (emphasis added).

Rather, courts are asked to examine the totality of the circumstances when assessing whether an individual is an employee or bona fide independent contractor.

Importantly, **in adopting the ABC test, the New Jersey Supreme Court acknowledged that it was adopting the test which, compared to the FLSA economic realities test, was more likely to lead to the conclusion that workers would be considered employees, and not independent contractors.** Sleepy's, 220 N.J. at 313-314. In its analysis, the New Jersey Supreme Court recognized that the FLSA was the impetus behind the adoption of the WHL. However, the Court felt that this fact did not require New Jersey to follow the federal test to determine the set of employees covered by state law. Sleepy's, 220 N.J. at 313. Instead, "New Jersey decided to take a different approach – one that presumes a person seeking protection of the WPL or WHL is an employee." Id. The Court observed that "the 'ABC' test operates to provide **more predictability** and may **cast a wider net than FLSA 'economic realities' standard**." Id. at 314 (emphasis added). Indeed, the Supreme Court expressly rejected the FLSA "economic realities" test *because* it utilizes a totality-of-the-circumstances framework which is less predictable and "may then yield a different result from case to case." Id. at 314-315.

In fact, recently, on July 15, 2015, David Weil, the Administrator of the Wage and Hour Division of the United States Department of Labor, issued Administrator's Interpretation No. 2015-1, which addresses and explains the applicable standard for cases under the FLSA claiming misclassification of employees as independent contractors. DOL AI No. 2015-1 (July 15, 2015). The document begins with a clear assertion that the "economic realities" test is the correct test for determining employment status under the FLSA. Id. at p. 2-4. Administrator Weil also affirms the "totality-of-the-circumstances" nature of the inquiry, stating as follows:

> In undertaking this analysis, each factor [10] is examined and analyzed in relation to one another, and **no single factor is determinative**. The "control" factor, for example, should not be given undue weight. **The factors should be considered in totality** to determine whether a worker is economically dependent on the employer, and thus an employee. **The factors should not be applied as a checklist**, but rather the outcome must be determined by a qualitative rather than a quantitative analysis.

---

[10] The exact articulation of factors can vary, but generally the factors are as follows: (1) the extent to which the work performed is an integral part of the employer's business; (2) the worker's opportunity for profit or loss depending on his or her managerial skill; (3) the extent of the relative investments of the employer and the worker; (4) whether the work performed requires special skills and initiative; (5) the permanency of the relationship; and (6) the degree of control exercised by the employer. See DOL AI 2015-1.

Id. at p.4(emphasis added).

The differences in substance, and framework, between the New Jersey ABC test and the FLSA "economic realities" test are obvious. New Jersey has elected to apply the most restrictive standard available for determining independent contractor status. The standard adopted *__presumes__* every one of AEX's ICs are actually employees and places a heightened burden on AEX to prove otherwise. No other test does this. The ABC test also requires that all prongs be met – meaning any one factor is controlling, as opposed to considering the factors in conjunction with the totality of the circumstances. No other test operates this way.

Even the plaintiffs and *amici* in Sleepy's made it clear that the ABC test was more restrictive than the common law test and the economic realities test. While urging the Court to adopt the "relative nature of the work" test – a hybrid test broader than the common law right-to-control test — counsel observed that "the New Jersey Department of Labor has applied a much stricter (far more favorable to the Plaintiffs) test drawn from the Unemployment Compensation statute[.]" Brief for Plaintiff-

Appellants at 4, <u>Hargrove v. Sleepy's</u>, 220 N.J. 289 (2014) (No. A-70) (parentheticals in original).[11]

In the reply brief, counsel for plaintiffs again highlighted the broad scope of the test, stating "It is **clear** that the ABC test is a standard of **exceptional breadth** and **expands coverage** of the wage laws **beyond those covered at common law** and would place the burden upon those seeking to avoid application of the wage laws' protections." Reply Brief of Plaintiffs-Appellants as to Amicus Briefs at 4, Hargrove v. Sleepy's, 220 N.J. 289 (2014) (No. A-70) **(**emphasis added).[12]

