IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| EVER BEDOYA, DIEGO GONZALES, and MANUEL DeCASTRO, on behalf of themselves and all others similarly situated, | : : : : | 2:14-cv-02811-ES-JAD |
| Plaintiffs, | : : | Motion Day:  September 21, 2015 |
| v. | : : | |
| AMERICAN EAGLE EXPRESS, INC. d/b/a AEXGroup., | : : : | |
| Defendant. | : : | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Harold Lichten
Matthew Thomson
LICHTEN & LISS-RIORDAN, P.C.
100 Cambridge Street, 20th Floor
Boston, MA 02114
Phone:  (617) 994 5800

Peter Winebrake
R. Andrew Santillo
Mark J. Gottesfeld
WINEBRAKE & SANTILLO, LLC
715 Twining Road, Suite 211
Dresher, PA 19025
Phone:  (215) 884-2491

*Plaintiffs' Counsel*

# **TABLE OF CONTENTS**

INTRODUCTION **(p. 1)**

SUMMARY OF THE FACTS **(p. 3)**

ARGUMENT **(p. 4)**

    I.     THE FAAAA DOES NOT PREEMPT PLAINTIFFS' STATE LAW
          WAGE CLAIMS. **(p. 4)**

          A.     Congress Never Intended to Preempt State Wage Laws. **(p. 6)**

          B.     New Jersey's Wage Laws Merely Regulate the Employment
                 Relationship and Therefore Are Not Preempted. **(p. 9)**

          C.     The Supreme Court's ERISA Preemption Cases Demonstrate
                 that State Wage and Employee Misclassification Laws Are Not
                 Preempted by the FAAAA. **(p. 14)**

          D.     New Jersey's "ABC" Test Does Not Require or Prohibit AEX
                 from Offering Any Price, Route, or Service to its Customers. **(p. 15)**

          E.     New Jersey's "ABC" Test Is No More Restrictive than Many
                 Other State Employment Law Tests for Employment Status. **(p. 17)**

          F.     A Finding of Employee-Status under New Jersey's Wage
                 Statutes Does Not Automatically Convert Plaintiffs into
                 "Employees" for Every State and Federal Employment Statute
                 under the Sun. **(p. 19)**

          G.     Plaintiffs Qualify as Employees under the Traditional Right to
                 Control and Independently Established Trade or Business Tests
                 Set Forth in Prongs A and C, Which Are Not Addressed by AEX's
                 Motion. **(p. 23)**

CONCLUSION **(p. 25)**

i

## **TABLE OF AUTHORITIES**

**Cases**

Alexander v. FedEx Ground Package Sys., Inc.,
       765 F.3d 981 (9th Cir. 2014) **(p. 24)**


Anderson v. American Airlines, Inc.,
       2 F.3d 590 (5th Cir. 1993), reh'g denied 9 F.3d 105 (5th Cir. 1993) **(p. 11)**


Ayotte v. Planned Parenthood of N. New England,
       546 U.S. 320 (2006) **(p. 25)**


Branche v. Airtran Airways, Inc.,
       342 F.3d 1248 (11th Cir. 2003) **(p. 6)**


California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.,
       519 U.S. 316 (1997) **(pp. 13, 14, 15)**


Californians for Safe & Competitive Dump Truck Transp. v. Mendonca,
       152 F.3d 1184 (9th Cir. 1998), cert. denied, 526 U.S. 160 (1999) **(pp. 8, 12, 13)**


Carpet Remnant Warehouse, Inc. v. New Jersey Dept. of Labor,
       593 A.2d 1177 (N.J. 1991) **(p. 19)**


City of Columbus v. Ours Garage and Wrecker Service, Inc.,
       536 U.S. 424 (2002) **(p. 5)**


Costello v. BeavEx, Inc.,
       303 F.R.D. 295 (N.D. Ill. 2014) **(pp. 11, 12, 16)**


Craig v. FedEx Ground Package Sys., Inc.,
       335 P.3d 66 (Kan. 2014) **(p. 24)**


D'Annunzio v. Prudential Ins. Co. of America,
       927 A.2d 113 (N.J. 2007) (**p. 21**)

Dan's City Used Cars, Inc. v. Pelkey,
        133 S.Ct. 1769 (2013) (**pp. 5, 14**)


De Buono v. NYSA-ILA Med. & Clinical Servs. Fund,
        520 U.S. 806 (1997) (**p. 14**)


DiFiore v. American Airlines, Inc.,
        646 F.3d 81 (1st Cir. 2011) (**pp. 11, 13**)


Dilts v. Penske Logistics, LLC,
        769 F.3d 637 (9th Cir. 2014), cert. denied, 135 S. Ct. 2049 (U.S.) (**pp. 8, 9, 11, 12-13**)


Franz v. Raymond Eisenhardt & Sons,
        732 F.Supp. 521 (D.N.J. 1990) (**p. 21**)


Filo Foods, LLC v. City of Seatac,
        2015 WL 4943967 (Wash. Aug. 20, 2015) (**pp. 9, 13**)


Gary v. Air Group, Inc.,
        397 F.3d 183 (3d. Cir. 2005) (**pp. 1, 5, 6, 9, 13**)


Gennell v. FedEx Ground Package Sys., Inc.,
        2013 WL 4854362 (D.N.H. Sept. 10, 2013) (**pp. 16, 21**)


Green v. Fund Asset Mgmt., L.P.,
        245 F.3d 214 (3d Cir. 2001) (**p. 5**)


Hargrove v. Sleepy's, LLC,
        106 A.3d 449 (N.J. 2015) (***passim.***)


Hargrove v. Sleepy's, LLC,
        2015 WL 2214541 (3d Cir. May 12, 2015) (**p. 21**)


In re FedEx Ground Package Sys., Inc.,
        758 F.Supp.2d 638 (N.D. Ind. 2010) (**pp. 21, 22**)


Int'l Paper Co. v. Ouellette,
        479 U.S. 481 (1987) (**p. 7**)

MacDougall v. Weichert,
      677 A.2d 162 (N.J. 1996) (**p. 20**)


Mass. Delivery Association v. Healey,
      2015 WL 4111413 (D. Mass. July 8, 2015) (**pp. 2, 18**)


Mass. Delivery Association v. Healey,
      No. 15-1908 (1st Cir.) (**p. 18**)


Medtronic, Inc. v. Lohr,
      518 U.S. 470 (1996) (**p. 6**)


Morales v. Trans World Airlines, Inc.,
      504 U.S. 374 (1992) (**p. 14**)


Nationwide Mutual v. Darden,
      503 U.S. 318 (1992) (**p. 20**)


New Jersey Carpenters and the Trustees Thereof v. Tishman Const. Corp. of New Jersey,
      760 F.3d 297, 302 (3d. Cir. 2014) (**p. 3**)


New York State Conf. of Blue Cross & Blue Shield v. Travelers Ins. Co.,
      514 U.S. 645 (1995) (**pp. 7, 8**)


Ocean City Exp. Co., Inc. v. Atlas Van Lines, Inc.,
      46 F.Supp.3d 503 (D.N.J. Sept. 11, 2014) (**p. 12**)


Quezada v. Con-Way Freight, Inc.,
      2012 WL 2847609 (N.D. Ca. July 11, 2012) (**p. 16**)


Remington v. J.B. Hunt Transport, Inc.,
      2015 WL 501884 (D. Mass. Feb. 5, 2015) (**p. 18**)


Remington v. J.B. Hunt Transport, Inc.,
      Case No. 15-1252 (1st Cir.) (**p. 18**)


Roberson v. Industrial Comm.,
      866 N.E.2d 191 (Ill. 2007) (**p. 21**)

Robles v. Comtrak Logistics, Inc.,
        2014 WL 7335316 (E.D. Ca. Dec. 19, 2014) (**p. 16**)


