# Exhibit A -

**Brief of the United States, <u>Dilts v. Penske Logistics, LLC</u>,
Ninth Circuit No. 12-55705 (filed Feb. 17, 2014)**

IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

_____

No. 12-55705

_____

MICKEY LEE DILTS, ET. AL.,

Plaintiffs-Appellants,

v

PENSKE LOGISTICS, LLC AND PENSKE TRUCK LEASING CO., LP,

Defendants-Appellees.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

_____

**BRIEF FOR THE UNITED STATES AS AMICUS CURIAE
IN SUPPORT OF APPELLANTS AND REVERSAL**

_____

Of Counsel:

KATHRYN B. THOMSON
Acting General Counsel
PAUL M. GEIER
Assistant General Counsel for
Litigation
PETER J. PLOCKI
Deputy Assistant General Counsel
for Litigation
CHRISTOPHER S. PERRY
Senior Trial Attorney
*Department of Transportation*

T.F. SCOTT DARLING, III
Chief Counsel
DEBRA S. STRAUS
Senior Attorney
*Federal Motor Carrier Safety
Administration*

STUART F. DELERY
  Assistant Attorney General
MICHAEL S. RAAB
  (202) 514-4053
JEFFREY CLAIR
  (202) 514-4028
jeffrey.clair@usdoj.gov

Attorneys, Civil Division
Room 7243, Department of Justice
950 Pennsylvania Ave., N.W.
Washington, D.C.  20530

# TABLE OF CONTENTS

**Page**

INTEREST OF THE UNITED STATES ............................................................... 1

QUESTIONS PRESENTED.................................................................................. 1

STATEMENT ........................................................................................................ 3

    1.    Federal Statutory Scheme ........................................................... 3

    2.    California Meal and Rest Break Law ......................................... 4

    3.    FMCSA  Administrative Determination .................................... 6

    4.    District Court Litigation ............................................................. 7

        a.    Dilts v. Penske............................................................. 7

        b.    Campbell v. Vitran Express ........................................ 9

SUMMARY OF THE ARGUMENT ................................................................... 10

ARGUMENT ....................................................................................................... 14

    I.    The FAAA Act Does Not Preempt
        California's Meal And Rest Break Law ............................................. 14

        A.    State Laws That Do Not Directly Regulate
            Motor Vehicle Carriers Are Not Preempted
            Unless They Have A Significant Effect On
            Prices, Routes, Or Services ..................................... 14

        B.    The Determination Of Whether A State
            Law Has An Impermissible Effect On Prices,
            Routes, And Services Must Be Guided By

The Presumption That Exercises Of The
State's Traditional Police Power Are Not
Preempted Unless That Is The Clear and
Manifest Purpose Of Congress ................................................. 17

    C.    The State Meal And Rest Break Law
Does Not Significantly Affect Motor
Carrier Prices, Routes, Or Services ......................................... 18

II.    The California Law Is Not Preempted By Federal Safety
Regulations. ...................................................................................... 26

III.    The Court Should Accord The Government's
Views On Preemption Deference ...................................................... 30

CONCLUSION ......................................................................................... 32

FRAP 32(a) CERTIFICATE OF COMPLIANCE ................................... 33

CERTIFICATE OF SERVICE ................................................................. 33

## TABLE OF AUTHOURITIES

**Cases:**

*Air Transp. Ass'n v. San Francisco*, 266 F.3d 1064
    (9th Cir. 2001) ......................................................... 16, 21, 22

*American Trucking Ass'n, Inc. v. FMCSA,*
    724 F.3d 243 (D.C. Cir. 2013) .......................................... 29

*Auer v. Robbins*, 519 U.S. 452 (1997) ................................... 14, 32

*Brinker Restaurant Corp. v. Superior Court,*
    273 P. 3d 513 (Cal. 2012) ................................. 4, 6, 9, 16, 18

*Cal Div. of Labor Standards Enforcement v.*
    *Dillingham Constr., N.A. Inc.*, 519 U.S. 316 (1997) .................... 16, 25

*Cal. Manufacturers Ass'n v. Industrial Welfare Comm.*,
109 Cal. App. 3d 95 (Ct. App. 1980)................................................... 18

*Californians for Safe and Competitive Dump Truck
Transportation v. Mendoca*, 152 F.3d 1184
(9th Cir. 1998)........................................................... 16, 17, 19, 21, 22

*Campbell v. Vitran Express,* 2012 U.S. Dist.
LEXIS 85509 .................................................................. 10, 18, 22, 24

*Chevron, U.S.A. v. Natural Resources Defense Council,
Inc.*, 467 U.S. 837 (1984) ................................................................ 27

*DeCanas v. Bica*, 424 U.S.. 351 (1976) ...................................................... 17

*Defiore v. American Airlines, Inc.*, 646 F.3d 81
(1st Cir. 2001) ........................................................................... 31

*Dilts v. Penske Logistics LLC,* 819 F. Supp. 2d 1109
(C.D. Cal. 2011)........................................................... 8, 9, 22, 23, 24

*Esquivel v. Vistar Corp.*, 2012 U.S. Dist. LEXIS 26686,
2012 WL 516094 (C.D. Cal. 2012) ...................................................... 9

*Fidelity Fed. Sav. & Loan Ass'n v. De la Cuesta*,
458 U.S. 141 (1982).................................................................... 28

*Geier v. American Honda Motor Co., Inc.*,
529 U.S. 861 (2000)........................................................... 13, 14, 31, 32

*Hillsborough County v. Automated Medical
Laboratories, Inc.*, 471 U.S. 707 (1985) ............................... 13, 24, 32

*Hines v. Davidowitz*, 312 U.S. 52 (1941)............................................. 12, 28

*International Paper Co. v. Ouellette*, 479 U.S. 481 (1987)...................... 28

*Klitzke v. Steiner Corp.*, 110 F.3d 1465 (9th Cir. 1997)........................... 30

*Medtronic Inc. v. Lohr*, 518 U.S. 470 (1996) ........................................ 13, 31

*Morales v. TWA*, 504 U.S. 374 (1992) ................................... 3, 10, 14, 15, 16

*Murphy  v. Kenneth Cole Productions, Inc.*,
    155 P.3d 284 (Cal. 2007) ............................................................ 6, 18

*New York State Conference of Blue Cross & Blue Shield*
    *Plans v. Travelers Ins. Co.*, 514 U.S. 645 (1995) .............................. 22

*Perry v. Brown*, 671 F.3d 1052 (9th Cir. 2012),
    <u>vacated on other grounds</u> sub nom. *Hollingsworth*
    *v. Perry*, 133 S. Ct. 2652 (2013) ........................................... 24

*PLIVA, Inc. v. Mensing*, 131 S. Ct. 2567 (2011) ........................................ 22

*Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218 (1947) ........................ 10, 17

*Rowe v. New Hampshire Motor Transport Ass'n*,
    552 U.S. 364 (2008) .................................................. 11, 15, 16, 17, 15

*S.C. Johnson & Son, Inc. v. Transport Corp. of*
    *America, Inc.*, 697 F.3d 544 (7th Cir. 2012) ...................................... 20

*Wyeth v. Levine*, 555 U.S. 555 (2009) ................................................... 10, 17

## **Statutes:**

Airline Deregulation Act of 1978, P. L. 95-504,
    92 Stat. 1705 ( 1978):

    49 U.S.C. 41713(b)(1) ........................................................................ 3

Federal Aviation Administration Authorization Act of 1994:

    49 U.S.C. 14501(c)(1) .................................................... 1, 3, 4, 16, 26
    49 U.S.C. 14501(c)(2)(A) .................................................................... 3

49 U.S.C. 31132(1) .................................................................................. 29
49 U.S.C. 31136 (a) ................................................................................. 29
49 U.S.C. 31141 ............................................................................ 7, 27, 28
49 U.S.C. 31141(a) ...................................................................... 3, 26, 27
49 U.S.C. 31141(c) .................................................................................... 6
49 U.S.C. 31141(c)(1) ................................................................................ 4
49 U.S.C. 31141(c)(4) ................................................................. 4, 12, 26

## California Laws and Regulations:

California Labor Code, § 226.7 ........................................................... 4, 6
California Labor Code, § 512(a) .............................................................. 5


8 C.C.R. 11090 .......................................................................................... 5
8 C.C.R. 11090(11) .................................................................................. 5
8 C.C.R. 11090(20) .................................................................................. 5

## Rules:

Fed. R. Evid. 201 .................................................................................... 24

## Regulations and Administrative Determinations:

49 C.F.R.  395.5(a)(3) ........................................................................... 28
49 C.F.R. 1.87(f) ....................................................................................... 4
49 C.F.R. 395.1(e)(1) and (2) ................................................................ 29


73 Fed. Reg. 79204-01 (FMCSA Dec. 24, 2008) .................................. 9, 15
76 Fed. Reg. 81134-35 (2011) ................................................................ 30
_78 Fed. Reg. 64179, 64181 (2013)……………………………………...29

## INTEREST OF THE UNITED STATES

This case concerns whether the Federal Aviation Administration Authorization Act of 1994 ("FAAA Act") preempts a California law of general applicability requiring employers to afford their employees periodic meal and rest breaks. The Court, by orders entered on January 27, 2014, has invited the United States to file a brief as amicus curiae.

## QUESTIONS PRESENTED

California state law requires most employers, including firms employing commercial motor vehicle operators, to afford employees periodic rest and meal breaks. Employers who violate this requirement are liable for one additional hour of pay for each day that the break is not provided.

The issues presented here arise out of two class actions seeking monetary relief from employers who allegedly failed to comply with the break requirement. The two cases, though originally filed in California state courts, were removed to federal district court. Each case was subsequently dismissed on the ground that the state law claims are preempted by the FAAA Act, which provides that a state "may not enact or enforce a law * * * related to a price, route, or service of any motor carrier with respect to transportation of property." 49 U.S.C. 14501(c)(1).

The plaintiff employees appealed each dismissal. The two appeals are fully briefed and, though not formally consolidated, are set for argument on the same day and before the same panel. The Court has now issued separate but identical orders in each appeal inviting the United States to file a brief as amicus curiae. The Court's orders identify several preemption questions but note that the United States is free to reformulate the issues presented or to address other matters raised by the parties' briefing. Our amicus submission will accordingly address the following questions:

1. Whether the FAAA Act preempts the California meal and rest break law as applied to motor carriers.

2. Whether the Federal Motor Carrier Safety Administration continues to adhere to a prior administrative ruling that the California law is not a law regulating commercial motor vehicle safety.

3. Whether the federal government's views on preemption, as set forth in this amicus brief, should be accorded deference.

These issues are common to both appeals. In the interest of judicial economy, we are accordingly filing this same amicus brief, under different cover, in both appellate dockets.

## STATEMENT

### 1. Federal Statutory Scheme.

In the Airline Deregulation Act of 1978, P. L. 95-504, 92 Stat. 1705, Congress deregulated the airline industry and instituted a policy of "maximum reliance on competitive market forces." *Id*., § 3(a), 92 Stat. 1706.[1] To ensure that these objectives would not be frustrated by state regulation, Congress expressly preempted state laws "related to a price, route, or service of an air carrier * * * ." 49 U.S.C. 41713(b)(1). *See generally Morales* v. *TWA*, 504 U.S. 374 (1992).

In 1994, Congress enacted in the FAAA Act similar provisions for motor carriers. As relevant here, the FAAA Act provides that "a State * * * may not enact or enforce a law * * * related to a price, route, or service" of a carrier respecting transportation of property. 49 U.S.C. 14501(c)(1). The statute, however, excepts from this express, categorical preemption laws exercising a "State's safety regulatory authority with respect to motor vehicles." 49 U.S.C. 14501(c)(2)(A). Though excepted from categorical preemption under section 14501(c)(1), Congress further authorized the Secretary of Transportation to preempt on a case-by-case basis state safety regulation of commercial motor vehicles. 49 U.S.C. 31141(a). The

---

[1] Pertinent statutes and regulations are reprinted in the addendum to this brief.

Secretary is thus authorized to review state laws and regulations on commercial motor vehicle safety and to determine whether the regulation is less stringent than federal safety regulations, has the same effect as federal safety regulations, or instead has additional or more stringent requirements. 49 U.S.C. 31141(c)(1). If the Secretary determines that the state requirements are in addition to or more stringent than federal motor carrier safety regulations, the state law may not be enforced if the Secretary concludes that the state law has no safety benefit, that the state law is incompatible with federal regulations, or that the state law would impose an unreasonable burden on interstate commerce.[2] 49 U.S.C. 31141(c)(4).

   2. <u>California Meal and Rest Break Law</u>.

California law prohibits an employer from requiring an employee to work during any meal or rest period mandated by an applicable order of the state Industrial Welfare Commission. *California Labor Code,* § 226.7. The Commission issues orders on an industry-by-industry basis, and pertinent orders cover most nonexempt employees in California. *Brinker Restaurant Corp.* v. *Superior Court*, 273 P. 3d 513, 521 & n. 1 (Cal. 2012). The transportation industry is covered by a Commission order codified at 8 C.C.R. 11090.

---

[2] The Secretary has delegated this authority to the FMCSA. 49 C.F.R. 1.87(f).

Section 11090(11) addresses meal breaks and tracks requirements set forth in *California Labor Code,* § 512(a). It provides that employees must be afforded a meal break of at least 30 minutes after five hours on duty and a second meal break if the employee works more than ten hours. Employees must generally be relieved of all duty during the meal period. An "on duty" meal period is permitted only when the nature of the work prevents an employee from being relieved of duty and when the employer and employee agree in writing that a paid, on-duty meal period will be taken.

Section 11090(12) addresses rest periods. It generally provides that an employee must be afforded ten minutes' rest time for every four hours on duty, and that rest breaks should be taken, insofar as practicable, in the middle of the work period.

Section 11090(20) establishes civil penalties for employers who fail to provide a mandated meal or rest break. For an initial violation, the employer is liable for a $50 civil penalty for every employee who is not accorded meal and rest breaks during a given pay period. Employers with prior violations are liable for a penalty of $100 per employee per pay period.

In 2000, California adopted monetary remedies in addition to civil penalty liability and injunctive remedies for violations of the break requirements. Employees are now entitled to an additional hour of

compensation if a prescribed meal or rest period is not provided. *California Labor Code,* § 226.7; *Murphy* v. *Kenneth Cole Productions, Inc.*, 155 P.3d 284 (Cal. 2007). The addition of a monetary remedy for employees gave rise to a wave of wage and hour class action litigation seeking additional compensation for violations of the break law. *See Brinker Restaurant Corp.*, 273 P.3d at 520. In response, defendant employers, faced with potentially substantial monetary liability, began asserting that the California meal and rest period law relates to motor carrier prices, routes, and services and is therefore preempted by the FAAA Act.

     3. <u>FMCSA Administrative Determination</u>.