Public statements made by counsel in response to the <u>Sleepy's</u> decision also emphasize the significant impact created by the New Jersey Supreme Court's adoption of the ABC Test. <u>See</u>, <u>e.g.</u>, Charles Toutant, *NJ's Definition of 'Employee' Revives Sleepy's Class Suit*, New Jersey Law Journal, May 13, 2015,[13] (statement by counsel for the plaintiffs in <u>Sleepy's</u>, Harold Lichten (also plaintiffs' counsel in this action), that "[b]ecause the New Jersey Supreme Court has adopted the ABC test and because the test is considered to be extremely strict, meaning it's very hard to

---

[11] Attached as Exhibit 5 to Weimer Cert.
[12] Attached as Exhibit 6 to Weimer Cert.
[13] Attached as Exhibit 7 to Weimer Cert.

demonstrate someone is an independent contractor, we really believe ***it's going to be very difficult for Sleepy's to prevail, if not impossible.***") (emphasis added); <u>Id.</u> (a different statement attributed to Mr. Lichten's co-counsel in Sleepy's that the "Supreme Court ruling gives the plaintiffs in the Sleepys case and other independent contractor cases an ***easier path to victory.***") (emphasis added). Thus, the logical, potential significant impact of the adoption of the ABC test is universally acknowledged.

As further illustration of the potential significant impact, we note that <u>Sleepy's</u> prevailed on its motion for summary judgment as a matter of law under the common law test that its independent contractors were properly classified as such. But under the ABC test, by counsel's own words, it now is almost ***impossible*** for Sleepy's to prevail.[14]

**B. Count I and Count II of Plaintiffs Complaint are Preempted by FAAAA because the potential impact on prices, routes, and services is significant.**

Count I of Plaintiffs' Complaint alleges statutory violations of the New Jersey Wage Payment Law, (WPL),

---

[14] As of the date of this submission the Third Circuit has remanded the decision to the District Court but the District Court has not issued a decision on summary judgment.

N.J.S.A. § 34:11-4.2 and § 34:11-4.4, stemming from the alleged employee misclassification. Compl. ¶¶ 26-31. Count II of Plaintiffs' Complaint alleges statutory violations of the New Jersey Wage and Hour Law (WHL), N.J.S.A. § 34:11-56(a)(4), also based upon Plaintiffs' allegations of misclassification. Compl. ¶¶ 32-37. Each of these claims is dependent upon the outcome of the New Jersey ABC test as applied to Plaintiffs – a test designed and adopted for the purpose of capturing a different class of individuals than the federal tests.

As mentioned above, the First Circuit recently addressed a very similar issue when it was asked to consider whether the "B" prong of the Massachusetts ABC test was preempted by FAAAA. The Circuit Court's decision is instructive. As a preliminary issue, the First Circuit rejected the Attorney General's argument that "background" laws are not subject to FAAAA preemption, finding such a per se rule contrary to the purpose of FAAAA. The First Circuit held that if enforcement of the "B" prong of the Massachusetts ABC test had a potential significant impact on the prices, routes, or services, then preemption is the result. The First Circuit then remanded the case to the District Court to make a finding as to the real and logical effects of the "B" prong of the Massachusetts ABC test.

The District Court found that application of the "B" prong to couriers and contractors similar to AEX and its ICs had a clear and significant impact on prices, routes, or services.  The District Court held that the "B" prong was preempted.  <u>Massachusetts Delivery Association v. Coakley</u>, No. 10-cv-11521, 2015 U.S. Dist. LEXIS 88537 (July 8, 2015).[15]  The District Court looked at the real and logical effects of operating with employees versus independent contractors.  The court concluded that, taking a **_logical_** view, rates would need to be increased, routes would need to be adjusted, and services would be affected by the use employees instead of independent contractors.  <u>Id.</u>

Shortly before <u>MDA</u> was decided by the First Circuit, the United States Supreme Court highlighted the breadth of the parallel preemption provision when it found that a plaintiff's claims against an airline for breach of the covenant of good faith and fair dealing stemming from the termination of plaintiff's enrollment in the frequent flier program was preempted by the ADA.  <u>See</u> <u>Northwest v. Ginsberg</u>, 134 S. Ct. 1422 (2014).  This Supreme Court decision reinforced the many other pre-MDA decisions