Rowe v. N.H. Motor Transport Assoc.,
        552 U.S. 364 (2008) (**pp. 5, 7, 15**)


S.C. Johnson & Son, Inc. v. Transport Corp. of America, Inc.,
        697 F.3d 544 (7th Cir. 2012) (**pp. 9, 21, 16**)


Schwann v. FedEx Ground Package System, Inc.,
        2015 WL 501512 (D. Mass. Feb. 5, 2015) (**p. 18**)


Schwann v. FedEx Ground Package System, Inc.,
        No. 15-1214 (1st Cir.) (**p. 18**)


Sebago v. Boston Cab Dispatch, Inc.,
        28 N.E.3d 1139 (Mass. 2015) (**p. 22**)


Sherman v. American Eagle Express, Inc.,
        2012 WL 748400 (E.D. Pa. Mar. 8, 2012) (**pp. 1, 22**)


Slayman v. FedEx Ground Package Sys., Inc.,
        765 F.3d 1033 (2014) (**p. 24**)


Speen v. Crown Clothing Corp.,
        102 F.3d 625 (1st Cir. 1996) (**p. 22**)


Taj Mahal Travel, Inc. v. Delta Airlines, Inc.,
        164 F.3d 186 (3d. Cir. 1998) (**pp. 5, 6**)


Tobin v. Federal Express Corp.,
        775 F.3d 448 (1st Cir. 2014) (**p. 9**)


Trauma Nurses Inc. v. Bd. of Review,
        576 A.2d 285 (N.J. App. Div. 1990) (**p. 25**)


Vector Marketing Corp. v. New Hampshire Dept. of Revenue,
        942 A.2d 1261 (N.H. 2008) (**p. 21**)

Villareal v. El Chile, Inc.,
        776 F.Supp.2d 778 (N.D. Ill. 2011) (**p. 24**)

Wyeth v. Levine,
        555 U.S. 555 (2009) (**p. 6**)

**Statutes/Regulations**

1991 Me. Legis. Serv. Ch. 507 (**p. 7**)

1992 Delaware Laws Ch. 217 (**p. 7**)

21 V.S.A. § 1301 (**p. 17**)

21 V.S.A. § 341 (**pp. 7, 17**)

820 Ill. Comp. Stat. 115/2 (**pp. 16, 21**)

Alaska Stat. § 23.20.525(a) (**p. 17**)

Arizona Revised Stat. § 23-352 (**p. 7**)

Arkansas Code Ann. § 11-10-210(e) (**p. 17**)

Conn. Gen. Stat. Ann. § 31-222(a)(1)(B)(ii) (**p. 17**)

Del. Code Ann. tit. 19, § 3302(10)(K) (**p. 17**)

Federal Aviation Administration Authorization Act of 1994,
        49 U.S.C. § 14501(c)(1) (**passim.**)

Mass. Gen. Laws c. 149, § 148B (**pp. 17, 18**)

Md. Code, Labor & Employment § 3-501 *et seq.* (**p. 7**)

M.G.L. c. 151, § 1 *et seq.* (**p. 7**)

Neb. Rev. Stat. § 48-1229(1) (**p. 17**)

N.H. Rev. Stat. § 281-A:2 (**p. 21**)

N.H. Rev. Stat. § 279 (**p. 21**)

N.H. Rev. Stat. § 282 (**pp. 17, 21**)

N.J.S.A. 34:11-4.1 (**p. 1**)

N.J.S.A. 34:1-56a (**pp. 1, 7**)

N.J.S.A. 43:21 (**p. 10**)

N.Y. Labor § 862-b (**p. 17**)

**Other Sources**

Brief of the United States, <u>Dilts v. Penske Logistics, LLC</u>,
      Ninth Circuit No. 12-55705 (filed Feb. 14, 2014) (**pp. 9-10**)

Department of Labor Administrator's Interpretation No. 2015-1 (July 15, 2015) (**pp. 23-24**)

H.R. Conf. Rep. No. 103-677 (1994) (**pp. 5, 7**)

President William J. Clinton, <u>Statement on Signing the Federal Aviation Administration Authorization Act of 1994</u>, 2 Pub. Papers 1494 (Aug. 23, 1994) (**p. 8**)

## INTRODUCTION

This is an action brought by Plaintiffs Ever Bedoya, Diego Gonzales, and Manuel DeCastro (collectively "Plaintiffs"), to recover illegal deductions and unpaid overtime compensation owed by their employer, Defendant American Eagle Express, Inc. d/b/a AEXGroup ("AEX"), under the New Jersey Wage Payment Law ("NJWPL") (Count I), the New Jersey Wage and Hour Law ("NJWHL"), and under a common law claim for unjust enrichment (Count III).[1] Plaintiffs, who worked full-time as delivery drivers for AEX in New Jersey, bring these claims for unlawful deductions and unpaid overtime compensation on behalf of themselves and all others similarly situated. AEX purports to classify all of its delivery drivers, including the Plaintiffs, as independent contractors. However, Plaintiffs assert that they were actually AEX's employees for purposes of New Jersey's wage laws.

AEX is attempting to avoid liability for its failure to properly classify its workers as employees and pay them their required wages under state law by arguing that the Plaintiffs' wage and misclassification claims are preempted by the Federal Aviation Administration Authorization Act of 1994 (FAAAA), 49 U.S.C. § 14501(c)(1). However, as set forth below, AEX has cited no evidence that Congress intended to preempt basic wage laws when it enacted the FAAAA, and in fact the Third Circuit has clearly stated that "garden variety employment claims" are <u>not</u> preempted. <u>Gary v. Air Group, Inc.</u>, 397 F.3d 183, 190 (3d. Cir. 2005). Indeed, every Circuit Court of Appeal to address the issue has held that state laws which merely regulate the employment relationship are not preempted, and that any indirect increase in cost that

---

[1] An identical class action was brought against AEX on behalf of a class of Pennsylvania drivers under that state's wage laws, and the case settled after the court granted the plaintiff drivers' motion for class certification on their claims for unlawful deductions. See <u>Sherman v. American Eagle Exp., Inc.</u>, 2012 WL 748400 (E.D. Pa. Mar. 8, 2012).

employment laws impose on motor carriers is too tenuous, remote, and peripheral to incur

preemption, and moreover, the Supreme Court's interpretation of the analogous preemption

language in ERISA – which the Supreme Court has adopted for purposes of the FAAAA –

confirm these courts' holdings that state wage laws have too tenuous a connection to a motor

carrier's prices, routes, or services to be preempted.

Here, AEX has not overcome the presumption against preemption by showing <u>any</u>

tangible way in which Plaintiffs' claims for wages requires AEX to provide (or prohibits AEX

from providing) any price, route, or service to its customers.  Indeed, at the motion to dismiss

stage, AEX has put forth <u>no</u> evidence to support its argument.  Plaintiffs merely claim when

AEX hires workers in the course of doing business, it must comply with basic state wage laws

with respect to its employees.  Although AEX argues that the definition of "employee" in this

case is unprecedented in its breadth, in fact many states utilize the same "ABC" test – with the

same presumption of employment status – as here.  Nor is AEX correct when it argues that a

finding of "employee" status under New Jersey's wage laws in this case will somehow

automatically convert the Plaintiffs into "employees" for every other state and federal

employment statute; as the New Jersey Supreme Court held in <u>Hargrove v. Sleepy's, LLC</u>, 106

A.3d 449, 465 (2015), each employment statute in New Jersey has its own distinctive definition

of "employee;" here, Plaintiffs have only alleged that they are employees under the NJWPL and

NJWHL.