     In 2008, a group of motor carriers, including one of the parties to these appeals, petitioned the Federal Motor Carrier Safety Administration for a determination under 49 U.S.C. 31141(c) that: (1) the California meal and rest break law is a regulation on commercial motor vehicle safety, (2) the putative state regulation imposes limitations on a driver's time that are different from and more stringent than federal "hours of service" regulations governing the time a driver may remain on duty, and (3) that the state law should therefore be preempted. *See* 73 Fed. Reg. 79204-01 (FMCSA Dec. 24, 2008) (reprinted in the brief addendum).

6

The agency denied the petition for preemption. It reasoned that the break law is merely one part of California's comprehensive regulation of wages, hours, and working conditions, and that it applies to employers in many other industries in addition to commercial motor vehicle carriers. The FMCSA concluded that the break law is not a regulation "on commercial motor vehicle safety" within the meaning of 49 U.S.C. 31141, and that the regulation thus is not within the scope of the Secretary's statutory power to declare unenforceable a state motor vehicle safety regulation that is inconsistent with federal safety requirements.

    4. <u>District Court Litigation</u>.

    a. <u>*Dilts v. Penske*</u>.

In *Dilts*, a class of appliance delivery drivers and installers in California brought suit against the Penske trucking company. Penske had a contract under which it agreed to provide transportation and warehouse management services to Whirlpool, a manufacturer of household appliances. Penske's services included inventorying appliances at one of Whirlpool's two regional distribution centers in California, loading the appliances onto trucks, and then either delivering the appliances to a local distribution center or delivering the appliance directly to a customer and installing the appliance at the customer's location. Plaintiffs alleged that Penske failed to provide

them the meal and rest breaks required by California and well as other
mandatory compensation.

The district court, ruling on Penske's motion for summary judgment,
held that the meal and break law is preempted.  It reasoned that a state law
may be preempted if it directly or indirectly binds the carrier to a particular
price, route, or service and thereby interferes with competitive market
forces.  Turning to that inquiry, the court noted that the law constrained
Penske's choice of routes by limiting it to routes that had an adequate
number of stopping places capable of accommodating a large truck.  It also
noted that the mandatory meal and rest breaks reduced the amount of on-
duty time available to drivers and consequently reduced the amount and
level of service Penske could offer customers without increasing its
workforce and investment in equipment.  The court concluded:

> [T]he length and timing of meal and rest breaks seems directly
> and significantly related to such things as the frequency and
> scheduling of transportation. Both parties agree that the M&RB
> laws impact the number of routes each driver/installer may go
> on each day, and Plaintiffs do not oppose Penske's argument
> that the laws impact the types of roads their drivers/installers
> may take and the amount of time it takes them to reach their
> destination from the warehouse. The connection to "schedules,
> origins, * * * and destinations" is far from tenuous. While
> Penske has not shown that the M&RB laws would prevent them
> from serving certain markets, the laws bind Penske to a
> schedule and frequency of routes that ensures many off-duty
> breaks at specific times throughout the workday in such a way

that would "interfere with competitive market forces within the
* * * industry.

*Dilts*, 819 F. Supp. 2d at 1119.

The court consequently held that the meal and rest break law is

preempted and granted summary judgment for Penske.

b.  *Campbell v. Vitran Express*.

Plaintiffs in *Campbell* were employed as "city/local" truck drivers for

Vitran Express and were responsible for picking-up, delivering, and

transporting cargo for Vitran's clients.  They alleged that Vitran did not

permit them to take the meal and rest breaks required by California law and

brought a class action against Vitran for unpaid compensation.  Vitran

asserted that plaintiffs' claims are preempted by the FAAA Act and moved

for judgment on the pleadings or, in the alternative, for summary judgment.

The district court held that the meal and rest break provisions are

preempted and granted judgment on the pleadings for plaintiffs.  It reasoned

that:

> [A]s a matter of law, these meal and rest break requirements,
> even as clarified by *Brinker* [*Brinker Restaurant Corp.* v.
> *Superior Court*, 273 P. 3d 513 (Cal. 2012)], relate to the rates,
> services, and routes offered by Defendant. As other courts have
> noted, the length and timing of meal and rest breaks affects the
> scheduling of transportation.  *See Esquive*l v. *Vistar Corp*., 2012
> U.S. Dist. LEXIS 26686, 2012 WL 516094 *5 (C.D. Cal.
> 2012); *Dilts* v. *Penske Logistics LLC*, 819 F. Supp. 2d 1109,
> 1119 (C.D. Cal. 2011). When employees must stop and take

9

breaks, it takes longer to drive the same distance and companies may only use routes that are amenable to the logistical requirements of scheduled breaks. Further, Plaintiffs have argued that the inability to take meal or rest breaks comes from their need to otherwise comply with Defendant's tight scheduling requirements * * * The conclusion that the FAAAA preempts California's meal and rest break requirements is consistent with the broad preemptive scope of the statute.

*Campbell*, 2012 U.S. Dist. LEXIS 85509 at * 9-10.

## SUMMARY OF THE ARGUMENT

The FAAA Act is intended to deregulate the motor carrier industry and to promote maximum reliance on competitive market forces. The statute expressly preempts state laws that would stymie this overarching, deregulatory purpose, and it does so in statutory language that the Supreme Court has characterized as broad and deliberately expansive. *See Morales* v. *TWA, Inc.*, 504 U.S. 374, 383-84 (1992).

The statute's preemptive scope, however, is not unbounded. It must instead be construed in light of the principle that state laws dealing with matters traditionally within a state's police powers are not to be preempted unless Congress's intent to supersede state law is clear and manifest. *Rice* v. *Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947); *Wyeth* v. *Levine*, 555 U.S. 555, 565 (2009).

1. The FAAA Act does not preempt the state meal and rest break law under these standards. The California law is squarely within the states'

10

traditional power to regulate the employment relationship and to protect worker health and safety. Moreover, it is a law of longstanding, general applicability and does not reflect any state effort to regulate motor carriers directly.

A state law may nonetheless be preempted if it has an indirect but significant effect on prices, routes, or services. *Rowe* v. *New Hampshire Motor Transport Ass'n*, 552 U.S. 364, 370-71, 374 (2008). The effects of the meal and rest break law, however, are not sufficient to overcome the presumption against displacing California's traditional power to protect its workers. Though state-mandated breaks reduce the number of hours an employee is available for duty, such effects are common to all employers and thus bear too tenuous and remote a connection to the core deregulatory purposes of the FAAA Act to warrant preemption. And although the breaks may potentially constrain a carrier's choice of routes in some cases, there is little basis for concluding that such constraints significantly affect short-haul drivers who, like plaintiffs, make frequent stops during the course of their ordinary work day.

2. The meal and break law is not otherwise preempted by federal regulations. The FMCSA has promulgated federal regulations governing the number of hours a commercial motor vehicle carrier may drive without a

11

break.  A state law that conflicts with these federal, hours-of-service requirements might conceivably be preempted on two bases.

First, a federal statute authorizes the FMCSA to declare unenforceable a state law that is specifically addressed to commercial motor vehicle safety and that is incompatible with federal safety standards.  49 U.S.C. 31141(c)(4).  Second, even if the state law is not specifically directed to commercial motor vehicle safety, it may be impliedly preempted under general Supremacy Clause principles if it conflicts with or impedes the objectives of federal safety regulations.  *Hines* v. *Davidowitz*, 312 U.S. 52, 67 (1941).

The meal and break law, however, is not preempted on either grounds. The FMCSA has previously determined that this state law is not specifically addressed to commercial motor vehicle safety and thus falls outside the agency's statutory authority under 49 U.S.C. 31141(c)(4) to declare state laws unenforceable.  73 Fed. Reg. 79204-01 (FMCSA Dec. 24, 2008).  The agency continues to adhere to this view.

Moreover, the "hours of service" regulations do not apply to commercial drivers operating exclusively in intrastate commerce and federal break requirements, in particular, are not applicable to short-haul drivers like the plaintiffs here.  The California law, as applied to these plaintiffs, thus

12

does not conflict with break requirements set forth in federal hours of service regulations.

     3.  The federal government's views on preemption should be accorded deference.  The agency has specialized expertise in the regulation of motor carriers as well as broad statutory to determine whether state laws addressed to commercial motor vehicle safety should be preempted.  The broad scope of the FAAA Act's preemption provision is ambiguous in the sense that it does not precisely define what it means for a state law to "relate to" a price, route, or service.  And the agency is uniquely qualified to assess the impact of state laws on the motor carrier industry in general and on federal safety regulations in particular.  All these factors indicate that the agency's views on the preemptive scope of the statute and federal regulations are entitled to substantial deference.  *See*, *e.g.*, *Geier* v. *American Honda Motor Co., Inc.*, 529 U.S. 861, 883 (2000)*; Medtronic Inc.* v. *Lohr*, 518 U.S. 470, 495-96 (1996); *Hillsborough County* v. *Automated Medical Laboratories, Inc.*, 471 U.S. 707, 714 (1985).

     Moreover, the position articulated here reflects the agency's considered views of the preemptive scope of the statute and federal regulations and is not inconsistent with any prior decision or statement of policy.  In these circumstances, deference to the views expressed in this

13

amicus submission is appropriate. *See Geier*, 529 U.S. at 884; *Auer* v. *Robbins*, 519 U.S. 452, 461-62 (1997).

## ARGUMENT

I. The FAAA Act Does Not Preempt California's Meal And Rest Break Law.

A. State Laws That Do Not Directly Regulate Motor Vehicle Carriers Are Not Preempted Unless They Have A Significant Effect On Prices, Routes, Or Services.

The general standards for determining whether a state law "relates to" prices, routes, or services and is thus preempted under the FAAA Act are well settled. In *Morales* v. *TWA*, 504 U.S. 374 (1992), the Supreme Court, construing analogous provisions of the Airline Deregulation Act, concluded that this phraseology reflects a broad and deliberately expansive preemptive purpose, and that the statute thus precludes state-law claims "having a connection with, or reference to, airline 'rates, routes, or services.'" *Id*. at 383-84. Consistent with that standard, the Supreme Court made clear that preemption is not limited to laws that expressly prescribe rates, routes, or services but instead extends to any law that has a significant effect on them, even if directed at other objectives. *Id*. at 385. At the same time, however, the Court recognized that "some state actions may affect airline fares in too tenuous, remote, or peripheral a manner to have preemptive effect." *Id*. at 390 (internal citation and quotation omitted).

14

In *Rowe* v. *New Hampshire Motor Transport Association*, 552 U.S. 364, 370-71 (2008), the Court held that the same standards govern the preemptive scope of the similarly worded FAAA Act. Applying those standards, the Court concluded that the FAAA Act preempted a Maine state law forbidding licensed tobacco retailers from employing a "delivery service" unless that service follows a particular set of prescribed delivery procedures. The Court stressed that the Maine law was not one of general applicability but rather focused on trucking and other motor carrier services, and that it compelled carriers to offer services that the market did not then provide, and that carriers would prefer not to offer. It concluded that "[t]he Maine law thereby produces the very effect that the federal law sought to avoid, namely, a State's direct substitution of its own governmental commands for 'competitive market forces' in determining (to a significant degree) the services that motor carriers will provide." *Id*. at 372. The Court, however, further noted that the FAAA Act did not preempt laws of general application that only incidentally affected motor carriers. Citing *Morales*, the Court stressed that "the state laws whose 'effect' is 'forbidden' under federal law are those with a *significant* impact on carrier rates, routes, or services." *Id*. at 375 (emphasis in original).

15

Unlike the law at issue in *Rowe,* the California meal and rest break law is a law of general applicability. It does not focus on the trucking industry, and its application does not turn on any express connection to trucking prices, routes, or services. Rather, similar wage orders prescribing meal and rest periods apply to 17 other, broadly-defined industry groups, in addition to the transportation industry, s*ee Brinker Restaurant Corp.* v. *Superior Court*, 273 P. 3d 513, 521 n.1 & 527 (Cal. 2012), and its application to motor vehicle carriers turns purely on the number of hours an employee is on duty, irrespective of the carrier's prices, routes, or services. *Cf. Air Transp. Ass'n* v. *San Francisco*, 266 F.3d 1064, 1072 (9th Cir. 2001) ("Preemption resulting from 'reference to' price, route, or service occurs 'where a State law acts immediately and exclusively [upon price, route, or service] * * * or where the existence of a [price, route or service] is essential to the law's operation.")(quoting, with substitutions indicated by bracketed language, *Cal Div. of Labor Standards Enforcement* v. *Dillingham Constr.*, *N.A. Inc.,* 519 U.S. 316, 325 (1997)). The law, in short, is not intended to regulate motor carriers in any capacity other than their general role as employer. Thus, under *Morales* and *Rowe,* the state law is preempted only if it is deemed to have a significant impact on prices, routes, or services.

16

B. **The Determination Of Whether A State Law Has An Impermissible Effect On Prices, Routes, And Services Must Be Guided By The Presumption That Exercises Of The State's Traditional Police Power Are Not Preempted Unless That Is The Clear and Manifest Purpose Of Congress.**

Review of whether the California meal and rest break law is expressly preempted must be guided by the presumption that state laws dealing with matters traditionally within a state's police powers are not preempted absent a clear statutory command. *Rice* v. *Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947); *Wyeth* v. *Levine*, 555 U.S. 555, 565 (2009); *Californians for Safe and Competitive Dump Truck Transportation* v. *Mendoca*, 152 F.3d 1184, 1186-87 (9th Cir. 1998).

This presumption against preemption is fully applicable here. State laws regulating the employment relationship or protecting worker health and safety are squarely within the state's traditional police power. *See DeCanas* v. *Bica*, 424 U.S. 351, 356 (1976) ("States possess broad authority under their police powers to regulate the employment relationship to protect workers within the State. Child labor laws, minimum and other wage laws, laws affecting occupational health and safety, and workmen's compensation laws are only a few examples").

California, moreover, has a long-established history of acting to protect worker health and safety by mandating that employers afford their

employees periodic rest and meal breaks.  As the California Supreme Court has explained, meal and rest periods have long been viewed as part of the general framework of worker protection under California law.  *Murphy* v. *Kenneth Cole Productions, Inc.*, 155 P.3d 284, 291 (Cal. 2007).  The state Industrial Welfare Commission first issued wage orders mandating meal breaks in 1916 and rest breaks in 1932, and the current orders apply to many other industries. *Brinker*, 273 P.3d at 527; *Cal. Manufacturers Ass'n* v. *Industrial Welfare Comm.,* 109 Cal. App. 3d 95, 114-15 (Ct. App. 1980). The law, in short, is manifestly an exercise of the state's traditional police power to protect worker health and safety.  As such, it may not be deemed preempted absent a clear congressional intent to supersede state law.

C.     The State Meal And Rest Break Law Does Not
        Significantly Affect Motor Carrier Prices, Routes,
        Or Services.