_____

[15] Neither the district court, nor the First Circuit, was asked to address the "A" or "C" prongs due to the specific declaratory nature of the relief requested in that case.

holding that FAAAA (and the ADA) must be read to preempt all state regulation with an impact on rates, routes, or services, which is more than "tenuous, remote or peripheral." See e.g., Brown v. United Airlines, Inc., 720 F. 3d 50 (1st Cir 2013), cert. denied, 134 S. Ct. 1787 (2014) (skycaps' common law claims against United Airlines relating to tips and wages preempted by ADA); Bower v. Egyptair Airlines Co., 731 F. 3d 85 (1st Cir. 2013) (plaintiff's common law tort claims of interference with custodial relations, negligence negligent infliction of emotional distress, and loss of consortium preempted by the ADA); DiFiore v. American Airlines, Inc., 646 F. 3d 81 (1st Cir. 2011) (1st Cir. 2011) (ADA preempted the application of the Massachusetts Tips Law to skycaps working at Boston's Logan Airport); Travel All Over the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1432 n.8 (7th Cir. 1996) (punitive damages are preempted because they represent "an enlargement or enhancement [of the bargain] based on state laws or policies external to the agreement" (internal citations omitted)); Non Typical, Inc. v. Transglobal Logistics Group Inc., No. 10-C-1058, 2012 U.S. Dist. LEXIS 73452 (E.D. Wis. May 24, 2012) (negligence claims against broker preempted by FAAAA); Huntington Operating Corp v. Sybonney Express, Inc., No. H-08-781,

2010 U.S. Dist. LEXIS 55591 (S.D. Tex., May 11, 2010) (FAAAA preempts negligence claims against freight broker); Yellow Transportation, Inc. v. DM Transportation Management Services, No. Civ. A. 2:06-c-1517, 2006 US Dist. LEXIS 51231 (E.D. Pa, July 14, 2006) (claims of misrepresentation, unjust enrichment, quantum meruit, and fraud by interstate motor carrier against a freight broker preempted by FAAAA); Williams v. Midwest Airlines, Inc., 321 F. Supp. 2d 993, 995-96 (E.D. Wis. 2004) (passenger's tort claims arising out of airline's refusal to permit him to board were preempted);.   Also, in 2013, the Eastern District of Virginia considered an issue similar to MDA in Sanchez v. Lasership, 937 F. Supp. 2d 730 (E.D. Va. 2013). The result here, too, was that the Massachusetts ABC test was preempted by FAAAA.

Courts in recent months have continued to apply a uniformly broad interpretation of the FAAAA and ADA preemption provisions.   In both Remington, 2015 U.S. Dist. LEXIS 13825 and Schwann v. FedEx Ground Package System, Inc., No. 11-11094-RGS, 2015 U.S. Dist. LEXIS 13826, at *6, 24 Wage & Hour Cas. 2d (BNA) 460 (February 5, 2015), the District of Massachusetts held that the Massachusetts ABC test is preempted.   In December 2014, the First Circuit even found as preempted, claims for intentional infliction

of emotional distress, negligent infliction of emotional distress, and general negligence against FedEx under the ADA. <u>Tobin v. Federal Express</u>, 775 F.3d 448 (1st Cir. 2014). Shortly thereafter, in January 2015, Judge Pisano in the District of New Jersey found that a plaintiff's common law negligence claims against a freight broker were preempted by FAAAA. <u>Marx Companies L.L.C.</u>, 2015 U.S. Dist. LEXIS 6432. Recently, in June 2015, the First Circuit reaffirmed prior decisions in <u>Brown</u> and <u>DiFiore</u>, finding curb-side baggage carriers' statutory and common law clams pertaining to tips and wages were preempted by the ADA. <u>Overka</u>, 790 F.3d 36.