Lastly, to the extent AEX relies on <u>Mass. Delivery Association v. Healey</u>, No. 10–cv–

11521, 2015 WL 4111413 (D. Mass. July 8, 2015), that case only addressed one prong of a

three-part test which differed in significant respects from its counterpart in the New Jersey ABC

test here, and even if this Court were to follow the holding in that case, the Court would still

2

have to deny AEX's motion for judgment on the pleadings because Plaintiffs can still prevail under the other two prongs of the ABC test.  In its motion for judgment on the pleadings, AEX *only* addresses prong B of the ABC test, one of the three prongs articulated by the New Jersey Supreme Court in Hargrove.  Thus, AEX's failure to address the other two prongs of the ABC test prevents this case from being dismissed in its entirety.  Therefore, as set forth more fully below, AEX's motion for judgment on the pleadings must be denied.

## SUMMARY OF THE FACTS[2]

AEX is a regional package delivery company that operates in New Jersey. Compl., ¶ 9-10.  Although AEX is in the business of providing deliveries for its customers, AEX purports to classify its entire workforce of delivery drivers as independent contractors.  Id., ¶ 21.  However, the facts establish that these drivers were actually AEX's employees for wage law purposes.

The named Plaintiffs all work full-time as delivery drivers for AEX for five days or more each week, and Plaintiffs Bedoya and DeCastro often work in excess of forty hours per week. Id., ¶¶ 11, 14, 17-20.  The Plaintiffs deliver packages for AEX along a regular route each day. Id., ¶¶ 14, 17.  Each morning, AEX requires the Plaintiffs and all of its other delivery drivers to report to an AEX warehouse by no later than 6:00 a.m.  Id.  The Plaintiffs are required to report for work each morning unless AEX gives them permission to take a day off.  Id., ¶ 18.

The Plaintiffs and other similarly situated are subject to significant control by AEX, including through written and unwritten policies and procedures that AEX requires each driver to

---

[2]      In reviewing a motion to dismiss filed under Fed. R. Civ. P. 12(c), the Court "must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff."  New Jersey Carpenters and the Trustees Thereof v. Tishman Const. Corp. of New Jersey, 760 F.3d 297, 302 (3d. Cir. 2014); see Turbe v. Gov't of Virgin Islands, 938 F.2d 427, 428 (3d Cir. 1991) (applying the same standards for a motion brought under Rule 12(c) as for a motion brought under Rule 12(b)(6)).

follow when delivering products to AEX customers, and AEX has the right to constantly monitor their performance.  Id., ¶ 24.  For example, AEX requires each Plaintiff to use a particular kind of electronic scanner to deliver each package, and this scanner enables AEX to track its drivers and the packages they deliver.  Id., ¶ 13.  Indeed, AEX markets itself to customers by claiming that it can strictly control, micromanage, and monitor the work being performed by its delivery drivers.  Id., ¶ 25.  Moreover, the Plaintiffs are economically dependent upon AEX for their livelihood, including because they work full-time for AEX and require AEX's permission to take time off.  Id., ¶¶ 3-5, 11, 18, 23.

AEX requires the Plaintiffs to bear its own expenses, including by taking deductions from the Plaintiffs' earnings to pay for its own ordinary business expenses, including for the cost of "occupational insurance," a mandatory electronic scanner, background checks, and drug testing. Id., ¶ 13, 17.   AEX also imposes deductions and penalties from its drivers' earnings as a form of discipline whenever AEX believes that a driver has failed to perform deliveries in the manner prescribed by AEX's procedures.  Id.  And although Plaintiffs and others often work more than forty hours per week, AEX does not pay any overtime premium compensation.  Id., ¶ 19, 37. Plaintiffs have brought this action to recover all unpaid wages, including overtime compensation and all deductions AEX has unlawfully made from their wages.

## ARGUMENT

### I.     THE FAAAA DOES NOT PREEMPT PLAINTIFFS' STATE LAW WAGE CLAIMS.

AEX has failed to meet its burden of showing any way in which the NJWPL and NJWHL's definition of the term "employee" has any prohibited effect on its prices, routes, or services.  The Federal Aviation Administration Authorization Act of 1994 (FAAAA), 49 U.S.C.

4

§ 14501(c)(1), only preempts state laws that are "related to a price,[3] route, or service of any motor carrier … with respect to the transportation of property."  The Supreme Court has interpreted the "related to" language in the FAAAA to be identical in scope to the preemption clause found in the Airline Deregulation Act (ADA). <u>Rowe v. N.H. Motor Transport Assoc.</u>, 552 U.S. 364, 370 (2008).[4]  In <u>Gary v. Airgroup, Inc.</u>, 397 F.3d 183, 186 (3d Cir. 2005), the Third Circuit held that a state law is only preempted under the ADA (or its counterpart, the FAAAA) if it "expressly references the … carrier's prices, routes or services, or has a forbidden significant effect upon the same.  At the same time, however, the Supreme Court has indicated that there are 'real limitations to the [ADA's] preemptive scope, stating ... some state actions may affect [fares] in too tenuous, remote or peripheral a manner to have preemptive effect.'"  <u>Id</u>. at 186-87, <u>quoting</u> <u>Taj Mahal Travel, Inc. v. Delta Airlines, Inc.</u>, 164 F.3d 186, 191 (3d. Cir. 1998) (<u>citing</u> <u>Morales v. Trans World Airlines, Inc.</u>, 504 U.S. 374, 390 (1992)) (internal citation omitted).  "[T]he party claiming preemption bears the burden of demonstrating that federal law preempts state law." <u>Green v. Fund Asset Mgmt., L.P.</u>, 245 F.3d 214, 230 (3d Cir. 2001)  Here, AEX has not shown any way in the definition of the term "employee" under New Jersey's wage laws has any effect on AEX's prices, routes, or services, let alone a "significant effect" as required for preemption –

---

[3]     As explained later, the state regulation of "prices" that Congress sought to preempt came in the form of price controls that directly regulated the prices motor carriers were allowed to charge customers, <u>see</u> H.R. Conf. Rep. No. 103-677, 87 (1994), not employment laws and similar state laws that only indirectly affect a motor carrier's costs but do not bind a motor carrier to any particular price.

[4]     There is, however, "one conspicuous alteration [to the FAAAA's preemption clause] — the addition of the words 'with respect to the transportation of property,'" <u>Dan's City Used Cars, Inc. v. Pelkey</u>, 133 S.Ct. 1769, 1778 (2013), which "'massively limits the scope of preemption' ordered by the FAAAA." <u>Id</u>., <u>quoting</u> <u>City of Columbus v. Ours Garage and Wrecker Service, Inc.</u>, 536 U.S. 424, 449 (2002) (SCALIA, J., dissenting).

and this is especially true at the motion to dismiss stage, where AEX has put forth no evidence whatsoever to support its argument.

### A.  Congress Never Intended to Preempt State Wage Laws.

As an initial matter, the Court's preemption analysis "must be guided by two cornerstones of our pre-emption jurisprudence."  Wyeth v. Levine, 555 U.S. 555, 566 (2009). "First, 'the purpose of Congress is the ultimate touchstone in every pre-emption case.'"  Id., quoting Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996).  "Second, '[i]n all pre-emption cases … we 'start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act *unless that was the clear and manifest purpose of Congress*.'" Id., quoting Lohr, 518 U.S. at 485 (emphasis added).  Thus, in the analogous context of the ADA preemption clause, the Third Circuit has emphasized "the well-established principle that 'courts should not lightly infer preemption,'"  Gary v. Air Group, Inc., 397 F.3d 183, 190 (3d. Cir. 2005), quoting Int'l Paper Co. v. Ouellette, 479 U.S. 481, 491 (1987), and that "[t]his is particularly apt in the employment law context which falls 'squarely within the traditional police powers of the states, and as such should not be disturbed lightly.'"  Id., quoting Branche v. Airtran Airways, Inc., 342 F.3d 1248 (11th Cir. 2003); see also Taj Mahal, 164 F.3d at 192 ("Even 'where federal law is said to bar state action in fields of traditional state regulation, we have worked on the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'"), quoting New York State Conf. of Blue Cross & Blue Shield v. Travelers Ins. Co., 514 U.S. 645, 655 (1995).