        The indirect effects of the meal and break law do not warrant preemption.  The district courts in both *Dilts* and *Campbell* reasoned that the meal and break laws constrained a carrier's services by reducing the number of hours employees are available to work, and constrained a carrier's choice of routes by compelling the carrier to choose routes that would have a sufficient number of rest areas or legal parking spots adequate to

18

accommodate a large truck.  Neither rationale, however, supports preemption.

1.  Although the break law decreases each employee's available duty hours and thus increases the cost of providing services, the FAAA Act does not preempt worker protection laws of general applicability merely because they increase the labor costs of all employers, including motor carriers.  In *Californians for Safe and Competitive Dump Truck Transportation* v. *Mendoca*, 152 F.3d 1184 (9th Cir. 1998), the Court concluded that a state law requiring all public works contractors to pay a prevailing wage rate was not preempted by the FAAA Act.  The Court, observing that there is a presumption against preemption of state laws dealing with matters traditionally within the state's police powers, concluded that the additional costs imposed by the wage law did not frustrate the FAAA Act's core purpose of deregulation by acutely interfering with the forces of competition.  *Id*. at 1188-89.

That analysis is directly applicable here.  The central objective of the FAAA Act's preemption clause is to ensure that the goal of deregulating the motor carrier industry is not stymied by state regulation.  Laws of general applicability that do not target the industry but instead merely increase the labor costs of all employers are not at odds with these purposes.  A state

income tax, workers' compensation scheme, or minimum wage law could all have a large impact on a motor carrier's cost of doing business and thus its prices and capacity to deliver services. But there is nothing to suggest that, in legislating to promote maximum reliance on competitive market forces, Congress intended to insulate motor carriers from the ordinary incidents of state regulation applicable to every employer. Nor is there any indication that, in preempting state regulation of motor carriers, Congress sought to prevent states from mandating meal and rest breaks for all employees. As the Seventh Circuit has reasoned:

> [L]abor inputs [to transportation costs] are affected by a network of labor laws, including minimum wage laws, worker-safety laws, anti-discrimination laws, and pension regulations. Capital is regulated by banking laws, securities rules, and tax laws, among others. Technology is heavily influenced by intellectual property laws. Changes to these background laws will ultimately affect the costs of these inputs, and thus, in turn, the 'price * * * or service of the outputs. Yet no one thinks that the ADA or the FAAA preempts these and the many comparable state laws.

*S.C. Johnson & Son, Inc.* v. *Transport Corp. of America, Inc.*, 697 F.3d 544, 558 (7th Cir. 2012).

Indeed, a contrary rule would suggest that the FAAA Act cuts a wide preemptive swath through state laws intended to protect the health and welfare of employees – a result that, as *Mendoca* reasons, is contrary to the presumption against preempting the state's exercise of its police power and

one that would not further the fundamental, deregulatory purposes of the federal statute.

2. Similarly, the break law's potential impact on a carrier's choice of routes is too speculative and remote to warrant preemption. The gist of the defendant carriers' argument is that there is a shortage of parking areas and rest stops that can accommodate a large truck. Mandatory, periodic breaks may thus force a driver to choose alternate routes where adequate rest areas will be available when a break is necessary.[3]

Several factors, however, indicate that this contention does not support preemption. Although the state law might in some circumstances make it more expensive to adhere to a preferred route, it does not compel a carrier to abandon its route choices. A carrier who wishes to maintain a particular route or service and remain in compliance with state law may thus incur additional expense. But the state in no way applies its coercive regulatory power to dictate changes in routes or services.

The case law nonetheless recognizes that the imposition of acute costs on carriers may, as a practical matter, compel a carrier to alter its prices, routes, or services and thus be preempted on that basis, even if the state does

---

3 Circuit precedent construes the preemption provision's reference to "routes" as a reference to "courses of travel." *See Air Transp. Ass'n of Am.* v. *San Francisco*, 266 F.3d 1064, 1071 (9th Cir. 2001).

not mandate particular conduct. *See*, *e.g.*, *Mendoca*, 152 F.3d at 1188, citing *New York State Conference of Blue Cross & Blue Shield Plans* v. *Travelers Ins. Co.*, 514 U.S. 645, 668 (1995); *Air Transp. Ass'n* v. *San Francisco*, 266 F.3d at 1075.

There is no basis for concluding that compliance costs approach that level here. As an initial matter, preemption is an affirmative defense that must be established by its proponent. *PLIVA, Inc.* v. *Mensing*, 131 S. Ct. 2567, 2587 (2011). It was thus defendants' obligation to establish that application of California's break law would have an impermissible, significant effect on prices, routes and services.

That showing has not been made here. Plaintiffs in both cases – the "city" drivers in *Campbell* and the driver/appliance installers in *Dilts* -- were apparently charged with making many local stops and deliveries during the course of a day. They thus could presumably take a break before or after one of these many scheduled stops. The *Campbell* plaintiffs, for example, assert that "Vitran's local truck drivers are not long-haul drivers. They make, on average, 10 to 15 stops a day as part of their regularly scheduled routes." No. 12-56250, Appellant Br. at 30. Similarly, the *Dilts* plaintiffs, at the times pertinent to the suit, drove to various customer locations and parked there long enough to unload and install a Whirlpool appliance. They too

22

would appear to have had ample opportunities to park their truck lawfully and to take the required breaks during the course of the day.

Long-haul drivers would not have a similar schedule of frequent stops.  But, in light of the travel distances, they are presumably using interstates or other major highways where periodic rest stops capable of accommodating a large truck are available.  Moreover, as we will explain more fully below, where otherwise applicable, federal hours of service regulations already require periodic rest breaks.  While the state mandated rest periods are more frequent, the driver's freedom to drive continuously is already constrained by federal law.  That in turn means that the obligation to choose a route with adequate rest stops cannot be traced solely to state law.

The two district courts disagreed with this assessment, but their conclusions are not well supported and not entitled to substantial deference on appellate review.  Both courts treated the preemption question as a matter of law and did not make specific factual findings based on a review of evidence submitted by the parties.  Rather, the district courts decided the issue by considering general knowledge of the ordinary workings of the marketplace.  *See Dilts*, 819 F. Supp. 2d  at 1119; *Campbell*, 2012 U.S. Dist. LEXIS 85509 at * 9-10.  Their conclusions in that regard are thus based on determinations of "legislative" rather than "adjudicative" fact.  *See* Fed. R.

23

Evid. 201, Advisory Comm. Notes of 1972 (discussing differences between
"adjudicative" facts and "legislative" facts).   Findings of "legislative" fact
are not reviewed under the highly deferential, clearly erroneous standard
applicable to findings of "adjudicative" fact.[4]  And, as explained above,
there is substantial reason to question those district court findings here.

Though the FAAA Act does not preempt these plaintiffs' claims, there
may be other instances in which the meal and break law might be displaced
by federal law.  Laws within the state's traditional police power are not
insulated from preemption if Congress makes its intent to displace them
clear.  *See Dillingham Constr.*, 519 U.S. at 330.  And though the record here
is inadequate to support preemption, preemption might be established in
other contexts by demonstrating a significant effect on prices, routes, or
services.

For example, the preemption analysis might be substantially different
if California applied the law to drivers who cross state lines.  Meal and rest
requirements may differ from one state to another.  A carrier's obligation to

---

4  Though the Court has not resolved what particular standard of appellate
review applies to a lower court's "legislative" fact finding, it has indicated
that such determinations are not subject to the highly deferential, clearly
erroneous standard.  *See Perry* v. *Brown*, 671 F.3d 1052, 1075 (9th Cir.
2012), *vacated on other grounds sub nom. Hollingsworth* v. *Perry*, 133 S.
Ct. 2652 (2013).

track and comply with a patchwork of disparate state law requirements would arguably impose precisely the type of burdens on routes and services that Congress sought to avoid when it deregulated the motor carrier industry.

Similarly, the preemption analysis would differ significantly if the state law were applied to airline employees. As noted above, the Airline Deregulation Act has preemption provisions that are essentially identical to those set forth in the FAAA Act, and the Supreme Court has held that the two statutes should be similarly construed. *See Rowe*, 552 U.S. at 370. But unlike motor carriers, an airline cannot readily interrupt tightly scheduled flight operations to accommodate state-mandated rest breaks for its staff. Moreover, federal aviation safety laws and regulations apply in this area and would inform any preemption analysis. Application of the state break law to airlines thus entails significantly different considerations.

In any event, these concerns are not presented by this case. Plaintiffs are principally short-haul, motor vehicle drivers operating within California. The application of the state meal and rest break law to their work does not significantly affect prices, routes, or services and therefore is not preempted by the FAAA Act.

II. The California Law Is Not Preempted By Federal Safety
    Regulations.

Although the California law is not preempted by 49 U.S.C.

14501(c)(1), that does not end the preemption inquiry. The FMCSA has

separate statutory authority under 49 U.S.C. 31141(c)(4) to declare

unenforceable state laws on commercial motor vehicle safety that are

incompatible with federal safety regulations. Moreover, even if a state law

is not specifically addressed to commercial motor vehicle safety, it may still

be preempted under general Supremacy Clause principles if it conflicts with

federal law. The California law, however is not preempted on either of these

grounds.

As noted above, the FMCSA determined in 2008 that the state law is

not a regulation on commercial motor vehicle safety and thus is not within

the agency's authority under  49 U.S.C. 31141(a) & (c) to declare

unenforceable state laws that impose additional or more stringent safety

requirements than are imposed by federal law. The agency continues to

adhere to this view. The California meal and rest break law thus is not

preempted under this statutory authority.[5]  And because the statute expressly

---

5  The Court's order inviting the government to file an amicus brief
characterizes the FMCSA's 2008 decision as holding that the FAAA Act
does not preempt California's meal and rest break law. Respectfully, that is
incorrect.  The FMCSA held only that the state law is not directed at

vests FMCSA with broad discretion to make this determination, its decisions must be accorded great deference.  *Chevron, U.S.A.* v. *Natural Resources Defense Council, Inc.*,467 U.S. 837 (1984).

A state law that is one of general applicability, and that thus does not fall within the agency's statutory authority under section 31141 to displace state laws specifically directed at commercial motor vehicle safety, may nonetheless impose standards applicable to the operation of commercial motor vehicles and provision of transportation service.  And if those requirements were to conflict with federal law, they would be preempted under general Supremacy Clause principles of conflict preemption, notwithstanding the agency's determination that the state law is not specifically addressed to commercial motor vehicle safety and thus is not subject to statutory preemption under 49 U.S.C. 31141.  These constitutional principles, however, do not dictate preemption here.

State law is invalid under the Supremacy Clause to the extent it conflicts with federal law, and "[s]uch a conflict will be found when the state law stands as an obstacle to the accomplishment and execution of the full

commercial motor vehicle and thus does not fall within the agency's statutory authority under 49 U.S.C. 31141(a) to determine whether such safety laws should be preempted.  It did not address whether the law was otherwise preempted under the "prices, routes, and services" provision of the FAAA Act.

purposes and objectives of Congress." *International Paper Co.* v. *Ouellette*, 479 U.S. 481, 491-92 (1987) (internal quotations omitted); *Hines* v. *Davidowitz*, 312 U.S. 52, 67 (1941). In addition, regulations or other federal agency action having the force of law may preempt inconsistent state requirements to the same extent as a federal statute. *Fidelity Fed. Sav. & Loan Ass'n v. De la Cuesta,* 458 U.S. 141, 153 (1982).

The California meal and rest break law is not preempted under these standards. As pertinent here, federal "hours of service" regulations require that long-haul drivers may not continue to drive if more than eight hours have elapsed since their last break of at least 30 minutes. 49 C.F.R. 395.5(a)(3). These regulations, however, do not generally apply to plaintiffs' work. The application of the state break law thus has little if any effect on compliance with federal regulatory standards.

In particular, there are no federal break standards applicable to short-haul drivers – *i.e.*, drivers who, like plaintiffs, principally operate within a relatively short radius of where they report to and are released from work and who return to that location at the end of a duty shift. *See* 49 C.F.R. 395.1(e)(1) and (2) (reprinted in the addendum). The FMCSA had originally intended its break requirement to apply to these drivers. The D.C. Circuit, however, held that the rulemaking record did not adequately support

28

application of the break rule to short-haul drivers and may not be applied to them. *See American Trucking Ass'n, Inc.* v. *FMCSA*, 724 F.3d 243 (D.C. Cir. 2013). There is thus no current federal break requirement with respect to short- haul drivers, and the agency advises that it has no current plan to impose one. *See* 78 Fed. Reg. 64179, 64181 (2013) (amending 49 C.F.R. 395.3(a)(3)(ii) to conform to D.C. Circuit holding). As plaintiffs here all appear to be short-haul drivers, there is no federal break requirement applicable to them and thus no conflict between the federal regulations and state law.

Moreover, though the break requirements imposed by federal regulations do apply to long-haul drivers, the regulations only govern long-haul transportation that occurs in interstate commerce. *See* 49 U.S.C. 31136 (a) (authorizing Secretary to prescribe regulations on commercial motor vehicle safety) and 49 U.S.C. 31132(1) (defining "commercial motor vehicles" as certain vehicles operating in interstate commerce). It appears that much of the work done by plaintiffs was purely intrastate and thus not subject to federal break requirements, even if the intrastate trips were otherwise long enough to be deemed long-haul transportation.[6]

---

6  We cannot determine from the record whether any of plaintiffs' work entailed transportation in interstate commerce. It appears that many of the trips were wholly between points within the state. That, however, is not

At bottom, the principal purpose of the federal hours of service regulation is improve motor vehicle safety and driver health by reducing driver fatigue. 76 Fed. Reg. 81134-35 (2011). Those paramount objectives are not impeded by the California law.

III.    The Court Should Accord The Government's Views On Preemption Deference.

The agency's judgment as to the preemptive scope of the FAAA Act and federal regulations is entitled to deference. The agency has specialized expertise with respect to motor carrier operation and regulation as well as express statutory authority to determine whether state laws addressed to commercial motor vehicle safety should be preempted. The broad scope of the FAAA Act's preemption provision is ambiguous in the sense that it does not precisely define what it means for a state law to "relate to" a price, route, or service. *See Defiore* v. *American Airlines, Inc.,* 646 F.3d 81, 86 (1st Cir. 2001) (noting that "related to" is a "highly elastic" standard). And the agency is uniquely qualified to assess the impact of state laws on the motor

---

dispositive as such trips might, in particular circumstances, be deemed the intrastate leg of a longer, interstate shipment. *See Klitzke* v. *Steiner Corp.*, 110 F.3d 1465, 1469 (9th Cir. 1997) (Whether transportation is interstate or intrastate is determined by the essential character of the commerce, manifested by shipper's fixed and persisting transportation intent at the time of the shipment, and is ascertained from all of the facts and circumstances surrounding the transportation).

carrier industry. All these factors indicate that the agency's views on the preemptive scope of the statute and federal safety regulations are entitled to substantial deference. *See*, *e.g.*, *Geier* v. *American Honda Motor Co., Inc.*, 529 U.S. 861, 883 (2000) ("Congress has delegated to DOT authority to implement the statute; the subject matter is technical; and the relevant history and background are complex and extensive. The agency is likely to have a thorough understanding of its own regulation and its objectives and is uniquely qualified to comprehend the likely impact of state requirements. * * * In these circumstances, the agency's own views should make a difference.") (internal quotations and citation omitted); *accord Medtronic Inc.* v. *Lohr*, 518 U.S. 470, 495-96 (1996)(similar factors afford a sound basis for giving substantial weight to an agency's view of the preemptive effect of the statute).