These cases provide overwhelming support for the view that the FAAAA preempts state laws, such as the New Jersey ABC test, if they interfere with competitive market forces in the industry as to routes, services, or pricing in a way that is not remote, tenuous or peripheral. Here, the impact is far beyond remote, tenuous or peripheral. Indeed, it is real, obvious, and significant. As explained by the District Court on remand in <u>MDA</u>, "[t]here are a myriad of additional costs incurred by a delivery company that depends upon employees as opposed to independent contractors." <u>Massachusetts Delivery Association v. Coakley</u>, 2015 U.S. Dist. LEXIS 88537, at *16 (D. Mass July

8, 2015).   As illustrated by the District Court on remand in MDA, if New Jersey law requires AEX to treat the ICs as employees, AEX would be required to track the contractors' work times to ensure they receive minimum wage and overtime payments for all qualifying hours, it would be required to issue payroll checks instead of settlement compensation for services rendered.   AEX would need to withhold and contribute appropriate amounts for social security, Medicare, unemployment, and income taxes; carry workers compensation insurance sufficient to cover each of the contractors.   The plaintiffs in Sleepy's acknowledged the enormous costs that would be imposed on businesses that rely on independent contractors found to be misclassified as employees, arguing to the Supreme Court of New Jersey that, "[f]ederal and state governments suffer significant loss of revenues due to independent contractor misclassification, in the form of unpaid and uncollectible income taxes, payroll taxes, and unemployment insurance and workers' compensation premiums." Brief for Plaintiff-Appellants at 27, Hargrove v. Sleepy's, 220 N.J. 289 (2014) (No. A-70).

In addition, AEX would need to determine eligibility for, and administer, leaves under the various employment-related laws; and navigate the myriad of other issues that

come with a workforce of employees. AEX would need to provide vehicles to employees, or reimburse employees for the use of their own vehicles. In addition, several cities within the state of New Jersey have mandatory sick leave policies. AEX would have to monitor the amount of time spent by each of the drivers within the borders of these cities to determine which, if any, of the laws were triggered, and then provide sick leave in accordance with these specific requirements. The overhead alone of administering all of these policies will have an obvious impact on prices. Additionally, when the actual costs of the many additional burdens and obligations are considered, there can be no doubt that the impact on AEX's prices is significant.

Further, once the individuals are classified as "employees" by the company for state law purposes, the restructured relationship triggers a host of federal laws. For instance, under the Affordable Care Act, AEX may be required to provide medical benefits to employees. AEX's prices would no doubt need to be increased to remain in business. The necessary price increases could jeopardize AEX's ability to be competitive in the regional courier service market.

Like the impact on rates, the impact on routes or services offered by AEX, its shipper-customers and the ICs also would be more than "remote, tenuous or peripheral." Currently, AEX has the ability to offer either scheduled or on-demand delivery services. As the Court logically concluded on remand in MDA, if a company has to use employees to make these deliveries, in order to have on-demand delivery services, it will have to pay employees to stand-by and wait for such orders. Massachusetts Delivery Association v. Coakley, 2015 U.S. Dist. LEXIS 88537, at *14 (D. Mass July 8, 2015) ("If Xpressman is to satisfy requests for prompt, unscheduled deliveries, then it logically must retain employees who are on-call and who must be compensated for that time, which is different from its current business model."). Further, "to avoid increased costs, delivery companies would logically need to assign multiple delivery routes (those requiring only a couple of hours to complete, for instance) to one employee." Id. at *15. "[W]hen a state law directly substitutes the state's own policies for competitive market forces, the state law produces precisely the effect the preemption clause seeks to avoid: 'a patchwork of state service-determining laws, rules, and regulations." Tobin, 775 F.3d a 455. Where a state law would require defendant

to perform certain services at the expense of alternative services, the impact of such a law is not simply "tenuous, remote, or peripheral." Rowe, 552 U.S. at 373.