There is simply no evidence that Congress intended the FAAAA to preempt basic state wage laws or their definitions of the term "employee."  In passing the FAAAA's preemption

clause, Congress merely sought to eliminate a "patchwork of regulations" that had arisen among the states: "[t]ypical forms of [these] regulation[s] include entry controls, tariff filing and price regulation, and types of commodities carried." H.R. Conf. Rep. No. 103-677, 87 (1994); see Pelkey, 133 S.Ct. at 1780 (Congress was concerned with "a patchwork of state service-determining laws"), quoting Rowe, 552 U.S. at 373.[5]  Thus, "[t]he purpose of [the FAAAA] is to preempt economic regulation by the States, not to alter, determine or affect in any way … whether any carrier is or should be covered by one labor statute or another…." Id. at 88; see id. at 86 ("nothing in [the FAAAA] is intended to change the application of State tax laws to motor carriers").

It is revealing that when the FAAAA was enacted in 1994, the majority of states had wage payment and overtime laws on the books,[6] yet there is no evidence that Congress intended to silently preempt such a vast body of employment law as applied to motor carriers.  In fact, when President Clinton signed the FAAAA into law, he predicted in his signing statement that the FAAAA's deregulatory measures would actually allow "employment in the trucking services

---

[5]     Congress expressly recognized that states could continue to regulate matters such as insurance, financial responsibility, and vehicle safety, and that "[t]his list is not intended to be all inclusive, but merely to specify some of the matters which are not [regulations of] 'prices, rates, or services' and which are therefore not preempted."  H.R. Conf. Rep. No. 103-677, at 84-85.

[6]     See, e.g., Arizona Revised Stat. § 23-352 (wage withholding statute first enacted in 1980); New Jersey Stat. Ann. 34:11-56a4 (overtime law enacted in its current form in 1992); 1991 Me. Legis. Serv. Ch. 507 (increasing the minimum wage rate for employers in Maine that was first established in 1954); 1992 Delaware Laws Ch. 217 (H.B. 353) (establishing when wages are due and payable); Md. Code, Labor & Employment § 3-501 et seq. (Maryland Wage Payment and Collection Law first enacted in 1991); 21 V.S.A. § 342 (Vermont law requiring weekly payment of wages, first enacted in 1963); M.G.L. c. 151, § 1 et seq. (Massachusetts minimum wage and overtime law, first enacted in 1947).

industry [to] increase substantially."  President William J. Clinton, <u>Statement on Signing the Federal Aviation Administration Authorization Act of 1994</u>, 2 Pub. Papers 1494 (Aug. 23, 1994).

Analogously, the Ninth Circuit used a similar analysis to hold that California's prevailing wage laws were not preempted as applied to motor carriers.  In <u>Californians for Safe & Competitive Dump Truck Transp. v. Mendonca</u>, the Ninth Circuit found it "revealing" that "Congress identified forty-one jurisdictions which regulated intrastate prices, routes and services, followed by ten jurisdictions which did not…," and that "[o]f the ten jurisdictions which Congress found *did not* regulate intrastate prices, routes and services, seven of these jurisdictions had, and continue to have, general prevailing wage laws…." 152 F.3d 1184, 1187 (9th Cir. 1998) (emphasis in original), <u>cert</u>. <u>denied</u>, 526 U.S. 160 (1999), <u>citing</u> H.R. Conf. Rep. 103-677, at 86 (1994).  In holding that the FAAAA does not preempt state prevailing wage laws, the Ninth Circuit reasoned that "[t]his portion of the legislative history constitutes indirect evidence that Congress did not intend to preempt [prevailing wage laws]," and furthermore "[t]his perception is reinforced by the absence of any positive indication in the legislative history that Congress intended preemption in this area of traditional state power." <u>Id</u>. at 1188, <u>citing</u> <u>New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.</u>, 514 U.S. 645, 655 (1995); <u>see</u> <u>also</u> <u>Dilts v. Penske Logistics, LLC</u>, 769 F.3d 637, 644 (9th Cir. 2014) (holding that the FAAAA does not preempt employee meal and rest break laws, reasoning that "Congress did not intend to preempt generally applicable state transportation, safety, welfare, or business rules that do not otherwise regulate prices, routes, or services."), <u>cert. denied</u>, 135 S. Ct. 2049.  Recently, the Washington Supreme Court likewise held that the analogous preemption clause in the ADA did not preempt a $15-per-hour minimum wage law, reasoning that the law merely "establishes minimum wage and other employee protections – it does not directly regulate … prices and

8

services…." Filo Foods, LLC v. City of Seatac, 2015 WL 4943967, *15-16 (Wash. Aug. 20, 2015) (en banc), citing DiFiore v. American Airlines, Inc., 646 F.3d 81, 89 (1st Cir. 2011). AEX has put forth no evidence that Congress intended for the FAAAA to preempt state wage laws and, therefore, the presumption against preemption applies in this case as AEX's motion must be denied.

**B.    New Jersey's Wage Laws Merely Regulate the Employment Relationship and Therefore Are Not Preempted.**

The Third Circuit and every other circuit court to address the issue have unanimously held that the FAAAA and its counterpart, the ADA, do not preempt state laws that merely regulate the employment relationship between a carrier and the carrier's worker. Gary, 397 F.3d at 190 ("garden variety employment claims" that do not directly regulate a carrier's prices, routes, or services are not preempted by the ADA); Tobin v. Federal Express Corp., 775 F.3d 448, 456 (1st Cir. 2014) (drawing the "preemption 'dividing line' between state laws that regulate 'how a service is performed' (preempted) and those that regulate how [a business] behaves as an employer or proprietor (not preempted)."), quoting DiFiore v. American Airlines, Inc., 646 F.3d 81, 87-88 (1st Cir. 2011) (laws that "merely [regulate] how the [business] behaves as an employer or proprietor" are not preempted."); S.C. Johnson & Son, Inc. v. Transport Corp. of America, Inc., 697 F.3d 544, 558 (7th Cir. 2012) (the FAAAA does not preempt state laws that affect motor carriers "only in their capacity as members of the public," such as "minimum wage laws").   In a recent amicus brief filed with the Ninth Circuit in Dilts, 769 F.3d 637, the United States has also taken the position that the FAAAA does not preempt state laws that only regulate motor carriers in their capacity as employers, such as state laws governing income taxes, workers' compensation coverage, or minimum wage compensation. See Brief of the United

9

States, <u>Dilts v. Penske Logistics, LLC</u>, Ninth Circuit No. 12-55705, pp. 19-20 (filed Feb. 14, 2014) (attached hereto as Exhibit A).  In its amicus brief, the United States – informed by the expertise of the U.S. Department of Transportation and the Federal Motor Carrier Safety Administration, their exercise of delegated authority from Congress, and their interpretation of their own regulations, <u>id</u>. at 30-31, – advised that "there is nothing to suggest that, in legislating to promote maximum reliance on competitive market forces, Congress intended to insulate motor carriers from the ordinary incidents of state regulation applicable to every employer," such as a "workers' compensation scheme, or minimum wage law…." <u>Id</u>. at 20 (<u>citing</u> <u>S.C. Johnson & Son, Inc.</u>, 697 F.3d at 558).