The same considerations warrant deference to the agency's interpretation of the impact of state law on its hours of service regulation. *See Hillsborough County* v. *Automated Medical Laboratories, Inc.*, 471 U.S. 707, 714 (1985) (agency's understanding of the pre-emptive effect of its regulations is "dispositive").

Finally, deference is not vitiated merely because the agency's views are first set forth in an amicus brief. The position we have articulated here is

consistent with the agency's prior views and reflects the agency's considered judgment regarding the preemptive scope of the statute. In these circumstances, deference to a position set forth in an amicus filing is appropriate. *Geier*, 529 U.S. at 884; *Auer* v. *Robbins*, 519 U.S. 452, 461-62 (1997).

## CONCLUSION

Plaintiffs' claims under the California meal and rest break law are not preempted by federal law.

Respectfully submitted,

Of Counsel:

KATHRYN B. THOMSON
Acting General Counsel
PAUL M. GEIER
Assistant General Counsel for
Litigation
PETER J. PLOCKI
Deputy Assistant General Counsel
for Litigation
CHRISTOPHER S. PERRY
Senior Trial Attorney
*Department of Transportation*

T.F. SCOTT DARLING, III
Chief Counsel
DEBRA S. STRAUS
Senior Attorney
*Federal Motor Carrier Safety
Administration*

STUART F. DELERY
 Assistant Attorney General
MICHAEL S. RAAB
 (202) 514-4053
/s/JEFFREY CLAIR
 (202) 514-4028
jeffrey.clair@usdoj.gov

Attorneys, Civil Division
Room 7243, Department of Justice
 950 Pennsylvania Ave., N.W.
Washington, D.C. 20530

32

## FRAP 32(a) CERTIFICATE OF COMPLIANCE

I certify that this brief has been prepared using a 14-point, proportionally-spaced font, and that based on word processing software, this brief contains, 6,948 words.

/s/ Jeffrey Clair
Attorney, Civil Division
U.S. Department of Justice

## CERTIFICATE OF SERVICE

I certify that on February 18, 2014, I electronically filed the foregoing Brief for the United States as Amicus Curiae by using the appellate CM/ECF system. As counsel for the parties are registered CM/ECF users, the electronic filing of the brief constitutes service upon them.

/s/ Jeffrey Clair
Attorney, Civil Division
U.S. Department of Justice

## ADDENDUM TABLE OF CONTENTS

1. 49 U.S.C. 31141.................................................................................................1

2. 49 U.S.C.  14501.............................................................................................4

3. Cal. Industrial Welfare Commission, Order No. 9-2001,
   codified at 8 C.C.R. 11090 ...........................................................................9

4. FMCSA Denial of Petition for Preemption,
   73 Fed. Reg. 79204 (Dec. 24, 2008)..........................................................20

5. FMCSA Hours of Service Regulation, 49 C.F.R. 395.1(a) & (e) ........................26

49 U.S.C.A. § 31141

United States Code Annotated Currentness
Title 49. Transportation (Refs & Annos)
Subtitle VI. Motor Vehicle and Driver Programs
Part B. Commercial
⫶▤Chapter 311. Commercial Motor Vehicle Safety
⫶▤Subchapter III. Safety Regulation (Refs & Annos)
➡**§ 31141. Review and preemption of State laws and regulations**

**(a) Preemption after decision.**--A State may not enforce a State law or regulation on commercial motor vehicle safety that the Secretary of Transportation decides under this section may not be enforced.

**(b) Submission of regulation.**--A State receiving funds made available under section 31104 that enacts a State law or issues a regulation on commercial motor vehicle safety shall submit a copy of the law or regulation to the Secretary immediately after the enactment or issuance.

**(c) Review and decisions by secretary.**--

**(1) Review.**--The Secretary shall review State laws and regulations on commercial motor vehicle safety. The Secretary shall decide whether the State law or regulation--

**(A)** has the same effect as a regulation prescribed by the Secretary under section 31136;

**(B)** is less stringent than such regulation; or

**(C)** is additional to or more stringent than such regulation.

**(2) Regulations with same effect.**--If the Secretary decides a State law or regulation has the same effect as a regulation prescribed by the Secretary under section 31136 of this title, the State law or regulation may be enforced.

**(3) Less stringent regulations.**--If the Secretary decides a State law or regulation is less stringent than a regulation prescribed by the

Secretary under section 31136 of this title, the State law or regulation may not be enforced.

**(4) Additional or more stringent regulations.**--If the Secretary decides a State law or regulation is additional to or more stringent than a regulation prescribed by the Secretary under section 31136 of this title, the State law or regulation may be enforced unless the Secretary also decides that--

**(A)** the State law or regulation has no safety benefit;

**(B)** the State law or regulation is incompatible with the regulation prescribed by the Secretary; or

**(C)** enforcement of the State law or regulation would cause an unreasonable burden on interstate commerce.

**(5) Consideration of effect on interstate commerce.**--In deciding under paragraph (4) whether a State law or regulation will cause an unreasonable burden on interstate commerce, the Secretary may consider the effect on interstate commerce of implementation of that law or regulation with the implementation of all similar laws and regulations of other States.

**(d) Waivers.--(1)** A person (including a State) may petition the Secretary for a waiver of a decision of the Secretary that a State law or regulation may not be enforced under this section. The Secretary shall grant the waiver, as expeditiously as possible, if the person demonstrates to the satisfaction of the Secretary that the waiver is consistent with the public interest and the safe operation of commercial motor vehicles.

**(2)** Before deciding whether to grant or deny a petition for a waiver under this subsection, the Secretary shall give the petitioner an opportunity for a hearing on the record.

**(e) Written notice of decisions.**--Not later than 10 days after making a decision under subsection (c) of this section that a State law or regulation may not be enforced, the Secretary shall give written notice to the State of that decision.

**(f) Judicial review and venue.--(1)** Not later than 60 days after the Secretary makes a decision under subsection (c) of this section, or grants or denies a petition for a waiver under subsection (d) of this

section, a person (including a State) adversely affected by the decision, grant, or denial may file a petition for judicial review. The petition may be filed in the court of appeals of the United States for the District of Columbia Circuit or in the court of appeals of the United States for the circuit in which the person resides or has its principal place of business.

**(2)** The court has jurisdiction to review the decision, grant, or denial and to grant appropriate relief, including interim relief, as provided in chapter 7 of title 5.

**(3)** A judgment of a court under this subsection may be reviewed only by the Supreme Court under section 1254 of title 28.

**(4)** The remedies provided for in this subsection are in addition to other remedies provided by law.

**(g) Initiating review proceedings.**--To review a State law or regulation on commercial motor vehicle safety under this section, the Secretary may initiate a regulatory proceeding on the Secretary's own initiative or on petition of an interested person (including a State).

CREDIT(S)

(Added Pub.L. 103-272, § 1(e), July 5, 1994, 108 Stat. 1008; amended Pub.L. 105-178, Title IV, § 4008(e), June 9, 1998, 112 Stat. 404.)

HISTORICAL AND STATUTORY NOTES

-------------------------------------------------------------------------------

49 U.S.C.A. § 14501

United States Code Annotated Currentness
Title 49. Transportation (Refs & Annos)
Subtitle IV. Interstate Transportation (Refs & Annos)
Part B. Motor Carriers, Water Carriers, Brokers, and Freight Forwarders (Refs & Annos)
Chapter 145. Federal-State Relations
➡ **§ 14501. Federal authority over intrastate transportation**

**(a) Motor carriers of passengers.--**

**(1) Limitation on State law.**--No State or political subdivision thereof and no interstate agency or other political agency of 2 or more States shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to--

**(A)** scheduling of interstate or intrastate transportation (including discontinuance or reduction in the level of service) provided by a motor carrier of passengers subject to jurisdiction under subchapter I of chapter 135 of this title on an interstate route;

**(B)** the implementation of any change in the rates for such transportation or for any charter transportation except to the extent that notice, not in excess of 30 days, of changes in schedules may be required; or

**(C)** the authority to provide intrastate or interstate charter bus transportation.

This paragraph shall not apply to intrastate commuter bus operations, or to intrastate bus transportation of any nature in the State of Hawaii.

**(2) Matters not covered.**--Paragraph (1) shall not restrict the safety regulatory authority of a State with respect to motor vehicles, the authority of a State to impose highway route controls or limitations based on the size or weight of the motor vehicle, or the authority of a State to regulate carriers with regard to minimum amounts of financial responsibility relating to insurance requirements and self-insurance authorization.

**(b) Freight forwarders and brokers.--**

**(1) General rule.**--Subject to paragraph (2) of this subsection, no State or political subdivision thereof and no intrastate agency or other political agency of 2 or more States shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to intrastate rates, intrastate routes, or intrastate services of any freight forwarder or broker.

**(2) Continuation of Hawaii's authority.**--Nothing in this subsection and the amendments made by the Surface Freight Forwarder Deregulation Act of 1986 shall be construed to affect the authority of the State of Hawaii to continue to regulate a motor carrier operating within the State of Hawaii.

**(c) Motor carriers of property.--**

**(1) General rule.**--Except as provided in paragraphs (2) and (3), a State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier (other than a carrier affiliated with a direct air carrier covered by section 41713(b)(4)) or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.

**(2) Matters not covered.**--Paragraph (1)--

**(A)** shall not restrict the safety regulatory authority of a State with respect to motor vehicles, the authority of a State to impose highway route controls or limitations based on the size or weight of the motor vehicle or the hazardous nature of the cargo, or the authority of a State to regulate motor carriers with regard to minimum amounts of financial responsibility relating to insurance requirements and self-insurance authorization;

**(B)** does not apply to the intrastate transportation of household goods; and

**(C)** does not apply to the authority of a State or a political subdivision of a State to enact or enforce a law, regulation, or other provision relating to the price of for-hire motor vehicle transportation by a tow truck, if such transportation is performed without the prior consent or authorization of the owner or operator of the motor vehicle.

**(3) State standard transportation practices.--**

**(A) Continuation.**--Paragraph (1) shall not affect any authority of a State, political subdivision of a State, or political authority of 2 or more States to enact or enforce a law, regulation, or other provision, with respect to the intrastate transportation of property by motor carriers, related to--

**(i)** uniform cargo liability rules,

**(ii)** uniform bills of lading or receipts for property being transported,

**(iii)** uniform cargo credit rules,

**(iv)** antitrust immunity for joint line rates or routes, classifications, mileage guides, and pooling, or

**(v)** antitrust immunity for agent-van line operations (as set forth in section 13907),

if such law, regulation, or provision meets the requirements of subparagraph (B).

**(B) Requirements.**--A law, regulation, or provision of a State, political subdivision, or political authority meets the requirements of this subparagraph if--

**(i)** the law, regulation, or provision covers the same subject matter as, and compliance with such law, regulation, or provision is no more burdensome than compliance with, a provision of this part or a regulation issued by the Secretary or the Board under this part; and

**(ii)** the law, regulation, or provision only applies to a carrier upon request of such carrier.

**(C) Election.**--Notwithstanding any other provision of law, a carrier affiliated with a direct air carrier through common controlling ownership may elect to be subject to a law, regulation, or provision of a State, political subdivision, or political authority under this paragraph.

**(4) Nonapplicability to Hawaii.**--This subsection shall not apply with respect to the State of Hawaii.

**(5) Limitation on statutory construction.**--Nothing in this section shall be construed to prevent a State from requiring that, in the case of a motor vehicle to be towed from private property without the consent of the owner or operator of the vehicle, the person towing the vehicle have prior written authorization from the property owner or lessee (or an employee or agent thereof) or that such owner or lessee (or an employee or agent thereof) be present at the time the vehicle is towed from the property, or both.

**(d) Pre-arranged ground transportation.**--

**(1) In general.**--No State or political subdivision thereof and no interstate agency or other political agency of 2 or more States shall enact or enforce any law, rule, regulation, standard or other provision having the force and effect of law requiring a license or fee on account of the fact that a motor vehicle is providing pre-arranged ground transportation service if the motor carrier providing such service--

**(A)** meets all applicable registration requirements under chapter 139 for the interstate transportation of passengers;

**(B)** meets all applicable vehicle and intrastate passenger licensing requirements of the State or States in which the motor carrier is domiciled or registered to do business; and

**(C)** is providing such service pursuant to a contract for--

**(i)** transportation by the motor carrier from one State, including intermediate stops, to a destination in another State; or

**(ii)** transportation by the motor carrier from one State, including intermediate stops in another State, to a destination in the original State.

**(2) Intermediate stop defined.**--In this section, the term "intermediate stop", with respect to transportation by a motor carrier, means a pause in the transportation in order for one or more passengers to engage in personal or business activity, but only if the driver providing the transportation to such passenger or passengers does not, before resuming the transportation of such passenger (or at least 1 of such passengers), provide transportation to any other person not included among the passengers being transported when the pause began.

**(3) Matters not covered.**--Nothing in this subsection shall be construed--

**(A)** as subjecting taxicab service to regulation under chapter 135 or section 31138;

**(B)** as prohibiting or restricting an airport, train, or bus terminal operator from contracting to provide preferential access or facilities to one or more providers of pre-arranged ground transportation service; and

**(C)** as restricting the right of any State or political subdivision of a State to require, in a nondiscriminatory manner, that any individual operating a vehicle providing prearranged ground transportation service originating in the State or political subdivision have submitted to pre-licensing drug testing or a criminal background investigation of the records of the State in which the operator is domiciled, by the State or political subdivision by which the operator is licensed to provide such service, or by the motor carrier providing such service, as a condition of providing such service.

CREDIT(S)

(Added Pub.L. 104-88, Title I, § 103, Dec. 29, 1995, 109 Stat. 899; amended Pub.L. 105-178, Title IV, § 4016, June 9, 1998, 112 Stat. 412; Pub.L. 105-277, Div. C, Title I, § 106, Oct. 21, 1998, 112 Stat. 2681-586; Pub.L. 107-298, § 2, Nov. 26, 2002, 116 Stat. 2342; Pub.L. 109-59, Title IV, §§ 4105(a), 4206(a), Aug. 10, 2005, 119 Stat. 1717, 1754.)