By adopting the most restrictive test, New Jersey law now makes it more difficult than before (and more difficult than under federal law) to utilize bona fide independent contractors.   For all the reasons set forth above, the logical, potential impact on rates, routes or services will no doubt be significant and in any event more than simply remote, tenuous and peripheral. Thus, Count I and Count II of Plaintiffs' Complaint are preempted by FAAAA. [16]

Additionally, from a practical standpoint, the mere inconsistency between the standards adopted by different states raises potential due process concerns, especially when the ABC test presumes employee status, which AEX must rebut with affirmative proofs. See, e.g., Vlandis v. Kline, 412 U.S. 441, 446 (1973) (noting that the Supreme Court has repeatedly held that rules that "creat[e] a presumption which operates to deny a fair opportunity to rebut it

---

[16] Although not necessary for the instant motion, AEX reserves its rights regarding the portion of Count I that alleges AEX violated the WHL by making certain deductions. This claim is preempted by the Truth in Leasing Regulations, 49 C.F.R. § 376.12, which allows trucking companies like AEX the ability to enter into uniform, consistent, owner-operator leasing agreements, streamlining the contracting and lease administration.

violates the due process clause"). AEX is essentially required to operate with uncertainty and await the exposure of a legal challenge, or restructure its business operations to appease whichever state adopts the strictest standards regulating a field Congress expressly intended to de-regulate. Preventing these issues is exactly the purpose of FAAAA. FAAAA is intended to "enhance [delivery companies'] reliance on **competitive market forces** in order to shape their prices, routes, and services **not at one particular moment in time** but, rather, in response to the protean demands of the market" which "could change at any time." <u>Tobin</u>, 775 F.3d at 456.

> **C.  Count III of Plaintiffs' Complaint is also preempted by FAAAA.**

Count III of Plaintiffs' Complaint alleges unjust enrichment. Complaint ¶¶ 38-41. Plaintiffs' claims of unjust enrichment are likewise based on the alleged misclassification of the ICs. Plaintiffs claim that AEX "improperly classify [Plaintiffs] as contractors by reason of using a contract of adhesion which has allowed AEX to unjustly enrich itself . . . by requiring [Plaintiffs and putative plaintiffs] to have monies deducted from their paychecks which are improper and illegal, and to permit AEX

to shift numerous business costs over to Plaintiffs and members of the class." Compl. ¶ 39.

As a preliminary matter, it appears that even Plaintiffs agree that the classification of the ICs as "employees" under New Jersey state law would put AEX at an economic disadvantage. Stated another way, Plaintiffs' own allegations admit that AEX would need to absorb "numerous business costs" if the ICs were reclassified as employees under New Jersey law. These costs surely would impact AEX's rate structures in a way that is more than "remote, tenuous, or peripheral." Furthermore, for preemption purposes, it makes no difference that the claim here is asserted as a common law claim. State common law claims are considered an "other provision having the force and effect of law." Morales, 504 U.S. at 388. Therefore, common law claims are preempted by FAAAA where – as here — they have a forbidden effect on the prices, routes, and services of the carrier or broker. See Northwest, 134 S. Ct. 1422 (2014) (plaintiff's claim against airline for breach of covenant of good faith and fair dealing preempted by ADA); Brown, 720 F. 3d 60 (skycaps' common law claims against airline relating to tips and wages preempted by ADA); Tobin, 775 F.3d 448 (plaintiff's claims for intentional infliction of emotional distress, negligent infliction of

emotional distress, and general negligence preempted by ADA); Marx Companies L.L.C., 2015 U.S. Dist. LEXIS 6432 (Plaintiff's common law negligence claims preempted by FAAAA); Bower, 731 F. 3d 85 (1st Cir. 2013) (plaintiff's common law tort claims of interference with custodial relations, negligence negligent infliction of emotional distress, and loss of consortium preempted by the ADA).

Thus, for the reasons set forth above, Plaintiffs' unjust enrichment claims also cannot withstand the FAAAA preemption analysis.[17] Furthermore, even if only Counts I and II are preempted, then there could not have been any unjust enrichment by AEX, thus making Count III fatally flawed as a matter of law.

**IV.   Conclusion**

For the foregoing reasons, AEX submits that the plaintiffs' entire Complaint is preempted. Defendant respectfully requests that plaintiffs' Complaint be dismissed, with prejudice.

4818-1974-9412, v. 22-1974-9412, v. 17

---

[17] To the extent Plaintiffs' unjust enrichment claims are based on alleged improper deductions, these claims are also preempted by the Truth in Leasing Regulations.