As explained by the New Jersey Supreme Court in <u>Hargrove v. Sleepy's, LLC</u>, 106 A.3d 449, 465 (2015), the "ABC" test that AEX challenges in this case merely defines who qualifies as an employee "under the [New Jersey Wage and Hour Law (NJWHL)]" as well as the New Jersey Wage Payment Law (NJWPL).  The ABC test provides that:

> Services performed by an individual for remuneration shall be deemed to be employment subject to this chapter … unless and until it is shown to the satisfaction of the division that:
>
> (A) Such individual has been and will continue to be free from control or direction over the performance of such service, both under his contract of service and in fact; and
>
> (B) Such service is either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and
>
> (C) Such individual is customarily engaged in an independently established trade, occupation, profession or business.

N.J.S.A. 43:21-19(i)(6)(A)-(C).  Nothing in the ABC test dictates the prices, routes, or services that AEX offers to its customers.  Instead, it merely governs the employment relationship between businesses like AEX and their workers.  <u>See</u> <u>Hargrove</u>, 106 A.3d at 463 ("Like the

10

FLSA, the WPL and WHL address the most fundamental terms of the employment relationship.").

In Costello v. BeavEx, Inc., 303 F.R.D. 295, 303 (N.D. Ill. 2014), the defendant courier company argued at summary judgment that a similar ABC test set forth in the Illinois Wage Payment and Collection Act (IWPCA), 820 Ill. Comp. Stat. 115/2, was preempted by the FAAAA for the same reasons that AEX asserts here.  The court in Costello rejected that argument, however, because the ABC test "only applies to the employment relationship between employers and employees in general, therefore operating at least a step away from the point that [the defendant courier company] offers services to customers." Id.  For the same reason, Plaintiffs' independent contractor misclassification claim under New Jersey's ABC test is not preempted by the FAAAA.

Moreover, a state employment law is not preempted merely because it "imposes costs on [motor carriers] and therefore affects [prices] because costs must be made up elsewhere, i.e. other prices raised or charges imposed." DiFiore, 646 F.3d at 89;[7] see Anderson v. American Airlines, Inc., 2 F.3d 590, 597 (5th Cir. 1993), reh'g denied 9 F.3d 105 (5th Cir. 1993) (state law claim for retaliatory discharge of an employee for filing a workers' compensation claim, and a resulting claim for money damages, not preempted by the ADA because "[a]ny effect that such a claim may have on [the airline's] services is far too remote to trigger pre-emption," and moreover "[w]e cannot find that Congress clearly intended" to preempt such a claim); Dilts, 769 F.3d at 646 ("regulations that are several steps removed from prices, routes, or services, such as

_____

[7]    In DiFiore, the court only found that the Massachusetts Tips Law was preempted because it directly regulated how the airline charged customers for its curbside baggage claim service, "not merely how the airline behaves as an employer…," such as by requiring larger font on fare advertisements and the bundling of curbside baggage fees into ticket prices.

prevailing wage laws …, are not preempted, even if employers must factor those provisions into

their decisions about the prices they set….”), cert. denied, 135 S. Ct. 2049;  Mendonca, 152 F.3d

at 1189 (state prevailing wage law that allegedly would cause the motor carrier to “increase[] its

prices by 25%” but does not directly regulate the motor carrier’s prices, routes, or services has an

“effect [that] is no more than indirect, remote, and tenuous” and is therefore not preempted);

Ocean City Exp. Co., Inc. v. Atlas Van Lines, Inc., 46 F.Supp.3d 503, 510-12 (D.N.J. Sept. 11,

2014) (holding that a “state law prohibiting termination of a franchise agreement without written

notice demonstrating good cause … bears simply too remote and tenuous an impact on rates,

routes, or services to fall within Congress' intended preemption” under the FAAAA, even if

enforcement of the state law may indirectly “result in increased costs”); Costello, 303 F.R.D. at

303 (“The [Illinois Wage Payment and Collection Act and its ABC test for employment status]

regulates the operation of the underlying employment relationship which plays a role in setting

the market price…,” but “[t]his is not sufficient to support preemption.”).

     As the Seventh Circuit explained, virtually every state law can be linked in some remote

way to a motor carrier’s prices, routes, or services, but that is not enough to create preemption:

> For example, labor inputs are affected by a network of labor laws,
> including minimum wage laws, worker-safety laws,
> antidiscrimination laws, and pension regulations.  Capital is
> regulated by banking laws, securities rules, and tax laws among
> others. … Changes to these … laws will ultimately affect the costs
> of these inputs, and thus, in turn, the ‘price … or service’ of the
> outputs. Yet no one thinks that the ADA or the FAAAA preempts
> these and many comparable state laws … because their effect on
> price is too ‘remote.’  Instead, laws that regulate these inputs
> operate one or more steps away from the moment at which the firm
> offers its customer a service for a particular price.

S.C. Johnson, 697 F.3d at 558; see also Dilts, 769 F.3d at 643 (“Because ‘everything is related to

everything else,’” courts must carefully “draw a line between laws that are significantly ‘related

to' rates, routes, or services … and those that have only a tenuous, remote, or peripheral

connection…."), quoting California Div. of Labor Standards Enforcement v. Dillingham Constr.,

N.A., Inc., 519 U.S. 316, 335 (1997) (Scalia, J., concurring).  And recently, the Supreme Court

of Washington adopted the reasoning of the First and Ninth Circuits in DiFiore and Mendonca,

to hold that a $15-per-hour minimum wage and anti-retaliation law targeting workers at the

Seattle-Tacoma International Airport was not preempted by the ADA, reasoning that:

> [The $15 per hour minimum wage law] regulates employer-
> employee relationships and its affect on airline prices and services
> is only indirect and tenuous.  [The law] establishes minimum
> wage and other employee protections – it does not directly
> regulate airline prices and services.  The fact that [the law] may
> impose costs on airlines and therefore affect fares is
> inconsequential.  As the First Circuit noted, holding that a state
> law is preempted in that circumstance 'would effectively exempt
> airlines from state taxes, state lawsuits of many kinds, and
> perhaps most other state regulation of any consequence.'

Filo Foods, LLC v. City of Seatac, 2015 WL 4943967, *15-16 (Wash. Aug. 20, 2015) (en banc),

quoting DiFiore, 646 F.3d at 89.

　　　　Here, Plaintiffs' claims for wages are merely "garden variety employment claim[s]" that

are not preempted by the FAAAA. Gary, 397 F.3d at 190.  AEX complains that the statutory

definition of "employee" that applies to Plaintiffs' wage claims will have a prohibited significant

effect on its prices, routes, and services, but that definition merely places a label on certain

workers, and therefore has no independent force or effect; instead, the ***only possible effect*** of an

"employee" label in this case derives from the underlying substantive wage obligations that the

Plaintiffs seek to enforce here:  the New Jersey Wage Payment Law and the New Jersey Wage

and Hour Law.  Yet these wage laws only affect AEX in its capacity as an employer, and they do

not require AEX to provide any service, price, or route, or prohibit AEX from providing any

service, price, or route.  Instead, they merely require AEX, in its capacity as an employer, to pay the required wages to its employees, and therefore any effect on its prices, routes, or services is too tenuous, remote, and peripheral to be preempted.

> **C.    The Supreme Court's ERISA Preemption Cases Demonstrate that State Wage and Employee Misclassification Laws Are Not Preempted by the FAAAA.**

The Supreme Court's interpretation of the analogous "relates to" preemption clause in ERISA supports the conclusion that the FAAAA does not preempt Plaintiffs' wage and misclassification claims.  See Dillingham Constr., 519 U.S. 316, 330-34 (1997) (prevailing wage law not preempted because it "alters the incentives, but does not dictate the choices, facing ERISA plans" and in this way "is 'no different from the myriad state laws in areas traditionally subject to local regulation, which Congress could not possibly have intended to eliminate.'"), quoting Travelers Ins. Co., 514 U.S. 645, 668 (1995); De Buono v. NYSA-ILA Med. & Clinical Servs. Fund, 520 U.S. 806, 816-17 (1997) ("Any state tax, or other law that increases the cost of providing benefits to covered employees will have some effect on the administration of ERISA plans, but that simply cannot mean that every state law with such an effect is pre-empted….").