HISTORICAL AND STATUTORY NOTES



# OFFICIAL NOTICE

### INDUSTRIAL WELFARE COMMISSION
### ORDER NO. 9-2001
### REGULATING
### WAGES, HOURS AND WORKING CONDITIONS IN THE

# TRANSPORTATION INDUSTRY

*Effective July 1, 2004 as amended*

*Sections 4(A) and 10(C) amended and republished by the Department of Industrial Relations, effective January 1, 2007, pursuant to AB 1835, Chapter 230, Statutes of 2006*

*This Order Must Be Posted Where Employees Can Read It Easily*

IWC FORM 1109 (Rev. 03-2013)
OSP 06 98767

Addendum9



● Please Post With This Side Showing ●

**OFFICIAL NOTICE**

*Effective July 1, 2004 as amended*

*Sections 4(A) and 10(C) amended and republished by the Department of Industrial Relations,
effective January 1, 2007, pursuant to AB 1835, Chapter 230, Statutes of 2006*

## INDUSTRIAL WELFARE COMMISSION
## ORDER NO. 9-2001
## REGULATING
### WAGES, HOURS AND WORKING CONDITIONS IN THE

# TRANSPORTATION INDUSTRY

**TAKE NOTICE:** To employers and representatives of persons working in industries and occupations in the State of California: The Department of Industrial Relations amends and republishes the minimum wage and meals and lodging credits in the Industrial Welfare Commission's Orders as a result of legislation enacted (AB 1835, Ch. 230, Stats of 2006, adding sections 1182.12 and 1182.13 to the California Labor Code.) The amendments and republishing make no other changes to the IWC's Orders.

## 1. APPLICABILITY OF ORDER

This order shall apply to all persons employed in the transportation industry whether paid on a time, piece rate, commission, or other basis, except that:

(A) Provisions of Sections 3 through 12 of this order shall not apply to persons employed in administrative, executive, or professional capacities. The following requirements shall apply in determining whether an employee's duties meet the test to qualify for an exemption from those sections:

(1) <u>Executive Exemption.</u> A person employed in an executive capacity means any employee:

(a) Whose duties and responsibilities involve the management of the enterprise in which he/she is employed or of a customarily recognized department or subdivision thereof; and

(b) Who customarily and regularly directs the work of two or more other employees therein; and

(c) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and

(d) Who customarily and regularly exercises discretion and independent judgment; and

(e) Who is primarily engaged in duties which meet the test of the exemption. The activities constituting exempt work and non-exempt work shall be construed in the same manner as such items are construed in the following regulations under the Fair Labor Standards Act effective as of the date of this order: 29 C.F.R. Sections 541.102, 541.104–111, and 541.115-116. Exempt work shall include, for example, all work that is directly and closely related to exempt work and work which is properly viewed as a means for carrying out exempt functions. The work actually performed by the employee during the course of the workweek must, first and foremost, be examined and the amount of time the employee spends on such work, together with the employer's realistic expectations and the realistic requirements of the job, shall be considered in determining whether the employee satisfies this requirement.

(f) Such an employee must also earn a monthly salary equivalent to no less than two (2) times the state minimum wage for full-time employment. Full-time employment is defined in Labor Code Section 515(c) as 40 hours per week.

(2) <u>Administrative Exemption.</u> A person employed in an administrative capacity means any employee:

(a) Whose duties and responsibilities involve either:

(i) The performance of office or non-manual work directly related to management policies or general business operations of his employer or his/her employer's customers; or

(ii) The performance of functions in the administration of a school system, or educational establishment or institution, or of a department or subdivision thereof, in work directly related to the academic instruction or training carried on therein; and

(b) Who customarily and regularly exercises discretion and independent judgment; and

(c) Who regularly and directly assists a proprietor, or an employee employed in a bona fide executive or administrative capacity (as such terms are defined for purposes of this section); or

(d) Who performs under only general supervision work along specialized or technical lines requiring special training, experience, or knowledge; or

(e) Who executes under only general supervision special assignments and tasks; and

(f) Who is primarily engaged in duties that meet the test of the exemption. The activities constituting exempt work and non-exempt work shall be construed in the same manner as such terms are construed in the following regulations under the Fair Labor Standards Act effective as of the date of this order: 29 C.F.R. Sections 541.201-205, 541.207-208, 541.210, and 541.215. Exempt work shall include, for example, all work that is directly and closely related to exempt work and work which is properly viewed as a means for carrying out exempt functions. The work actually performed by the employee during the course of the workweek must, first and foremost, be examined and the amount of time the employee spends on such work, together with the employer's realistic expectations and the realistic requirements of the job, shall be considered in determining whether the employee satisfies this requirement.

(g) Such employee must also earn a monthly salary equivalent to no less than two (2) times the state minimum wage for full-time employment. Full-time employment is defined in Labor Code Section 515(c) as 40 hours per week.

—1

ing requirements:

(a) Who is licensed or certified by the State of California and is primarily engaged in the practice of one of the following recognized professions: law, medicine, dentistry, optometry, architecture, engineering, teaching, or accounting; or

(b) Who is primarily engaged in an occupation commonly recognized as a learned or artistic profession. For the purposes of this subsection, "learned or artistic profession" means an employee who is primarily engaged in the performance of:

(i) Work requiring knowledge of an advanced type in a field or science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study, as distinguished from a general academic education and from an apprenticeship, and from training in the performance of routine mental, manual, or physical processes, or work that is an essential part of or necessarily incident to any of the above work; or

(ii) Work that is original and creative in character in a recognized field of artistic endeavor (as opposed to work which can be produced by a person endowed with general manual or intellectual ability and training), and the result of which depends primarily on the invention, imagination, or talent of the employee or work that is an essential part of or necessarily incident to any of the above work; and

(iii) Whose work is predominantly intellectual and varied in character (as opposed to routine mental, manual, mechanical, or physical work) and is of such character that the output produced or the result accomplished cannot be standardized in relation to a given period of time.

(c) Who customarily and regularly exercises discretion and independent judgment in the performance of duties set forth in subparagraphs (a) and (b).

(d) Who earns a monthly salary equivalent to no less than two (2) times the state minimum wage for full-time employment. Full-time employment is defined in Labor Code Section 515 (c) as 40 hours per week.

(e) Subparagraph (b) above is intended to be construed in accordance with the following provisions of federal law as they existed as of the date of this wage order: 29 C.F.R. Sections 541.207, 541.301(a)-(d), 541.302, 541.306, 541.307, 541.308, and 541.310.

(f) Notwithstanding the provisions of this subparagraph, pharmacists employed to engage in the practice of pharmacy, and registered nurses employed to engage in the practice of nursing, shall not be considered exempt professional employees, nor shall they be considered exempt from coverage for the purposes of this subparagraph unless they individually meet the criteria established for exemption as executive or administrative employees.

(g) Subparagraph (f) above shall not apply to the following advanced practice nurses:

(i) Certified nurse midwives who are primarily engaged in performing duties for which certification is required pursuant to Article 2.5 (commencing with Section 2746) of Chapter 6 of Division 2 of the Business and Professions Code.

(ii) Certified nurse anesthetists who are primarily engaged in performing duties for which certification is required pursuant to Article 7 (commencing with Section 2825) of Chapter 6 of Division 2 of the Business and Professions Code.

(iii) Certified nurse practitioners who are primarily engaged in performing duties for which certification is required pursuant to Article 8 (commencing with Section 2834) of Chapter 6 of Division 2 of the Business and Professions Code.

(iv) Nothing in this subparagraph shall exempt the occupations set forth in clauses (i), (ii), and (iii) from meeting the requirements of subsection 1(A)(3)(a)-(d) above.

(h) Except, as provided in subparagraph (i), an employee in the computer software field who is paid on an hourly basis shall be exempt, if *all* of the following apply:

(i) The employee is primarily engaged in work that is intellectual or creative and that requires the exercise of discretion and independent judgment.

(ii) The employee is primarily engaged in duties that consist of one or more of the following:

—The application of systems analysis techniques and procedures, including consulting with users, to determine hardware, software, or system functional specifications.

—The design, development, documentation, analysis, creation, testing, or modification of computer systems or programs, including prototypes, based on and related to user or system design specifications.

—The documentation, testing, creation, or modification of computer programs related to the design of software or hardware for computer operating systems.

(iii) The employee is highly skilled and is proficient in the theoretical and practical application of highly specialized information to computer systems analysis, programming, and software engineering. A job title shall not be determinative of the applicability of this exemption.

(iv) The employee's hourly rate of pay is not less than forty-one dollars ($41.00). The Office of Policy, Research and Legislation shall adjust this pay rate on October 1 of each year to be effective on January 1 of the following year by an amount equal to the percentage increase in the California Consumer Price Index for Urban Wage Earners and Clerical Workers.*

(i) The exemption provided in subparagraph (h) does not apply to an employee if *any* of the following apply:

(i) The employee is a trainee or employee in an entry-level position who is learning to become proficient in the theoretical and practical application of highly specialized information to computer systems analysis, programming, and software engineering.

(ii) The employee is in a computer-related occupation but has not attained the level of skill and expertise necessary to work independently and without close supervision.

(iii) The employee is engaged in the operation of computers or in the manufacture, repair, or maintenance of computer hardware and related equipment.

---

* Pursuant to Labor Code section 515.5, subdivision (a)(4), the Office of Policy, Research and Legislation, Department of Industrial Relations, has adjusted the minimum hourly rate of pay specified in this subdivision to be $49.77, effective January 1, 2007. This hourly rate of pay is adjusted on October 1 of each year to be effective on January 1, of the following year, and may be obtained at www.dir.ca.gov/IWC or by mail from the Department of Industrial Relations.

Addendum11

(iv) The employee uses intellect and imagination in the performance of duties the content of which depend upon or facilitated by the use of computers and computer software programs and who is skilled in computer-aided design software, including CAD/CAM, but who is not in a computer systems analysis or programming occupation.

(v) The employee is a writer engaged in writing material, including box labels, product descriptions, documentation, promotional material, setup and installation instructions, and other similar written information, either for print or for on screen media or who writes or provides content material intended to be read by customers, subscribers, or visitors to computer-related media such as the World Wide Web or CD-ROMs.

(vi) The employee is engaged in any of the activities set forth in subparagraph (h) for the purpose of creating imagery for effects used in the motion picture, television, or theatrical industry.

(B) Except as provided in Sections 1, 2, 4, 10, and 20, and with regard to commercial drivers, Sections 11 and 12, the provisions of this order shall not apply to any employees directly employed by the State or any political subdivision thereof, including any city, county, or special district. The application of Sections 11 and 12 for commercial drivers employed by governmental entities shall become effective July 1, 2004 or following the expiration date of any valid collective bargaining agreement applicable to such commercial drivers then in effect but, in any event, no later than August 1, 2005. Notwithstanding Section 21, the application of Sections 11 or 12 to public transit bus drivers shall be null and void in the event the IWC or any court of competent jurisdiction invalidates the collective bargaining exemption established by Sections 11 or 12 for those drivers.

(C) The provisions of this order shall not apply to outside salespersons.

(D) The provisions of this order shall not apply to any individual who is the parent, spouse, child, or legally adopted child of the employer.

(E) Except as provided in Sections 4, 10, 11, 12, and 20 through 22, this order shall not be deemed to cover those employees who have entered into a collective bargaining agreement under and in accordance with the provisions of the Railway Labor Act, 45 U.S.C. Sections 151 et seq.

(F) The provisions of this Order shall not apply to any individual participating in a national service program, such as AmeriCorps, carried out using assistance provided under Section 12571 of Title 42 of the United States Code. (See Stats. 2000, ch. 365, amending Labor Code § 1171.)

## 2. DEFINITIONS

(A) An "alternative workweek schedule" means any regularly scheduled workweek requiring an employee to work more than eight (8) hours in a 24-hour period.

(B) "Commission" means the Industrial Welfare Commission of the State of California.

(C) "Commercial driver" means an employee who operates a vehicle described in subdivision (b) of Section 15210 of the Vehicle Code.

(D) "Division" means the Division of Labor Standards Enforcement of the State of California.

(E) "Employ" means to engage, suffer, or permit to work.

(F) "Employee" means any person employed by an employer.

(G) "Employer" means any person as defined in Section 18 of the Labor Code, who directly or indirectly, or through an agent or any other person, employs or exercises control over the wages, hours, or working conditions of any person.

(H) "Hours worked" means the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so.

(I) "Minor" means, for the purpose of this order, any person under the age of 18 years.

(J) "Outside salesperson" means any person, 18 years of age or over, who customarily and regularly works more than half the working time away from the employer's place of business selling tangible or intangible items or obtaining orders or contracts for products, services or use of facilities.

(K) "Primarily" as used in Section 1, Applicability, means more than one-half the employee's work time.

(L) "Public Transit Bus Driver" means a commercial driver who operates a transit bus and is employed by a governmental entity.

(M) "Shift" means designated hours of work by an employee, with a designated beginning time and quitting time.

(N) "Split shift" means a work schedule, which is interrupted by non-paid non-working periods established by the employer, other than bona fide rest or meal periods.

(O) "Teaching" means, for the purpose of Section 1 of this order, the profession of teaching under a certificate from the Commission for Teacher Preparation and Licensing or teaching in an accredited college or university.

(P) "Transportation Industry" means any industry, business, or establishment operated for the purpose of conveying persons or property from one place to another whether by rail, highway, air, or water, and all operations and services in connection therewith; and also includes storing or warehousing of goods or property, and the repairing, parking, rental, maintenance, or cleaning of vehicles.

(Q) "Wages" includes all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation.

(R) "Workday" and "day" mean any consecutive 24-hour period beginning at the same time each calendar day.

(S) "Workweek" and "week" mean any seven (7) consecutive days, starting with the same calendar day each week. "Workweek" is a fixed and regularly recurring period of 168 hours, seven (7) consecutive 24-hour periods.

## 3. HOURS AND DAYS OF WORK

(A) Daily Overtime-General Provisions

(1) The following overtime provisions are applicable to employees 18 years of age or over and to employees 16 or 17 years of age who are not required by law to attend school and are not otherwise prohibited by law from engaging in the subject work. Such employees shall not be employed more than eight (8) hours in any workday or more than 40 hours in any workweek unless the employee receives one and one-half (1½) times such employee's regular rate of pay for all hours worked over 40 hours in the workweek.

—3

Eight (8) hours of labor constitutes a day's work. Employment beyond eight (8) hours in any workweek is permissible provided the employee is compensated for such overtime at not less than:

    (a) One and one-half (1$^{1}/_{2}$) times the employee's regular rate of pay for all hours worked in excess of eight (8) hours up to and including 12 hours in any workday, and for the first eight (8) hours worked on the seventh (7th) consecutive day of work in a workweek; and

    (b) Double the employee's regular rate of pay for all hours worked in excess of 12 hours in any workday and for all hours worked in excess of eight (8) hours on the seventh (7th) consecutive day of work in a workweek.

    (c) The overtime rate of compensation required to be paid to a nonexempt full-time salaried employee shall be computed by using the employee's regular hourly salary as one-fortieth (1/40) of the employee's weekly salary.