In Morales v. Trans World Airlines, Inc., the Supreme Court interpreted the analogous ADA preemption clause as having the same meaning and scope as ERISA's preemption clause.  504 U.S. 374, 384 (1992) ("Since the relevant language of the ADA is identical [to the ERISA preemption clause], we think it appropriate to adopt the same standard here….").  In a recent decision interpreting the scope of FAAAA preemption, the Supreme Court reaffirmed that its interpretation of the ERISA preemption clause informs the scope of the analogous FAAAA preemption clause.  See Dan's City, 133 S. Ct. at 1778 (2013) (holding that "the breadth of the words 'related to' [in the FAAAA] does not mean that the sky is the limit," citing the warning in

Travelers to not read the ERISA preemption clause with "uncritical literalism").  The Supreme

Court's interpretation of the analogous ERISA preemption clause make it clear that the

Plaintiffs' state law wage and misclassification claims are not preempted by the FAAAA.  See

Dillingham Constr., 519 U.S. at 3334 (a "prevailing wage statute alters the incentives, but does

not dictate the choices, facing ERISA plans," and "We could not hold pre-empted a state law in

an area of traditional state regulation based on so tenuous a relation without doing grave violence

to our presumption that Congress intended nothing of the sort.").  Therefore, AEX's motion for

judgment on the pleadings is without merit and must be denied.

**D. New Jersey's "ABC" Test Does Not Require or Prohibit AEX from Offering Any Price, Route, or Service to its Customers**

AEX argues that New Jersey's "ABC" test affects its prices, routes, and services by

requiring it to hire employees instead of independent contractors, but this argument misses the

point entirely.  The relevant analysis is whether the ABC test binds AEX to a particular price,

route, or service, or prohibits AEX from offering any price, route, or service to its customers.

Rowe, 128 S. Ct. 989, 995 (2008) (the FAAAA "sought to avoid … a State's direct substitution

of its own governmental commands … in determining (to a significant degree) the services that

motor carriers will provide.").  Significantly, New Jersey's ABC test does not regulate the prices,

routes, or services AEX offers its customers, or even which drivers AEX may hire to perform its

deliveries.  Unlike the delivery verification requirements that the Maine law imposed in Rowe,

128 S. Ct. at 995, New Jersey's ABC test does not require AEX to provide any particular service

but rather provides that when a business such as AEX wishes to hire an individual – any

individual – to perform a service, that business must comply with certain employment statutes

where the worker qualifies as a covered "employee."  Moreover, at this early stage of litigation

15

in the motion to dismiss stage, AEX has submitted <u>no</u> evidence to show that the Plaintiffs'
claims would have a significant effect on its prices, routes, or services.  The pleadings before this
Court merely establish that AEX is a delivery company that hires drivers to perform deliveries
for its customers, and that these drivers are controlled by and depend upon AEX in the course of
their delivery work.  In the absence of any tangible evidence, there is simply no logical basis to
find ***any*** effect on AEX's prices, routes, or services by Plaintiffs' wage claims.  <u>See</u> <u>Costello</u>,
303 F.R.D. at 303 (finding that an identical ABC test under Illinois law is not preempted by the
FAAAA because the defendant courier company put forth an "absolute dearth of evidentiary
support … regarding a significant impact finding.").

Nor are the Plaintiffs' claims preempted because their wage claims could potentially
increase AEX's costs, because a mere increase in costs has too tenuous, remote, and peripheral
of a connection to a motor carrier's prices, routes, and services to incur preemption.  <u>See</u> <u>S.C.</u>
<u>Johnson & Son</u>, 697 F.3d at 558 ("labor inputs are affected by a network of labor laws, including
minimum wage laws…," "[y]et no one thinks that the ADA or FAAAA preempts these … state
laws … because their effect on prices is too remote."); <u>see</u> <u>supra</u> at 11-12.  Indeed, even state
laws that provide an express right for employees to have their expenses reimbursed have been
found to not be preempted by the FAAAA.  <u>See</u>, <u>e.g.</u>, <u>Gennell v. FedEx Ground Package Sys.,</u>
<u>Inc.</u>, 2013 WL 4854362, *5-7 (D.N.H. Sept. 10, 2013); <u>Robles v. Comtrak Logistics, Inc.</u>, 2014
WL 7335316, *8 (E.D. Ca. Dec. 19, 2014); <u>Quezada v. Con-Way Freight, Inc.</u>, 2012 WL
2847609, *6 (N.D. Ca. July 11, 2012).  Therefore, Plaintiffs' claims do not prohibit AEX from
offering any delivery services, including on-demand services.  Instead, Plaintiffs' claims merely
assert that AEX must compensate its employees for their fair wages as required by state law, and

16

any effect that these claims may have on AEX's prices, routes, or services is too tenuous, remote, and peripheral to be preempted.

### E.   New Jersey's "ABC" Test Is No More Restrictive than Many Other State Employment Law Tests for Employment Status.

It defies logic for AEX to argue that the FAAAA preempts a state law that merely defines the term "employee" for certain wage payment statutes, especially one that is virtually identical to state tests for employment status around the country.  AEX argues that the presumption of employment status created under the ABC employment test in this case is unprecedented and extraordinary, but in fact many other states use virtually identical "ABC" tests that create the same presumption of employment status to define which workers qualify as covered "employees" for purposes of their wage laws, including Illinois, Nebraska, New York, and Vermont.  See Illinois Wage Payment and Collection Act, 820 Ill. Comp. Stat. 115/2; Nebraska Wage Payment and Collection Act, Neb. Rev. Stat. § 48-1229(1); N.Y. Labor § 862-b; 21 V.S.A. § 341; see also Mass. Gen. Laws c. 149, § 148B (setting forth an ABC test with a presumption of employment status for the Massachusetts Wage Act, only with a more employee-friendly prong B than New Jersey's wage law ABC test).  And even more states use the "ABC" test for defining covered "employees" for purposes of their unemployment compensation laws.[8]  Therefore, there is nothing extraordinary or unusual about New Jersey's ABC test for defining employee-status for its wage laws, and AEX has failed to identify any way in which the Plaintiffs' wage claims

---

[8]    See Alaska Stat. § 23.20.525(a) (Alaska Employment Security Act); Arkansas Code Ann. § 11-10-210(e) (Arkansas Unemployment Insurance Act); Conn. Gen. Stat. Ann. § 31-222(a)(1)(B)(ii) (Connecticut Unemployment Compensation Act); Del. Code Ann. tit. 19, § 3302(10)(K) (Delaware Unemployment Compensation law); N.H. Rev. Stat. § 282-A:9, III (New Hampshire Unemployment Compensation Law); N.Y. Labor Code § 862-b ("Presumption of employment in the commercial goods transportation industry"); 21 V.S.A. § 341 (Vermont's wage payment law); 21 V.S.A. § 1301 (Vermont's unemployment compensation law).

have a significant effect on its prices, routes, or services as required for preemption under the FAAAA, nor is there any evidence that Congress intended for state wage laws to be preempted when it enacted the FAAAA.

At the same time, however, AEX's reliance on the holding in <u>Mass. Delivery Association v. Healey</u>, No. 10–cv–11521, 2015 WL 4111413 (D. Mass. July 8, 2015), and similar cases interpreting Massachusetts law,[9] is misguided because those decisions were limited to the "B" prong of the Massachusetts Wage Act's ABC test for employment status, which differs in material respects from the "B" prong at issue in this case under New Jersey's ABC test.