(B) Alternative Workweek Schedules

    (1) No employer shall be deemed to have violated the daily overtime provisions by instituting, pursuant to the election procedures set forth in this wage order, a regularly scheduled alternative workweek schedule of not more than ten (10) hours per day within a 40 hour workweek without the payment of an overtime rate of compensation. All work performed in any workday beyond the schedule established by the agreement up to 12 hours a day or beyond 40 hours per week shall be paid at one and one-half (1$^{1}/_{2}$) times the employee's regular rate of pay. All work performed in excess of 12 hours per day and any work in excess of eight (8) hours on those days worked beyond the regularly scheduled number of workdays established by the alternative workweek agreement shall be paid at double the employee's regular rate of pay. Any alternative workweek agreement adopted pursuant to this section shall provide for not less than four (4) hours of work in any shift. Nothing in this section shall prohibit an employer, at the request of the employee, to substitute one day of work for another day of the same length in the shift provided by the alternative workweek agreement on an occasional basis to meet the personal needs of the employee without the payment of overtime. No hours paid at either one and one-half (1$^{1}/_{2}$) or double the regular rate of pay shall be included in determining when 40 hours have been worked for the purpose of computing overtime compensation.

    (2) If an employer whose employees have adopted an alternative workweek agreement permitted by this order requires an employee to work fewer hours than those that are regularly scheduled by the agreement, the employer shall pay the employee overtime compensation at a rate of one and one-half (1$^{1}/_{2}$) times the employee's regular rate of pay for all hours worked in excess of eight (8) hours, and double the employee's regular rate of pay for all hours worked in excess of 12 hours for the day the employee is required to work the reduced hours.

    (3) An employer shall not reduce an employee's regular rate of hourly pay as a result of the adoption, repeal or nullification of an alternative workweek schedule.

    (4) An employer shall explore any available reasonable alternative means of accommodating the religious belief or observance of an affected employee that conflicts with an adopted alternative workweek schedule, in the manner provided by subdivision (j) of Section 12940 of the Government Code.

    (5) An employer shall make a reasonable effort to find a work schedule not to exceed eight (8) hours in a workday, in order to accommodate any affected employee who was eligible to vote in an election authorized by this section and who is unable to work the alternative workweek schedule established as the result of that election.

    (6) An employer shall be permitted, but not required, to provide a work schedule not to exceed eight (8) hours in a workday to accommodate any employee who is hired after the date of the election and who is unable to work the alternative workweek schedule established by the election.

    (7) Arrangements adopted in a secret ballot election held pursuant to this order prior to 1998, or under the rules in effect prior to 1998, and before the performance of the work, shall remain valid after July 1, 2000 provided that the results of the election are reported by the employer to the Office of Policy, Research and Legislation by January 1, 2001, in accordance with the requirements of subsection (C) below (Election Procedures). If an employee was voluntarily working an alternative workweek schedule of not more than ten (10) hours a day as of July 1, 1999, that alternative workweek schedule was based on an individual agreement made after January 1, 1998 between the employee and employer, and the employee submitted, and the employer approved, a written request on or before May 30, 2000 to continue the agreement, the employee may continue to work that alternative workweek schedule without payment of an overtime rate of compensation for the hours provided in the agreement. The employee may revoke his/her voluntary authorization to continue such a schedule with 30 days written notice to the employer. New arrangements can only be entered into pursuant to the provisions of this section.

(C) Election Procedures

Election procedures for the adoption and repeal of alternative workweek schedules require the following:

    (1) Each proposal for an alternative workweek schedule shall be in the form of a written agreement proposed by the employer. The proposed agreement must designate a regularly scheduled alternative workweek in which the specified number of work days and work hours are regularly recurring. The actual days worked within that alternative workweek schedule need not be specified. The employer may propose a single work schedule that would become the standard schedule for workers in the work unit, or a menu of work schedule options, from which each employee in the unit would be entitled to choose. If the employer proposes a menu of work schedule options, the employee may, with the approval of the employer, move from one menu option to another.

    (2) In order to be valid, the proposed alternative workweek schedule must be adopted in a secret ballot election, before the performance of work, by at least a two-thirds (2/3) vote of the affected employees in the work unit. The election shall be held during regular working hours at the employees' work site. For purposes of this subsection, "affected employees in the work unit" may include all employees in a readily identifiable work unit, such as a division, a department, a job classification, a shift, a separate physical location, or a recognized subdivision of any such work unit. A work unit may consist of an individual employee as long as the criteria for an identifiable work unit in this subsection are met.

    (3) Prior to the secret ballot vote, any employer who proposed to institute an alternative workweek schedule shall have made a disclosure in writing to the affected employees, including the effects of the proposed arrangement on the employees' wages, hours, and benefits. Such a disclosure shall include meeting(s), duly noticed, held at least 14 days prior to voting, for the specific purpose of discussing the effects of the alternative workweek schedule. An employer shall provide that disclosure in a non-English language, as well as in English, if at least five (5) percent of the affected employees primarily speak that non-English language. The employer

—4

shall maintain written records. An employee who does not attend the meeting and fails to comply with this paragraph shall make the election null and void.

(4) Any election to establish or repeal an alternative workweek schedule shall be held at the work site of the affected employees. The employer shall bear the costs of conducting any election held pursuant to this section. Upon a complaint by an affected employee, and after an investigation by the labor commissioner, the labor commissioner may require the employer to select a neutral third party to conduct the election.

(5) Any type of alternative workweek schedule that is authorized by the California Labor Code may be repealed by the affected employees. Upon a petition of one-third (1/3) of the affected employees, a new secret ballot election shall be held and a two- thirds (2/3) vote of the affected employees shall be required to reverse the alternative workweek schedule. The election to repeal the alternative workweek schedule shall be held not more than 30 days after the petition is submitted to the employer, except that the election shall be held not less than 12 months after the date that the same group of employees voted in an election held to adopt or repeal an alternative workweek schedule. The election shall take place during regular working hours at the employees' work site. If the alternative workweek schedule is revoked, the employer shall comply within 60 days. Upon proper showing of undue hardship, the Division of Labor Standards Enforcement may grant an extension of time for compliance.

(6) Only secret ballots may be cast by affected employees in the work unit at any election held pursuant to this section. The results of any election conducted pursuant to this section shall be reported by the employer to the Office of Policy, Research and Legislation within 30 days after the results are final, and the report of election results shall be a public document. The report shall include the final tally of the vote, the size of the unit, and the nature of the business of the employer.

(7) Employees affected by a change in the work hours resulting from the adoption of an alternative workweek schedule may not be required to work those new work hours for at least 30 days after the announcement of the final results of the election.

(8) Employers shall not intimidate or coerce employees to vote either in support of or in opposition to a proposed alternative workweek. No employees shall be discharged or discriminated against for expressing opinions concerning the alternative workweek election or for opposing or supporting its adoption or repeal. However, nothing in this section shall prohibit an employer from expressing his/her position concerning that alternative workweek to the affected employees. A violation of this paragraph shall be subject to California Labor Code Section 98 et seq.

(D) One and one-half (1$\frac{1}{2}$) times a minor's regular rate of pay shall be paid for all work over 40 hours in any workweek except minors 16 or 17 years old who are not required by law to attend school and may therefore by employed for the same hours as an adult are subject to subsection (A) or (B) and (C) above.

(**VIOLATIONS OF CHILD LABOR LAWS** are subject to civil penalties of from $500 to $10,000 as well as to criminal penalties. Refer to California Labor Code Sections 1285 to 1312 and 1390 to 1399 for additional restrictions on the employment of minors and for descriptions of criminal and civil penalties for violation of the child labor laws. Employers should ask school districts about any required work permits.)

(E) An employee may be employed on seven (7) workdays in one workweek when the total hours of employment during such workweek do not exceed 30 and the total hours of employment in any one workday thereof do not exceed six (6).

(F) If a meal period occurs on a shift beginning or ending at or between the hours of 10 p.m. and 6 a.m., facilities shall be available for securing hot food and drink or for heating food or drink, and a suitable sheltered place shall be provided in which to consume such food or drink.

(G) The provisions of Labor Code Sections 551 and 552 regarding one (1) day's rest in seven (7) shall not be construed to prevent an accumulation of days of rest when the nature of the employment reasonably requires the employee to work seven (7) or more consecutive days; provided, however, that in each calendar month, the employee shall receive the equivalent of one (1) day's rest in seven (7).

(H) Except as provided in subsections (E) and (G), this section shall not apply to any employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage.

(I) Notwithstanding subsection (H) above, where the employer and a labor organization representing employees of the employer have entered into a valid collective bargaining agreement pertaining to the hours of work of the employees, the requirement regarding the equivalent of one (1) day's rest in seven (7) (see subsection (G) above) shall apply, unless the agreement expressly provides otherwise.

(J) If an employer approves a written request of an employee to make up work time that is or would be lost as a result of a personal obligation of the employee, the hours of that makeup work time, if performed in the same workweek in which the work time was lost, may not be counted toward computing the total number of hours worked in a day for purposes of the overtime requirements, except for hours in excess of 11 hours of work in one (1) day or 40 hours of work in one (1) workweek. If an employee knows in advance that he/she will be requesting makeup time for a personal obligation that will recur at a fixed time over a succession of weeks, the employee may request to make up work time for up to four (4) weeks in advance; provided, however, that the makeup work must be performed in the same week that the work time was lost. An employee shall provide a signed written request for each occasion that the employee makes a request to make up work time pursuant to this subsection. While an employer may inform an employee of this makeup time option, the employer is prohibited from encouraging or otherwise soliciting an employee to request the employer's approval to take personal time off and make up the work hours within the same workweek pursuant to this subsection.

(K) The daily overtime provision of subsection (A) above shall not apply to ambulance drivers and attendants scheduled for 24-hour shifts of duty who have agreed in writing to exclude from daily time worked not more than three (3) meal periods of not more than one (1) hour each and a regularly scheduled uninterrupted sleeping period of not more than eight (8) hours. The employer shall provide adequate dormitory and kitchen facilities for employees on such a schedule.

(L) The provisions of this section are not applicable to employees whose hours of service are regulated by:

(1) The United States Department of Transportation Code of Federal Regulations, Title 49, Sections 395.1 to 395.13, Hours of Service of Drivers, or;

in Title 13 of the California Code of Regulations, subchapter 6.5, Section 1200 and the following sections, regulating hours of drivers.

(M) The provisions of this section shall not apply to taxicab drivers.

(N) The provisions of this section shall not apply where any employee of an airline certified by the federal or state government works over 40 hours but not more than 60 hours in a workweek due to a temporary modification in the employee's normal work schedule not required by the employer but arranged at the request of the employee, including but not limited to situations where the employee requests a change in days off or trades days off with another employee.

## 4. MINIMUM WAGES

(A) Every employer shall pay to each employee wages not less than seven dollars and fifty cents ($7.50) per hour for all hours worked, effective January 1, 2007, and not less than eight dollars ($8.00) per hour for all hours worked, effective January 1, 2008, except:

LEARNERS: Employees during their first 160 hours of employment in occupations in which they have no previous similar or related experience, may be paid not less than 85 percent of the minimum wage rounded to the nearest nickel.

(B) Every employer shall pay to each employee, on the established payday for the period involved, not less than the applicable minimum wage for all hours worked in the payroll period, whether the remuneration is measured by time, piece, commission, or otherwise.

(C) When an employee works a split shift, one (1) hour's pay at the minimum wage shall be paid in addition to the minimum wage for that workday, except when the employee resides at the place of employment.

(D) The provisions of this section shall not apply to apprentices regularly indentured under the State Division of Apprenticeship Standards.

## 5. REPORTING TIME PAY

(A) Each workday an employee is required to report for work and does report, but is not put to work or is furnished less than half said employee's usual or scheduled day's work, the employee shall be paid for half the usual or scheduled day's work, but in no event for less than two (2) hours nor more than four (4) hours, at the employee's regular rate of pay, which shall not be less than the minimum wage.

(B) If an employee is required to report for work a second time in any one workday and is furnished less than two (2) hours of work on the second reporting, said employee shall be paid for two (2) hours at the employee's regular rate of pay, which shall not be less than the minimum wage.

(C) The foregoing reporting time pay provisions are not applicable when:

(1) Operations cannot commence or continue due to threats to employees or property; or when recommended by civil authorities; or

(2) Public utilities fail to supply electricity, water, or gas, or there is a failure in the public utilities, or sewer system; or

(3) The interruption of work is caused by an Act of God or other cause not within the employer's control.

(D) This section shall not apply to an employee on paid standby status who is called to perform assigned work at a time other than the employee's scheduled reporting time.

## 6. LICENSES FOR DISABLED WORKERS

(A) A license may be issued by the Division authorizing employment of a person whose earning capacity is impaired by physical disability or mental deficiency at less than the minimum wage. Such licenses shall be granted only upon joint application of employer and employee and employee's representative if any.

(B) A special license may be issued to a nonprofit organization such as a sheltered workshop or rehabilitation facility fixing special minimum rates to enable the employment of such persons without requiring individual licenses of such employees.

(C) All such licenses and special licenses shall be renewed on a yearly basis or more frequently at the discretion of the Division.

(See California Labor Code, Sections 1191 and 1191.5)

## 7. RECORDS

(A) Every employer shall keep accurate information with respect to each employee including the following:

(1) Full name, home address, occupation and social security number.

(2) Birth date, if under 18 years, and designation as a minor.

(3) Time records showing when the employee begins and ends each work period. Meal periods, split shift intervals and total daily hours worked shall also be recorded. Meal periods during which operations cease and authorized rest periods need not be recorded.

(4) Total wages paid each payroll period, including value of board, lodging, or other compensation actually furnished to the employee.

(5) Total hours worked in the payroll period and applicable rates of pay. This information shall be made readily available to the employee upon reasonable request.

(6) When a piece rate or incentive plan is in operation, piece rates or an explanation of the incentive plan formula shall be provided to employees. An accurate production record shall be maintained by the employer.

(B) Every employer shall semimonthly or at the time of each payment of wages furnish each employee, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately, an itemized statement in writing showing: (1) all deductions; (2) the inclusive dates of the period for which the employee is paid; (3) the name of the employee or the employee's social security number; and (4) the name of the employer, provided all deductions made on written orders of the employee may be aggregated and shown as one item.

Addendum15

(C) All required records shall be in the English language and in ink or other indelible form, properly dated, showing month, day and year, and shall be kept on file by the employer for at least three years at the place of employment or at a central location within the State of California. An employee's records shall be available for inspection by the employee upon reasonable request.

(D) Clocks shall be provided in all major work areas or within a reasonable distance thereto insofar as practicable.

# 8. CASH SHORTAGE AND BREAKAGE

No employer shall make any deduction from the wage or require any reimbursement from an employee for any cash shortage, breakage, or loss of equipment, unless it can be shown that the shortage, breakage, or loss is caused by a dishonest or willful act, or by the gross negligence of the employee.