In <u>Healey</u>, a courier trade organization sought a declaratory judgment that prong "B" of the Massachusetts Wage Act's ABC test was preempted by the FAAAA because it acted as a ban on the use of independent contractors by courier companies in Massachusetts.  <u>Id</u>. at *1.  Under the "B" prong of the Massachusetts ABC test, a worker performing any service is an employee for wage law purposes unless "the service is performed outside the usual course of the business of the employer."  M.G.L. c. 149, § 148B(a)(2).  The trade organization in <u>Healey</u> challenged the "B" prong "because couriers hired to provide delivery services are without exception performing within the usual course of business of the delivery companies."  2015 WL 4111413, *3.[10]

---

[9]     AEX also cites two related decisions by a single judge in <u>Schwann v. FedEx Ground Package System, Inc.</u>, No. 11-11094, 2015 WL 501512 (D. Mass. Feb. 5, 2015), and <u>Remington v. J.B. Hunt Transport, Inc.</u>, No. 15-10010, 2015 WL 501884 (D. Mass. Feb. 5, 2015), both of which deal with the same challenge to prong "B" of the Massachusetts Wage Act's ABC test that is at issue in <u>Healey</u>.

[10]     Importantly, the recent Massachusetts court decisions that AEX relies on –<u>Healey</u>, <u>Schwann</u>, and <u>J.B. Hunt</u> – are all currently on appeal before the First Circuit. <u>See</u> <u>Mass. Delivery Association v. Healey</u>, Case No.15-1908 (1st Cir.); <u>Schwann v. FedEx Ground Package System, Inc.</u>, Case No. 15-1214 (1st Cir.); <u>Remington v. J.B. Hunt</u>, Case No. 15-1252 (1st Cir.).

18

Here, in contrast, the New Jersey ABC test states that a putative employer can overcome prong "B" by showing that the Plaintiffs' "service is *either* outside the usual course of the business for which such service is performed, *or that such service is performed outside of all the places of business of the enterprise for which such service is performed*." Hargrove, 106 A.3d at 458, quoting N.J.S.A. 43:21-19(i)(6) (emphasis added). In Carpet Remnant Warehouse, Inc. v. New Jersey Dept. of Labor, 593 A.2d 1177, 1190 (N.J. 1991), the New Jersey Supreme Court held that the "outside of all the places of business of the enterprise" alternative under prong B "refers only to those locations where the enterprise has a physical plant or conducts an integral part of its business." Applying this standard, the New Jersey Supreme Court held that workers hired by a carpet retailer to install carpet in customers' homes were independent contractors under prong B because "the residences of [the carpet company's] customers are clearly 'outside of all places of business of [the carpet company]." Id. ("Because the B standard is in the disjunctive, we need not determine whether carpet installation is outside [the carpet company's] 'usual course of business'"). Therefore, New Jersey's ABC test does not act as an outright ban on the use of independent contractors as the Massachusetts ABC test arguably does, and the Massachusetts cases AEX cites – which are based entirely on the premise that delivery companies are *per se* unable to establish prong B under the Massachusetts ABC test's B prong – are entirely irrelevant here.

**F.    A Finding of Employee-Status under New Jersey's Wage Statutes Does Not Automatically Convert Plaintiffs into "Employees" for Every State and Federal Employment Statute under the Sun.**

AEX makes the bizarre argument that a worker who qualifies as an employee under the ABC test adopted by the New Jersey Supreme Court for wage law purposes in Hargrove automatically becomes a covered "employee" under every state and federal employment statute,

19

but this is simply not true.  See MacDougall v. Weichert, 677 A.2d 162, 166 (N.J. 1996) ("An individual may be considered an employee for some purposes but an independent contractor for others.").  As the New Jersey Supreme Court made clear in Hargrove, 106 A.3d at 465, the ABC test only governs a worker's employment status "under the [New Jersey Wage Payment Law] and [New Jersey Wage and Hour Law]…."  In fact, the court in Hargrove explicitly recognized that different tests for employment status apply under different state and federal employment laws.  For example, claims under New Jersey's Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-(1-8), defines "employee" as "any individual who performs services for and under the control and direction of an employer for wages or other remuneration," and New Jersey courts apply a multi-factor totality of the circumstances test, with emphasis on three central factors, to determine which workers qualify as employees under that standard – and this standard differs greatly from the ABC test at issue here, meaning that a worker could qualify as an employee under one test but not the other.  See Hargrove, 106 A.3d at 461, citing D'Annunzio v. Prudential Ins. Co. of America, 927 A.2d 113 (N.J. 2007).  Likewise, New Jersey courts apply a twelve-factor test to determine whether a worker seeking protection under New Jersey's Law Against Discrimination.  Id., citing Franz v. Raymond Eisenhardt & Sons, 732 F.Supp. 521, 528 (D.N.J. 1990).

Indeed, there is nothing preventing workers from being qualified as "employees" under one employment statute but as exempt "independent contractors" under other employment statutes.  For example, in Hargrove, the plaintiffs brought claims for wages under New Jersey's Wage Payment Law and Wage and Hour Law, as well as claims for other benefits under the federal Family Medical Leave Act (FMLA) and ERISA.  To determine the plaintiffs' employment status under the FMLA and ERISA, the district court applied the common law test

20

set forth in <u>Nationwide Mutual v. Darden</u>, 503 U.S. 318 (1992), and held based on the summary judgment record in that case that the plaintiffs were independent contractors for purposes of ERISA and the FMLA.  The court's order on that issue was not appealed, and instead the only remaining issue in that case is whether the plaintiffs nonetheless qualify as employees for purposes of their state wage law claims.  See <u>Hargrove v. Sleepy's LLC</u>, 2015 WL 2214541 (3d Cir. May 12, 2015) (remanding to district court for a determination of the plaintiffs' employment status under the ABC test for purposes of their state wage law claims).

Many other states use different definitions of the term "employee" for different employment statutes. New Hampshire, for example, uses an ABC test for its unemployment insurance statute, <u>see</u> N.H. Rev. Stat. § 282-A:9, III(a-c), a seven-factor test for determining a worker's coverage under New Hampshire's workers compensation statute and minimum wage law, <u>see</u> N.H. Rev. Stat. § 281-A:2, VII(b)(1)(A-G), <u>and</u> § 279:1(X)(A-G), and a four-part test for determining employee-status for its wage withholding laws.  See <u>Gennell</u>, 2013 WL 4854362, *3; <u>Vector Marketing Corp. v. New Hampshire Dept. of Revenue</u>, 942 A.2d 1261, 1264-1265 (N.H. 2008).  Other states that utilize different employment classification tests for different employment statutes include Illinois,[11] Kentucky,[12] Massachusetts,[13] and

---

[11]     <u>Compare</u> 820 Ill. Comp. Stat. 115/2 (setting forth a statutory ABC test for the Illinois Wage Payment and Collection Act), <u>with</u> <u>Roberson v. Industrial Comm.</u>, 866 N.E.2d 191, 174-175 (Ill. 2007) (applying a fact intensive, multi-factor test for determining 'employee' status for coverage under the Illinois workers' compensation statute).

[12]     <u>Coleman v. FedEx Ground Package Sys., Inc.</u>, No. 05-599, as decided in <u>In re FedEx</u>, 758 F.Supp.2d 638, 682-87 (N.D. Ind. 2010) (applying a broader definition of "employee" for the drivers' Kentucky's Wage Payment Act than for the same drivers' employment claims under Kentucky common law).