# 9. UNIFORMS AND EQUIPMENT

(A) When uniforms are required by the employer to be worn by the employee as a condition of employment, such uniforms shall be provided and maintained by the employer. The term "uniform" includes wearing apparel and accessories of distinctive design or color.

**NOTE:** This section shall not apply to protective apparel regulated by the Occupational Safety and Health Standards Board.

(B) When tools or equipment are required by the employer or are necessary to the performance of a job, such tools and equipment shall be provided and maintained by the employer, except that an employee whose wages are at least two (2) times the minimum wage provided herein may be required to provide and maintain hand tools and equipment customarily required by the trade or craft. This subsection (B) shall not apply to apprentices regularly indentured under the State Division of Apprenticeship Standards.

**NOTE:** This section shall not apply to protective equipment and safety devices on tools regulated by the Occupational Safety and Health Standards Board.

(C) A reasonable deposit may be required as security for the return of the items furnished by the employer under provisions of subsections (A) and (B) of this section upon issuance of a receipt to the employee for such deposit. Such deposits shall be made pursuant to Section 400 and following of the Labor Code or an employer with the prior written authorization of the employee may deduct from the employee's last check the cost of an item furnished pursuant to (A) and (B) above in the event said item is not returned. No deduction shall be made at any time for normal wear and tear. All items furnished by the employer shall be returned by the employee upon completion of the job.

# 10. MEALS AND LODGING

(A) "Meal" means an adequate, well-balanced serving of a variety of wholesome, nutritious foods.

(B) "Lodging" means living accommodations available to the employee for full-time occupancy which are adequate, decent, and sanitary according to usual and customary standards. Employees shall not be required to share a bed.

(C) Meals or lodging may not be credited against the minimum wage without a voluntary written agreement between the employer and the employee. When credit for meals or lodging is used to meet part of the employer's minimum wage obligation, the amounts so credited may not be more than the following:

| | Effective January 1, 2007 | Effective January 1, 2008 |
|---|---|---|
| **Lodging:** | | |
| Room occupied alone ................................................... | $35.27 per week | $37.63 per week |
| Room shared ............................................................. | $29.11 per week | $31.06 per week |
| Apartment—two-thirds (2/3) of the ordinary rental value, and in no event more than ............................................. | $423.51 per month | $451.89 per month |
| Where a couple are both employed by the employer, two-thirds (2/3) of the ordinary rental value, and in no event more than ....................................................... | $626.49 per month | $668.46 per month |
| **Meals:** | | |
| Breakfast ................................................................... | $2.72 | $2.90 |
| Lunch......................................................................... | $3.72 | $3.97 |
| Dinner ....................................................................... | $5.00 | $5.34 |

(D) Meals evaluated as part of the minimum wage must be bona fide meals consistent with the employee's work shift. Deductions shall not be made for meals not received or lodging not used.

(E) If, as a condition of employment, the employee must live at the place of employment or occupy quarters owned or under the control of the employer, then the employer may not charge rent in excess of the values listed herein.

# 11. MEAL PERIODS

(A) No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employer and the employee.

(B) An employer may not employ an employee for a work period of more than ten (10) hours per day without providing the employee

—7—

with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

(C) Unless the employee is relieved of all duty during a 30 minute meal period, the meal period shall be considered an "on duty" meal period and counted as time worked. An "on duty" meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to. The written agreement shall state that the employee may, in writing, revoke the agreement at any time.

(D) If an employer fails to provide an employee a meal period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the meal period is not provided.

(E) In all places of employment where employees are required to eat on the premises, a suitable place for that purpose shall be designated.

(F) The section shall not apply to any public transit bus driver covered by a valid collective bargaining agreement if the agreement expressly provides for meal periods for those employees, final and binding arbitration of disputes concerning application of its meal period provisions, premium wage rates for all overtime hours worked, and regular hourly rate of pay of not less than 30 percent more than the State minimum wage rate.

## 12. REST PERIODS

(A) Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half ($3 \frac{1}{2}$) hours. Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages.

(B) If an employer fails to provide an employee a rest period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the rest period is not provided.

(C) This section shall not apply to any public transit bus driver covered by a valid collective bargaining agreement if the agreement expressly provides for rest periods for those employees, final and binding arbitration of disputes concerning application of its rest period provisions, premium wage rates for all overtime hours worked, and regular hourly rate of pay of not less than 30 percent more than the State minimum wage rate.

## 13. CHANGE ROOMS AND RESTING FACILITIES

(A) Employers shall provide suitable lockers, closets, or equivalent for the safekeeping of employees' outer clothing during working hours, and when required, for their work clothing during non-working hours. When the occupation requires a change of clothing, change rooms or equivalent space shall be provided in order that employees may change their clothing in reasonable privacy and comfort. These rooms or spaces may be adjacent to but shall be separate from toilet rooms and shall be kept clean.

**NOTE:** This section shall not apply to change rooms and storage facilities regulated by the Occupational Safety and Health Standards Board.

(B) Suitable resting facilities shall be provided in an area separate from the toilet rooms and shall be available to employees during work hours.

## 14. SEATS

(A) All working employees shall be provided with suitable seats when the nature of the work reasonably permits the use of seats.

(B) When employees are not engaged in the active duties of their employment and the nature of the work requires standing, an adequate number of suitable seats shall be placed in reasonable proximity to the work area and employees shall be permitted to use such seats when it does not interfere with the performance of their duties.

## 15. TEMPERATURE

(A) The temperature maintained in each work area shall provide reasonable comfort consistent with industry-wide standards for the nature of the process and the work performed.

(B) If excessive heat or humidity is created by the work process, the employer shall take all feasible means to reduce such excessive heat or humidity to a degree providing reasonable comfort. Where the nature of the employment requires a temperature of less than 60° F., a heated room shall be provided to which employees may retire for warmth, and such room shall be maintained at not less than 68°.

(C) A temperature of not less than 68° shall be maintained in the toilet rooms, resting rooms, and change rooms during hours of use.

(D) Federal and State energy guidelines shall prevail over any conflicting provision of this section.

## 16. ELEVATORS

Adequate elevator, escalator or similar service consistent with industry-wide standards for the nature of the process and the work performed shall be provided when employees are employed four floors or more above or below ground level.

## 17. EXEMPTIONS

If, in the opinion of the Division after due investigation, it is found that the enforcement of any provision contained in Section 7, Records; Section 12, Rest Periods; Section 13, Change Rooms and Resting Facilities; Section 14, Seats; Section 15, Temperature;

—8

Addendum17

or Section 16, elevators would not materially affect the welfare or comfort of employees and would work an undue hardship on the employer, exemption may be made at the discretion of the Division. Such exemptions shall be in writing to be effective and may be revoked after reasonable notice is given in writing. Application for exemption shall be made by the employer or by the employee and/or the employee's representative to the Division in writing. A copy of the application shall be posted at the place of employment at the time the application is filed with the Division.

## 18. FILING REPORTS

(See California Labor Code, Section 1174(a))

## 19. INSPECTION

(See California Labor Code, Section 1174)

## 20. PENALTIES

(See California Labor Code, Section 1199)

(A) In addition to any other civil penalties provided by law, any employer or any other person acting on behalf of the employer who violates, or causes to be violated, the provisions of this order, shall be subject to the civil penalty of:

(1) Initial Violation — $50.00 for each underpaid employee for each pay period during which the employee was underpaid in addition to the amount which is sufficient to recover unpaid wages.

(2) Subsequent Violations — $100.00 for each underpaid employee for each pay period during which the employee was underpaid in addition to an amount which is sufficient to recover unpaid wages.

(3) The affected employee shall receive payment of all wages recovered.

(B) The labor commissioner may also issue citations pursuant to California Labor Code Section 1197.1 for non-payment of wages for overtime work in violation of this order.

## 21. SEPARABILITY

If the application of any provision of this order, or any section, subsection, subdivision, sentence, clause, phrase, word, or portion of this order should be held invalid or unconstitutional or unauthorized or prohibited by statute, the remaining provisions thereof shall not be affected thereby, but shall continue to be given full force and effect as if the part so held invalid or unconstitutional had not been included herein.

## 22. POSTING OF ORDER

Every employer shall keep a copy of this order posted in an area frequented by employees where it may be easily read during the workday. Where the location of work or other conditions make this impractical, every employer shall keep a copy of this order and make it available to every employee upon request.

**QUESTIONS ABOUT ENFORCEMENT** of the Industrial Welfare Commission orders and reports of violations should be directed to the Division of Labor Standards Enforcement. A listing of the DLSE offices is on the back of this wage order. Look in the white pages of your telephone directory under CALIFORNIA, State of, Industrial Relations for the address and telephone number of the office nearest you. The Division has offices in the following cities: Bakersfield, El Centro, Fresno, Long Beach, Los Angeles, Oakland, Redding, Sacramento, Salinas, San Bernardino, San Diego, San Francisco, San Jose, Santa Ana, Santa Barbara, Santa Rosa, Stockton, Van Nuys.

### SUMMARIES IN OTHER LANGUAGES

The Department of Industrial Relations will make summaries of wage and hour requirements in this Order available in Spanish, Chinese and certain other languages when it is feasible to do so. Mail your request for such summaries to the Department at: P.O. box 420603, San Francisco, CA 94142-0603.

### RESUMEN EN OTROS IDIOMAS

El Departamento de Relaciones Industriales confeccionara un resumen sobre los requisitos de salario y horario de esta Disposicion en español, chino y algunos otros idiomas cuando sea posible hacerlo. Envie por correo su pedido por dichos resumenes al Departamento a: P.O. box 420603, San Francisco, CA 94142-0603.

其它文字的摘錄

工業勞保處將摘錄本規則中有關工資和工時的規定，用西班牙文、中文印执。其它文字如有需要，也將辦理摘錄。如果您有需要，可以來信索閱，請寄到：

Department of Industrial Relations
P.O. box 420603
San Francisco, CA 94142-0603

Addendum18

**Division of Labor Standards Enforcement (DLSE)**

**BAKERSFIELD**
Division of Labor Standards Enforcement
7718 Meany Ave.
Bakersfield, CA 93308
661-587-3060

**EL CENTRO**
Division of Labor Standards Enforcement
1550 W. Main St.
El Centro, CA 92643
760-353-0607

**FRESNO**
Division of Labor Standards Enforcement
770 E. Shaw Ave., Suite 222
Fresno, CA 93710
559-244-5340

**LONG BEACH**
Division of Labor Standards Enforcement
300 Oceangate, 3rd Floor
Long Beach, CA 90802
562-590-5048

**LOS ANGELES**
Division of Labor Standards Enforcement
320 W. Fourth St., Suite 450
Los Angeles, CA 90013
213-620-6330

**OAKLAND**
Division of Labor Standards Enforcement
1515 Clay Street, Room 801
Oakland, CA 94612
510-622-3273

**REDDING**
Division of Labor Standards Enforcement
2115 Civic Center Drive, Room 17
Redding, CA 96001
530-225-2655

**SACRAMENTO**
Division of Labor Standards Enforcement
2031 Howe Ave, Suite 100
Sacramento, CA 95825
916-263-1811

**SALINAS**
Division of Labor Standards Enforcement
1870 N. Main Street, Suite 150
Salinas, CA 93906
831-443-3041

**SAN BERNARDINO**
Division of Labor Standards Enforcement
464 West 4th Street, Room 348
San Bernardino, CA 92401
909-383-4334

**SAN DIEGO**
Division of Labor Standards Enforcement
7575 Metropolitan, Room 210
San Diego, CA 92108
619-220-5451

**SAN FRANCISCO**
Division of Labor Standards Enforcement
455 Golden Gate Ave. 10th Floor
San Francisco, CA 94102
415-703-5300

**SAN FRANCISCO – HEADQUARTERS**
Division of Labor Standards Enforcement
455 Golden Gate Ave. 9th Floor
San Francisco, CA 94102
415-703-4810

**SAN JOSE**
Division of Labor Standards Enforcement
100 Paseo De San Antonio, Room 120
San Jose, CA 95113
408-277-1266

**SANTA ANA**
Division of Labor Standards Enforcement
605 West Santa Ana Blvd., Bldg. 28, Room 625
Santa Ana, CA 92701
714-558-4910

**SANTA BARBARA**
Division of Labor Standards Enforcement
411 E. Canon Perdido, Room 3
Santa Barbara, CA 93101
805-568-1222

**SANTA ROSA**
Division of Labor Standards Enforcement
50 "D" Street, Suite 360
Santa Rosa, CA 95404
707-576-2362

**STOCKTON**
Division of Labor Standards Enforcement
31 E. Channel Street, Room 317
Stockton, CA 95202
209-948-7771

**VAN NUYS**
Division of Labor Standards Enforcement
6150 Van Nuys Boulevard, Room 206
Van Nuys, CA 91401
818-901-5315

EMPLOYERS: Do not send copies of your alternative workweek election ballots or election procedures.

Only the results of the alternative workweek election shall be mailed to:

Department of Industrial Relations
Office of Policy, Research and Legislation
P.O. Box 420603
San Francisco, CA 94142-0603
(415) 703-4780

Prevailing Wage Hotline (415) 703-4774

—10—

Addendum19

NOTICES

DEPARTMENT OF TRANSPORTATION

Federal Motor Carrier Safety Administration

Petition for Preemption of California Regulations on Meal Breaks and Rest Breaks for Commercial Motor
Vehicle Drivers; Rejection for Failure To Meet Threshold Requirement

Wednesday, December 24, 2008

AGENCY: Federal Motor Carrier Safety Administration (FMCSA), USDOT.

**\*79204** ACTION: Notice of rejection of petition for preemption.

SUMMARY: FMCSA announces the rejection of a petition for preemption of California laws and regulations
requiring employers to provide employees with meal and rest breaks. The petition does not satisfy the threshold
requirement for preemption under 49 U.S.C. 31141(c) because the provisions at issue are not "laws and
regulations on commercial motor vehicle safety," but rather laws and regulations applied generally to California
employers.

DATES: Effective Date: This decision is effective December 23, 2008.

FOR FURTHER INFORMATION CONTACT: Mr. Charles Medalen, Attorney-Advisor, FMCSA Office of
Chief Counsel. Telephone (202) 493-0349.

Background

On July 3, 2008, James H. Hanson, Esq., Scopelitis, Garvin, Light, Hanson & Feary, P.C., petitioned the Federal
Motor Carrier Safety Administration (FMCSA) on behalf of a group of motor carriers [FN1] to preempt the
California statutes and rules requiring transportation industry employers to give their employees meal and rest
breaks during the work day, as applied to drivers of commercial motor vehicles (CMVs) subject to the FMCSA
hours-of-service (HOS) regulations. For the reasons set forth below, FMCSA rejects the petition.

> FN1 Affinity Logistics Corp.; Cardinal Logistics Management Corp.; C.R.
> England, Inc.; Diakon Logistics (Delaware), Inc.; Estenson Logistics, LLC;
> McLane Company, Inc.; McLane/Suneast, Inc.; Penske Logistics, LLC; Penske
> Truck Leasing Co., L.P.; Trimac Transportation Services (Western), Inc.; and
> Velocity Express, Inc.