Pennsylvania.[14] Thus, it is not uncommon for workers to qualify as covered employees under one state employment law but not another.  See, e.g., Sherman, 2012 WL 748400, *8-12 (certifying a class under Pennsylvania's Wage Payment and Collection Law but denying class certification under the Pennsylvania Minimum Wage Act because that statute required an individualized analysis for each worker); In re FedEx Ground Package Sys., Inc., 758 F.Supp.2d 638, 674-75 (N.D. Ind. 2010) (holding that California delivery drivers were independent contractors under California's wage and hour statutes, but that a different test applied for claims under California's anti-discrimination statute); id. at 682-87 (delivery drivers in Kentucky were employees for purposes of Kentucky's Wage Payment statute, but independent contractors under common law claims); id. at 697-99 (delivery drivers in New Hampshire were employees under New Hampshire's wage and expense statutes, but independent contractors for their common law claims); id. at 702 (holding that New Jersey delivery drivers were independent contractors under New Jersey's Wage Payment Law, but recognizing that New Jersey's anti-discrimination law provides a broader definition of "employee.").

It is even more bizarre that AEX would argue that New Jersey's ABC test – which only defines the term "employee" for its wage laws – somehow affects which workers qualify as

---

[13]     Massachusetts uses unique definitions of the term "employee" for its wage law, workers' compensation law, unemployment compensation law, and employee payroll tax withholding law. See Sebago v. Boston Cab Dispatch, Inc., 28 N.E.3d 1139, 1153-54 (Mass. 2015).  Additionally, "Massachusetts courts use a common law test to distinguish employees who are covered by [the Massachusetts Anti-Discrimination Law] from independent contractors who are not."  Speen v. Crown Clothing Corp., 102 F.3d 625, 629 (1st Cir. 1996).

[14]     Sherman v. American Eagle Express, Inc., 2012 WL 748400, *8 (E.D. Pa. Mar. 8, 2012) ("Pennsylvania courts have formulated different tests to resolve misclassification claims in the context of the [Pennsylvania Minimum Wage Act] and the [Pennsylvania Wage Payment and Collection Law]").

employees under federal laws concerning Social Security or Medicare.   The scope and coverage

of federal laws are defined by Congress, not by the New Jersey Legislature, and there is no

reason why AEX cannot comply with the basic state wage statutes in this case while continuing

to classify its drivers as independent contractors for purposes of federal law, just as in Hargrove,

where the court found that the plaintiffs were independent contractors under the FMLA and

ERISA, but where the plaintiffs' status as employees under New Jersey's wage laws remains to

be decided under the ABC test.  See Hargrove, 106 A.3d at 465.

> **G.   Plaintiffs Qualify as Employees under the Traditional Right to
> Control and Independently Established Trade or Business Tests
> Set Forth in Prongs A and C, Which Are Not Addressed by AEX's Motion.**

Even if prong B of the ABC test's definition of "employee" prevented AEX from using

independent contractors, and even if this somehow had a significant effect on AEX's prices,

routes, or services (which Plaintiffs strongly deny), the Plaintiffs are nonetheless entitled to

proceed on their claim that they were misclassified as independent contractors in violation of the

"right to control" test set forth in prong A and the independently established trade or business

test found in prong C.  AEX does not even attempt to address these two requirements of the

Hargrove test in its motion for judgment on the pleadings.  Importantly, the "right to control" and

"independently established trade or business" tests found in prongs A and C are identical to

many states' traditional tests for employee status, and are even found at the center of the

definition of "employee" under the federal Fair Labor Standards Act.  See Department of Labor

Administrator's Interpretation No. 2015-1, at 4 (July 15, 2015) (Dkt. No. 69-6) ("[C]ourts have

described independent contractors [under the FLSA] as those workers with economic

independence, who are operating a business on their own," whereas "workers who are

economically dependent on the employer, regardless of skill level, are employees covered by the

23

FLSA"); <u>Id</u>., at 13 ("The worker must control meaningful aspects of the work performed such that it is possible to view the worker as conducting his or her own business").  To hold that Plaintiffs' claims are preempted under the right to control and independently established trade or business tests in this case would therefore be tantamount to holding that no state can apply their wage laws to workers in the motor carrier industry – a truly unprecedented holding.[15]

"In order to satisfy part A of the 'ABC' test, the employer must show that it neither exercised control over the worker, nor had the ability to exercise control in terms of the completion of the work." <u>Hargrove</u>, 106 A.3d at 459 (citation omitted).  "In establishing control for purposes of part A of the test, it is not necessary that the employer control every aspect of the worker's trade; rather, some level of control may be sufficient. <u>Id</u>.  Here, Plaintiffs allege that AEX had the right to control the days they were required to work, when they were allowed to take vacations, and when they were required to report to AEX's warehouse each morning. Compl., ¶¶ 14, 17-18.  Plaintiffs also allege that AEX implemented numerous written and unwritten policies and procedures governing how the Plaintiffs were required to perform deliveries for AEX's customers, including the type of scanner they were required to use each day, and that AEX had the right to constantly monitor their performance. Id., ¶¶ 13, 24-25.

---

[15]    For example, many states utilize "right to control" tests for determining employment status. <u>Craig v. FedEx Ground Package Sys., Inc.</u>, 335 P.3d 66 (Kan. 2014); <u>Alexander v. FedEx Ground Package Sys., Inc.</u>, 765 F.3d 981, 988-89 (9th Cir. 2014)(applying California wage law); <u>Slayman v. FedEx Ground Package Sys., Inc.</u>, 765 F.3d 1033, 1042 (2014) (applying Oregon law). And like prong three's independently established business test, the economic reality test utilized by Oregon, Pennsylvania, and Illinois (for their overtime laws) examine whether the drivers are truly in business for themselves or whether the nature of the work renders them economically dependent on the employer for their livelihood. <u>Slayman</u>, 765 F.3d at 1047; <u>Sherman</u>, 2012 WL 748400, *11 ("The thrust of the [overtime law] test is to determine whether, as a matter of economic reality, the individuals are dependent upon the business to which they render service."); <u>Villareal v. El Chile, Inc.</u>, 776 F.Supp.2d 778, 784 (N.D. Ill. Mar. 9, 2011).

Plaintiffs have also pled sufficient facts to state a claim for relief under prong C, which "calls for an enterprise that exists and can continue to exist independently of and apart from the particular service relationship," such that "[t]he enterprise … is stable and lasting – one that will survive the termination of the relationship." Hargrove, 106 A.3d at 459 (citation omitted). Here, Plaintiffs allege that they worked full-time for AEX and were required to ask AEX's permission if they wanted to take days off, and therefore they depended on AEX for their livelihood. Compl., ¶¶ 3-5, 11, 18, 23; compare Trauma Nurses Inc. v. Bd. of Review, 576 A.2d 285 (N.J. App. Div. 1990) (holding that nurses, who chose where and when they worked and could use other services or brokers to obtain assignments were independent contractors under prong C), cited in Hargrove, 106 A.3d at 459. Therefore, even if prong B were somehow preempted by the FAAAA, Plaintiffs would still be able to proceed on their wage and independent contractor misclassification claims under prongs A and C. See Ayotte v. Planned Parenthood of N. New England, 546 U.S. 320, 329 (2006) (A court should "not nullify more of a legislature's work than is necessary."). Therefore, Plaintiffs' claims are not preempted by the FAAAA, and AEX's motion for judgment on the pleadings must be dismissed.

## CONCLUSION

For the above reasons, Plaintiffs request that the Court DENY AEX's motion for judgment on the pleadings.

Dated: September 8, 2015                      Respectfully,

Harold Lichten
Matthew Thomson
LICHTEN & LISS-RIORDAN, P.C.
100 Cambridge Street, 20th Floor
Boston, MA 02114
Phone:  (617) 994 5800

s/ Mark J. Gottesfeld
Peter Winebrake
R. Andrew Santillo
Mark J. Gottesfeld
WINEBRAKE & SANTILLO, LLC
715 Twining Road, Suite 211
Dresher, PA 19025
Phone:  (215) 884-2491
mgottesfeld@winebrakelaw.com

*Plaintiffs' Counsel*