California Law

Section 512, Meal periods, of the California Labor Code reads in part as follows:

"(a) An employer may not employ an employee for a work period of more than five hours per day without
providing the employee with a meal period of not less than 30 minutes, except that if the total work period per

day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee. An employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

"(b) Notwithstanding subdivision (a), the Industrial Welfare Commission may adopt a working condition order permitting a meal period to commence after six hours of work if the commission determines that the order is consistent with the health and welfare of the affected employees."

Section 11090 of Article 9 (Transport Industry) of Group 2 (Industry and Occupation Orders) of Chapter 5 (Industrial Welfare Commission) of Division 1 (Department of Industrial Relations) of Title 8 (Industrial Relations) of the California Code of Regulations, is entitled "Order Regulating Wages, Hours, and Working Conditions in the Transportation Industry" [hereafter: "8 CCR § 11090," "Section 11090", or "§ 11090" [FN2]].

> FN2 California Industrial Welfare Commission Order No. 9-2001 is identical to 8
> CCR § 11090.

Section 11090(11). Meal Periods, reads as follows:

"(A) No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employer and employee.

"(B) An employer may not employ an employee for a work period of more than ten (10) hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and employee only if the first meal period was not waived.

"(C) Unless the employee is relieved of all duty during a 30 minute meal period, the meal period shall be considered an 'on duty' meal period and counted as time worked. An 'on duty' meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to. The written agreement shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the meal period is not provided.

"(D) If an employer fails to provide an employee a meal period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the meal period is not provided.

"(E) In all places of employment where employees are required to eat on the premises, a suitable place for that purpose shall be designated."

Section 11090(12). Rest Periods, reads as follows:

"(A) Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hour worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. However, a

rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 1/2) hours. Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages.

"(B) If an employer fails to provide an employee a rest period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hours of pay at the employer's regular rate of compensation for each workday that the rest period is not provided."

**\*79205** Although § 11090(3)(L) provides that "[t]he provisions of this section are not applicable to employees whose hours of service are regulated by: (1) The United States Department of Transportation, Code of Federal Regulations, Title 49, sections 395.1 to 395.13, Hours of Service of Drivers," the California courts have interpreted the word "section" to refer only to § 11090(3), which regulates "hours and days of work," not to all of § 11090, including meal and rest breaks in § 11090(11) and (12). Cicairos v. Summit Logistics, Inc., 133 Cal App.4th 949 (2006).

Federal Law

FMCSA is authorized by 49 U.S.C. 31141 to preempt State law. For purposes of this petition, the relevant portions of that statute read as follows:

"(a) Preemption after decision.—A State may not enforce a State law or regulation on commercial motor vehicle safety that the Secretary of Transportation decides under this section may not be enforced. * * *

"(c) Review and decisions by the secretary.—

"(1) Review.—The Secretary shall review State laws and regulations on commercial motor vehicle safety. The Secretary shall decide whether the State law or regulation—

"(A) Has the same effect as a regulation prescribed by the Secretary under section 31136;

"(B) Is less stringent than such regulation; or

"(C) Is additional to or more stringent than such regulation. * * *

"(4) Additional or more stringent regulations.—If the Secretary decides a State law or regulation is additional to or more stringent than a regulation prescribed by the Secretary under section 31136 of this title, the State law or regulation may be enforced unless the Secretary also decides that—

"(A) The State law or regulation has no safety benefit;

"(B) The State law or regulation is incompatible with the regulation prescribed by the Secretary; or

"(C) Enforcement of the State law or regulation would cause an unreasonable burden on interstate commerce."

Petitioners' Argument

Petitioners summarized the effect of the California meal and rest break rules as follows:

"Motor carrier operations are carefully timed to take advantage of the flexibility available under the HOS

Regulations and, in some instances, to take advantage of the full complement of driving hours provided as well. Some carriers schedule driver meals to take place at carrier facilities once the driver has delivered a load so that unloading, sorting, and loading of outbound shipments can take place during the break. The Meal and Rest Break Rules, by mandating when meals breaks must be taken, interfere with such arrangements, meaning that the driver will miss the inbound appointment, which in turn has the domino effect of delaying outbound operations. * * * [A]s a practical matter, since the driver must be fully relieved of duty during the break, breaks will take much longer as the driver will be required to find a place to pull over and must actually park and shut down the equipment before the break can start. Of course, this will require that the driver return to the equipment, start it, and get back on the road as well. Thus, as a practical matter, the Meal and Rest Break Rules impose a much greater burden on the driver than a simple reading of the rules * * * would at first suggest, and the burden is exacerbated in congested areas" [pages 10-11].

"In the absence of the Meal and Rest Break Rules, a driver could spend three non-driving hours engaged in [other] activities and could still drive for 11 hours under the HOS Regulations. In California, due to the Meal and Rest Break Rules, however, the driver loses 1 1/2 hours (two 30-minute meal breaks and three 10-minute rest breaks) over the course of the permitted 14-hour on-duty period in which the driver can neither drive nor perform on-duty driving tasks. The practical effect is that a driver in California has only 12 1/2 hours of on-duty time after initially coming on duty during which he/she can accumulate his/her 11 hours of driving time, leaving only 1 1/2 hours to perform any other duty non-driving tasks that might naturally occur during the day" [page 10].

"Applying the Meal and Rest Break Rules to drivers subject to the HOS Regulations imposes limitations on a driver's time that are different from and more stringent than the HOS Regulations because the Meal and Rest Break Rules limit the amount of hours available to a driver to complete driving duties after initially coming on-duty to less than the 14 hours permitted by the HOS Regulations. Moreover, the Meal and Rest Break Rules do not allow for the flexibility provided by the HOS Regulations, further exacerbating the effect of the limitations imposed by the Meal and Rest Break Rules. This lack of flexibility not only hinders operations from a scheduling standpoint, it also creates serious safety concerns. Specifically, by imposing meal and rest breaks at set times, the Meal and Rest Break Rules limit a driver's ability to take breaks when they are actually needed. A driver subject only to the HOS Regulations, on the other hand, is not subject to externally imposed limitations and is instead able to take breaks when he or she deems necessary" [page 6].

In a supplement filed with FMCSA on October 2, 2008, petitioners reiterated their position even more bluntly:

"Petitioners * * * argue * * * that they should be free to schedule drivers to work and that drivers should be free to choose to work as much as they desire in accordance with the HOS Regulations, without regard for individual state requirements, as long as the driver is otherwise able to operate the equipment safely. The Meal and Rest Break Rules are inconsistent with the HOS Regulations" [page 4].

The July petition states that:

"The threshold for review under 49 U.S.C. 31141 is that the state law or regulation be 'on commercial motor vehicle safety.' * * * Thus, the only logical/consistent interpretation of 'on commercial motor vehicle safety' under 49 U.S.C. 31141 is to interpret it as applying to state laws or regulations that regulate or affect subject matter within the FMCSA's authority under 49 U.S.C. 31136, i.e., any state law or regulation that regulates subject matter within the FMCSA's authority under 49 U.S.C. 31136 is 'on commercial motor vehicle safety' for

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

purposes of 49 U.S.C. 31141.

"Conceivably, it could be argued that the Meal and Rest Break rules are not 'on commercial motor vehicle safety' because they are rules of general applicability and their application is not limited to CMVs. When considered from a practical perspective, however, there can be no question that the Meal and Rest Break Rules are exactly the type of rules that fall within the scope of 49 U.S.C. 31141. As a practical matter, interpreting the statute to apply only to state laws or rules applicable solely to CMVs would open the door to state regulation of CMV safety under the guise of generally applicable state laws or rules" [page 21].

Decision

Petitioners themselves acknowledge the decisive argument against their own position. The California meal break statute [Cal. Labor Code § 512] and the corresponding rules in § 11090(11)-(12) are not regulations "on commercial motor vehicle safety" and thus do not meet the threshold requirement for consideration under 49 U.S.C. 31141.[FN3] The State rules apply to the entire "transportation industry," which § 11090(2)(N) defines as "any industry, business, or establishment operated for the purpose of conveying persons or property from one place to another whether by rail, highway, air, or water, and all operations and services in connection therewith; and also includes storing or warehousing of goods or property, and the repairing, parking, rental, maintenance, or cleaning of vehicles."The meal and rest break rules thus cover far more than the trucking industry.

> FN3 Petitioners claim that by "imposing meal and rest breaks at set times," the California rules create safety concerns by interfering with a driver's ability to take breaks when actually needed [page 6]. In fact, the State rules allow the first meal break at any point during the first five hours on duty, and the second within the next five hours. Five-hour windows hardly constitute "set times." Petitioners provide no evidence that these breaks undermine safety.

In fact, the meal and rest break rules are not even unique to transportation. California imposes virtually the same rules on the "manufacturing industry" [8 CCR § 11010(11)-(12)]; the "personal service industry" [8 CCR § 11020(11)-(12)]; the "canning, freezing and **\*79206** preserving industry" [8 CCR § 11030(11)-(12)]; the "professional, technical, clerical, and similar occupations" [8 CCR § 11040(11)-(12)]; the "public housekeeping industry" [8 CCR § 11050(11)-(12)]; the "laundry, linen supply, dry cleaning, and dyeing industry" [8 CCR § 11060(11)-(12)]; the "mercantile industry" [8 CCR § 11070(11)-(12)]; "industries handling products after harvest" [8 CCR § 11080(11)-(12)]; the "amusement and recreation industry" [8 CCR § 11100(11)-(12)]; the "broadcasting industry" [8 CCR § 11110(11)-(12)]; the "motion picture industry" [8 CCR § 11120(11)-(12)]; "industries preparing agricultural products for market, on the farm" [8 CCR § 11130(11)-(12)]; "agricultural occupations" [8 CCR § 11140(11)-(12)]; "household occupations" [8 CCR § 11150(11)-(12)]; "certain on-site occupations in the construction, drilling, logging and mining industries" [8 CCR § 11160(10)-(11)]; and "miscellaneous employees" [8 CCR § 11170(9)]. The meal and rest break rules for CMV drivers are simply one part of California's comprehensive regulations governing wages, hours and working conditions. Because these rules are in no sense regulations "on commercial motor vehicle safety," they are not subject to preemption under 49 U.S.C. 31141.

Recognizing this problem, petitioners expanded their argument to claim that "the FMCSA has power to preempt any state law or regulation that regulates or affects any matters within the agency's broad Congressional grant of authority" (page 22). There is nothing in the statutory language or legislative history of 49 U.S.C. 31141 that

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

would justify reading into it the authority to preempt State laws "affecting" CMV safety. Further, if the Agency were to take such a position, any number of State laws would be subject to challenge. For example, it is conceivable that high State taxes and emission controls could affect a motor carrier's financial ability to maintain compliance with the Federal Motor Carrier Safety Regulations (FMCSRs); however, it is doubtful that the Agency would be viewed as thus having the authority to preempt State tax or environmental laws.

Yet petitioners make the equally far-reaching argument that FMCSA can and should preempt the California statutes and rules on wages, hours, and working conditions which prevent carriers from maximizing their employees' driving and on-duty time. In fact, the FMCSRs have for decades required carriers and drivers to comply with all of the laws, ordinances, and regulations of the jurisdiction where they operate [49 CFR 392.2].

FMCSA cannot entertain this petition. Because the California meal and rest break rules are not "regulations on commercial motor vehicle safety," the Agency has no authority to preempt them under 49 U.S.C. 31141. Furthermore, that statute does not allow the preemption of other State or local regulations merely because they have some effect on CMV operations.

Issued on: December 18, 2008.

David A. Hugel,

Deputy Administrator.

[FR Doc. E8-30646 Filed 12-23-08; 8:45 am]

BILLING CODE 4910-EX-P

73 FR 79204-01, 2008 WL 5351180 (F.R.)
END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Subtitle B. Other Regulations Relating to Transportation
Chapter III. Federal Motor Carrier Safety Administration, Department
of Transportation (Refs & Annos)

▮▤Subchapter B. Federal Motor Carrier Safety Regulations

▮▤Part 395. Hours of Service of Drivers (Refs & Annos)

➡**§ 395.1 Scope of rules in this part.**

(a) General.

(1) The rules in this part apply to all motor carriers and drivers, except
as provided in paragraphs (b) through (r) of this section.

(2) The exceptions from Federal requirements contained in paragraphs
(l) and (m) of this section do not preempt State laws and regulations
governing the safe operation of commercial motor vehicles.

\* \* \* \*

(e) Short-haul operations--

(1) 100 air-mile radius driver. A driver is exempt from the
requirements of § 395.8 if:

(i) The driver operates within a 100 air-mile radius of the normal work
reporting location;

(ii) The driver, except a driver-salesperson, returns to the work
reporting location and is released from work within 12 consecutive
hours;

(iii)(A) A property-carrying commercial motor vehicle driver has at
least 10 consecutive hours off duty separating each 12 hours on duty;

(B) A passenger-carrying commercial motor vehicle driver has at least
8 consecutive hours off duty separating each 12 hours on duty;

(iv)(A) A property-carrying commercial motor vehicle driver does not
exceed the maximum driving time specified in § 395.3(a)(3) following
10 consecutive hours off duty; or

(B) A passenger-carrying commercial motor vehicle driver does not exceed 10 hours maximum driving time following 8 consecutive hours off duty; and

(v) The motor carrier that employs the driver maintains and retains for a period of 6 months accurate and true time records showing:

(A) The time the driver reports for duty each day;

(B) The total number of hours the driver is on duty each day;

(C) The time the driver is released from duty each day; and

(D) The total time for the preceding 7 days in accordance with § 395.8(j)(2) for drivers used for the first time or intermittently.

(2) Operators of property-carrying commercial motor vehicles not requiring a commercial driver's license. Except as provided in this paragraph, a driver is exempt from the requirements of § 395.3(a)(2) and § 395.8 and ineligible to use the provisions of § 395.1(e)(1), (g), and (o) if:

(i) The driver operates a property-carrying commercial motor vehicle for which a commercial driver's license is not required under part 383 of this subchapter;

(ii) The driver operates within a 150 air-mile radius of the location where the driver reports to and is released from work, i.e., the normal work reporting location;

(iii) The driver returns to the normal work reporting location at the end of each duty tour;

(iv) The driver does not drive:

(A) After the 14th hour after coming on duty on 5 days of any period of 7 consecutive days; and

(B) After the 16th hour after coming on duty on 2 days of any period of 7 consecutive days;

(v) The motor carrier that employs the driver maintains and retains for a period of 6 months accurate and true time records showing:

(A) The time the driver reports for duty each day;

(B) The total number of hours the driver is on duty each day;

(C) The time the driver is released from duty each day;

(D) The total time for the preceding 7 days in accordance with § 395.8(j)(2) for drivers used for the first time or intermittently.